UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| KENNY WHITMORE (#86468) | CIVIL ACTION NO.: 14-0004-JJB-RLB |
| VERSUS | JUDGE JAMES J. BRADY |
| N.BURL CAIN, WARDEN, ET AL. | MAGISTRATE RICHARD L. BOURGEOIS |

**FIRST AMENDED COMPLAINT**

**Jurisdiction and Venue**

1. This is an action for injunctive, declaratory, and monetary relief for violation of the First, Eighth, and Fourteenth Amendments of the United States Constitution and 42 U.S.C. § 1983. Jurisdiction lies under §§ 1331, 1343(a)(3) and (4), and 2201. The complaint also asserts state law claims. This Court has supplemental jurisdiction of these state law claims under 28 U.S.C. § 1367.

2. Venue for this action lies in this Court under 28 U.S.C. §1391(b)(2) because the events and omissions giving rise to the claims occurred in the Middle District of Louisiana.

**Parties**

3. Plaintiff Kenneth "Zulu" Whitmore is a person of the full age of majority who has been incarcerated at Louisiana State Penitentiary in Angola, Louisiana (LSP) since March 14, 1977.

4. Defendant N. Burl Cain is the Warden of the Louisiana State Penitentiary at Angola. Defendant Cain is aware of the situation of which plaintiff complains and has refused to take action to correct the situation. He is sued in his official and individual capacities.

5. Defendant Richard Stalder was the Secretary of the Louisiana Department of Public Safety and Corrections at various times pertinent herein. He was responsible for the overall operation of the Department, including the Louisiana State Penitentiary at Angola, Louisiana. Defendant Stalder is sued in his official and individual capacities.

6. Defendant James M. LeBlanc is the Secretary of the Louisiana Department of Public Safety and Corrections. He is responsible for the overall operation of the Department, including the Louisiana State Penitentiary at Angola, Louisiana. Defendant LeBlanc is sued in his official capacity.

7. Defendant Richard Peabody was deputy warden in charge of security at the Louisiana State Penitentiary at Angola at various times pertinent herein. He is sued in his official and individual capacities.

8. Defendant Cathy Fontenot is an assistant warden in charge of classification and programs at the Louisiana State Penitentiary at various times pertinent herein. She is sued in her official and individual capacities.

9. Defendant Darrel Vannoy is an assistant warden in charge of security at the Louisiana State Penitentiary at Angola at various times pertinent herein. He is sued in his official and individual capacities.

10. Defendant Joe Lamartiniere is an assistant warden in charge of the outcamps at the Louisiana State Penitentiary at Angola at various times pertinent herein. He is sued in his official and individual capacities.

11. Defendant Sam Smith is a deputy warden at the Louisiana State Penitentiary at Angola, and at various times pertinent herein was a member of the Lockdown Review Board. He is sued in his official and individual capacities.

12. Defendant Robert Rachal is a major at the Louisiana State Penitentiary at Angola, and at various times pertinent herein was a member of the Lockdown Review Board. He is sued in his official and individual capacities.

13. Defendant Paul J. Myers is a major at the Louisiana State Penitentiary at Angola, and at various times pertinent herein was a member of the Lockdown Review Board. He is sued in his official and individual capacities.

14. Defendant Randy Ritchie is a classification officer at the Louisiana State Penitentiary at Angola, and at various times pertinent herein was a member of the Lockdown Review Board. He is sued in his official and individual capacities.

15. Defendant Tom Norris is a classification officer at the Louisiana State Penitentiary at Angola, and at various times pertinent herein was a member of the Lockdown Review Board. He is sued in his official and individual capacities.

16. Defendant Susan Fairchild is a classification officer at the Louisiana State Penitentiary at Angola, and at various times pertinent herein was a member of the Lockdown Review Board. She is sued in her official and individual capacities.

17. Defendant Honeycutt is a classification officer at the Louisiana State Penitentiary at Angola, and at various times pertinent herein was a member of the Lockdown Review Board. She is sued in her official and individual capacities.

18. Doe defendants 1-15 are officers at the Louisiana State Penitentiary at Angola who at various times were members of the Lockdown Review Board and participated in classifying plaintiff as an extended lockdown inmate. Doe defendants 1-15 are sued in their official and individual capacities.

**Factual Allegations**

19. Plaintiff Kenneth "Zulu" Whitmore is an inmate incarcerated at the Louisiana State Penitentiary at Angola. Mr. Whitmore has been held in extended lockdown for a period of approximately 35 years, from 1977 to the present, except for an intervening period in the general population from December 1984 until July 1986. He was classified as an extended lockdown inmate within days of arriving at Angola. Mr. Whitmore today remains classified as an extended lockdown status inmate.

20. When Mr. Whitmore arrived at the Louisiana State Penitentiary at Angola in 1977, he befriended Albert Woodfox and Robert King Wilkerson, two of the men known as the Angola Three. Mr. Whitmore's friendship with the so-called "Angola Three," his membership in the Black Panther Party, and his race, all contributed to his initial classification as an extended lockdown inmate.

21. Mr. Whitmore was released into the general population in December of 1984. Approximately one week after being released into the general population, Mr. Whitmore was informed by Major Mayeux that his reclassification into the general population was an error. Major Mayeux told Mr. Whitmore that if Mr. Whitmore gave Mayeux his word that he would "not start anything" or organize politically, he could remain in the general population.

22. In September 1985, Mr. Whitmore's application for a writ of habeas corpus to adjust his sentences on two counts of armed robbery, for which he was given a seventy-five year sentence at hard labor to run consecutively with a 50 year sentence on the second count, was denied. *Whitmore v. Maggio*, 637 F.Supp. 265 (M.D. La., Sep. 19, 1985).

23. On July 5, 1986, Mr. Whitmore attempted to escape the facility by hopping a fence while working the fields at the plantation. No one was harmed during this escape attempt, and Mr. Whitmore was captured and returned to the Louisiana State Penitentiary at Angola within 24 hours.

24. On information and belief, four other inmates also attempted to and did escape the Louisiana State Penitentiary at Angola on or around July 5, 1986. These other inmates were white. Though each was placed in extended lockdown after attempting escape, each was returned to the general population within 12 months.

25. In contrast to these white inmates, Mr. Whitmore has remained in extended lockdown ever since his escape attempt.

26. The conditions under which Mr. Whitmore has been incarcerated in extended lockdown are the effective equivalent of solitary confinement. Mr. Whitmore has been continuously incarcerated alone in a cell of approximately 9 x 6 feet for 23 hours each day.

Because of the bunk bed on the side wall and the toilet-sink combination on the back wall, Mr. Whitmore is left with only 4 x 3 feet of space in which to move around for 23 hours a day.

27. One hour a day, Mr. Whitmore may shower or walk the tier alone. During this hour, three times a week and weather permitting, Mr. Whitmore may elect to be placed in full restraints—including a waist chain and leg irons—and escorted to a fenced exercise yard, where he may exercise alone. *See e.g. Wilkerson v. Stalder*, Civ. A. No. 00-307, 2013 WL 6665452, *2, n. 5 (M.D. La. Dec. 17, 2013) (defining extended lockdown in closed cell restriction ("CCR") as confinement to a cell for 23 hours per day).

28. As an extended lockdown inmate, severe restrictions are placed on Mr. Whitmore's possession of personal property, including the number of books and types of reading material allowed. *Id.* His access to legal counsel and materials is also substantially more restricted than in the general prison population, as is contact visitation. *Id.*

29. By contrast, inmates in the general prison population work and socialize. They live in dormitories, and have educational, training, and recreational opportunities all of which are denied to plaintiff. *Id.*

30. The conditions of Mr. Whitmore's incarceration in extended lockdown almost totally deprive him of human contact, mental stimulus, physical activity, personal property, and human dignity. Continued and continuing confinement under these conditions for 35 years is inhumane, and imposes atypical and significant hardship compared to ordinary prison life. *See Wilkerson v. Stalder*, 639 F.Supp.2d 654, 678 (M.D. La. 2007) ("Such things as food, sleep, clothing, shelter, medical attention, reasonable safety, sleep, and exercise have been recognized by courts as basic physical human needs subject to deprivation by conditions of confinement…. More recently, in light of the maturation of our society's understanding of the very real

6

psychological needs of human beings, courts have recognized the inhumanity of institutionally-imposed psychological pain and suffering.").

31.  On 90-day intervals, an entity called the Lockdown Review Board extends Mr. Whitmore's continued confinement in extended lockdown. At each review, the Board continues his classification and confinement to solitary because of the "nature of original reason for lockdown." *See* Exhibit A (Lockdown Review Summaries for Kenneth Whitmore dated April 8, 2009 through April 1, 2014).[1]

32.  Mr. Whitmore's lengthy confinement in CCR is unconstitutional punishment for his political beliefs, association with the Angola Three, and escape attempt.

33.  Among the members of the Lockdown Review Board that reviewed and extended Mr. Whitmore's confinement in extended lockdown since April 8, 2009, are Honeycutt, Fairchild, and Does 1-15.

34.  On information and belief, the following defendants have at some time during the past 35 years reviewed and extended Mr. Whitmore's extended lockdown, Honeycutt, Fairchild, Rachal, Ritchie, Smith, Myers, Norris, Vannoy, Fontenot, and Does 1-15.

35.  The review by the Lockdown Review Board is totally devoid of any meaning or substance. *See Wilkerson v. Stalder*, 2013 WL 6665452, *10 (noting the court's prior holding that the "Lockdown Review Summar[ies] did not present sufficient information to show that the Plaintiffs' were given a meaningful and substantive review."). No review actually takes place. The inmate is not allowed to explain why he should be released into the general population, nor does the Lockdown Review Board take into consideration plaintiff's "age, infirmity, and

---

[1]  This Exhibit consists of Lockdown Review Summaries Mr. Whitmore had in his possession at the time of this filing. Mr. Whitmore will seek all summaries related to his CCR confinement in discovery.

unparalleled duration housed in extended lockdown." *Id.* at * 11. Most times, the inmate is simply handed the "Lockdown Review Summary" without an opportunity to address the board or ask questions about the rationale for his continued confinement.

36. Each summary states that Mr. Whitmore is not being released because of the "nature of original reason for lockdown." Plaintiff's Lockdown Review Summary is also sometimes checked as an "escape risk," but not always. Extension of his confinement in extended lockdown is automatic. No meaningful attempt is made to determine if Mr. Whitmore is fit for release into the general population or to a less restricted status, or if he constitutes a danger to the inmates or employees of the prison. *See* Ex. A.

37. On information and belief the Louisiana State Penitentiary at Angola has no objective point scoring model for custody designations, nor is there any application of independent policy criteria. There remains no rational penological basis that requires the current placement in extended lockdown.

38. On information and belief, defendants Cain, Peabody, Vannoy, Fontenot, and Lamartiniere, influenced or participated in the decisions of the Lockdown Review Board to refuse to release Mr. Whitmore from extended lockdown.

39. Defendants Cain, Peabody, Vannoy, Fontenot, and Lamartiniere know of plaintiff's 35 year confinement in extended lockdown, and also know that the Lockdown Review Board will not release Mr. Whitmore into the general prison population without direction from higher up. Nevertheless, with deliberate indifference to Mr. Whitmore's rights, each has failed to take any action to facilitate his release from extended lockdown or to secure him a fair hearing on whether he poses a danger in the general prison population.

40. Since his escape attempt in 1986, Mr. Whitmore received only 12 disciplinary reports. That is 12 disciplinary reports in 28 years. Not one of these 12 reports was for a violent or drug-related offense, or for anything that would give defendants reason to continue his confinement in extended lockdown.

41. While plaintiff is not one of the "Angola Three," on information and belief his continued classification as an extended lockdown inmate is a result, in part, of his association with them, his political beliefs as a Black Panther, the fact that he is black, and as punishment for his non-violent and short-lived escape attempt in 1986. In fact, in mid-October 2000, Warden Cain spoke to students at a school in New Orleans. After the speech, a teacher approached Warden Cain and asked about the "Angola Three." Warden Cain indicated that they would not be released from extended lockdown because they had not reformed their political beliefs. On information and belief, Warden Cain will not release Mr. Whitmore from extended lockdown until he has "reformed" his political beliefs.

42. In an October 2008 sworn deposition—taken in connection with bail proceedings for Angola Three member Albert Woodfox after Mr. Woodfox's underlying conviction was overturned—Warden Cain made a number of statements demonstrating that he is penalizing the Angola Three because of their perceived political affiliation and political beliefs, as well as their race. Among other things, when asked to assume that Mr. Woodfox was not guilty of his underlying conviction, Warden Cain stated: "I would still keep him in CCR [an extended lockdown unit]. I still know that he is trying to practice Black Pantherism, and I still would not want him walking around my prison because he would organize the young new inmates. I would have me all kind of problems, more than I could stand, and I would have the blacks chasing after them." Warden Cain added that Mr. Woodfox "has to stay in a cell while he's in Angola."

9

43. On information and belief, Wardens Cain and Fontenot are also penalizing Mr. Whitmore because of his perceived political affiliation and political beliefs and also intend to keep Mr. Whitmore in a cell while he's at Angola out of an unfounded and unjustified fear that plaintiff will "organize the young new inmates."

44. On information and belief, Louisiana prison officials intend to keep Mr. Whitmore under lockdown until he is permanently physically disabled, or dead. At least one deputy has informed Mr. Whitmore that he is simply too young and healthy for "them" to release him from extended lockdown.

45. Louisiana prison officials' actions are not common practice, nor are they justified by legitimate penological interests.

46. On information and belief, defendants Stalder and LeBlanc are aware that Mr. Whitmore has been confined in extended lockdown for 35 years and have refused to take any action to end this inhumane situation.

47. Plaintiff attempted to remedy this situation through administrative grievances, but was told decisions of the Lockdown Review Board were not reviewable. The Louisiana Administrative Code confirms that "lockdown review board decisions . . . . may not be challenged." 22 La. A.D.C. Pt. 1, § 325.

48. Mr. Whitmore has also written numerous letters to Warden Cain and Deputy Warden Vannoy explaining the problems with his continued confinement in extended lockdown and requesting relief.

49. At all times, defendants' refusal to release Mr. Whitmore from extended lockdown was made with deliberate indifference to his condition, and in reckless disregard for or knowing violation of his rights.

50.     As a result of defendants' acts and omissions, Mr. Whitmore has suffered severe mental anguish and other psychological damage, along with an unwarranted deprivation of the liberties and privileges granted other prisoners. The conditions of his confinement in extended lockdown have caused him daily mental anguish and pain and exposed him to an unduly high risk of psychological harm. Mr. Whitmore also has suffered physical injury as a result of his extended confinement in extended lockdown, including damage to his eyesight, hypertension/high blood pressure, and arthritis.

## Causes of Action

### Claim I: Violation of the Eight Amendment of the United States Constitution and Article I, Section 20 of the Louisiana Constitution –Cruel and Unusual Punishment

51.     Paragraphs 1-50 are incorporated herein.

52.     By the foregoing conduct, specifically continued confinement in extended lockdown for 35 years, defendants have violated Mr. Whitmore's right to be free of cruel and unusual punishment, as guaranteed by the Eighth Amendment of the United States Constitution and Article I, Section 20 of the Louisiana Constitution of 1974.

### Claim II: Violation of Fourteenth Amendment of the United States Constitution and Article I, Section 2 of the Louisiana Constitution – Due Process

53.     Paragraphs 1 – 52 are incorporated herein.

54.     By the foregoing conduct, specifically sham review of Mr. Whitmore's continued confinement in extended lockdown after well-over a quarter of a century, defendants have violated Mr. Whitmore's right to due process of law, as guaranteed by the Fourteenth Amendment of the United States Constitution and Article I, Section 2 of the Louisiana Constitution of 1974.

**Claim III: Violation of the First and Fourteenth Amendments of the United States Constitution and Article I, Section 3 of the Louisiana Constitution – Freedom of Speech**

55. Paragraphs 1-54 are incorporated herein.

56. By the foregoing conduct, specifically continuing Mr. Whitmore's confinement in extended lockdown for 35 years and taking other adverse actions against plaintiff because of his perceived political beliefs and political affiliation, his perceived viewpoints and particular opinions and/or because of plaintiff availing himself of his fundamental right to court access, defendants have violated Mr. Whitmore's rights to freedom of speech under the First and Fourteenth Amendments of the United States Constitution and Article I, Section 3 of the Louisiana Constitution of 1974.

**Claim IV: Violation of Eight Amendment of the United States Constitution and Article I, Section 3 of the Louisiana Constitution – Equal Protection**

57. Paragraphs 1-56 are incorporated herein.

58. By the foregoing conduct, specifically continuing Mr. Whitmore's confinement in extended lockdown for 35 years and taking other adverse actions against plaintiffs because of his race, defendants have violated plaintiffs' rights under the Fourteenth Amendment of the United States Constitution and Article I, Section 3 of the Louisiana Constitution of 1974.

**Prayer for Relief**

WHEREFORE, plaintiffs pray that this Honorable Court grant the following relief:

A. Declare defendants' conduct unlawful;

B. Enjoin and restrain defendants from incarcerating Mr. Whitmore in extended lockdown or other similar condition without independent intervening cause other than the original reason for the classification, and further, ordering Mr. Whitmore's placement in the general prison population;

C. Enjoin and restrain defendants from taking other adverse actions against Mr. Whitmore because of Mr. Whitmore's race, political ideology or affiliation, or in retaliation for Mr. Whitmore's availing himself of his right of access to the courts.

D. Award compensatory damages;

E. Award punitive damages;

F. Grant attorneys' fees and costs;

G. Trial by jury; and

H. Such other relief as the Court deems just and proper.

Respectfully submitted,

*/s/Michelle M. Rutherford*
Michelle M. Rutherford, (La. Bar No. 34968)
David N. Luder, (La. Bar No. 33595)
Sarah L. Rubin, (La. Bar No. 34069)
Erica A. Therio, (La. Bar No. 34115)
BARRASSO USDIN KUPPERMAN
FREEMAN & SARVER, L.L.C.
909 Poydras Street, Suite 2400
New Orleans, Louisiana 70112
Telephone: (504) 589-9700
Facsimile: (504) 589-9701

**Counsel for Kenny "Zulu" Whitmore (#86468)**

### CERTIFICATE OF SERVICE

I hereby certify that on this 14th day of May 2014, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel registered for electronic service.

*/s/Michelle M. Rutherford*