UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| KENNY WHITMORE (#86468) | * | CIVIL ACTION NO.: 4-0004-JJB-RLB |
| | * | |
| VERSUS | * | JUDGE JOHN W. DEGRAVELLES |
| | * | |
| N. BURL CAIN, WARDEN, ET AL. | * | MAGISTRATE JUDGE RICHARD L. |
| | * | BOURGEOIS, JR. |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * * * *

### PLAINTIFF KENNY WHITMORE'S OPPOSITION TO DEFENDANTS' MOTION FOR RULE 7(A) REPLY

Plaintiff Kenny Whitmore submits this Opposition to Defendants' Motion for a Rule 7(a) Reply. Defendants have moved under Federal Rule of Civil Procedure 7(a) and *Schultea v. Wood*, 47 F.3d 1427 (5th Cir. 1995) for a reply to their assertion of qualified immunity. However, such a reply is unnecessary and would serve only to delay the proceedings because Plaintiff's First Amended Complaint alleges detailed facts that demonstrate Defendants are not entitled to qualified immunity.

Plaintiff has been in punitive, solitary confinement for over 35 years because of his political beliefs, not because he poses a threat to the general population at the Louisiana State Prison ("LSP"), and defendants have failed to provide him with proper review of his assignment to solitary. Such actions violate the clearly established confines of the First, Eighth, and Fourteenth Amendments of the United States constitution and Defendants cannot hide from liability behind bald assertions of qualified immunity. Defendants' motion for a reply should be denied and the case should be allowed to move forward.

## BACKGROUND

Plaintiff filed his complaint pro se on January 2, 2014, almost one year ago, alleging that his indefinite confinement in solitary, referred to as closed-cell restriction, or CCR by LSP, violated his constitutional rights and requested injunctive relief and compensatory and punitive damages. (Rec. Doc. 1). Plaintiff obtained pro bono counsel in March 2014 and filed his First Amended Complaint on May 14, 2014, alleging similar claims and adding factual allegations. Defendants answered the First Amended Complaint, denying most allegations and conclusorily asserting that "the defendants are immune from judgment because they acted at all times reasonably and in good faith and in accordance with federal and state law and institutional rules and regulations." (Rec. Doc 20 at p. 2). Defendants did not state one specific fact showing they are entitled to qualified immunity on any of Plaintiff's claims. (*Id.*).

In contrast, Plaintiff's thirteen-page First Amended Complaint fully details facts showing defendants are not entitled to qualified immunity: he alleges specific acts showing that Defendants did not act reasonably or in good faith, violated his clearly established constitutional rights, and can be held individually liable.

Plaintiff's First Amended Complaint alleges that all defendants, through acts of both omission and commission, know of his 35-year confinement in solitary and have failed to take any steps to ensure him constitutionally-sound review of his classification in CCR or to ensure his release from solitary. (First Am. Comp. at ¶¶4-18, 19-21, 24-50). Plaintiff alleges that Warden Cain keeps him in solitary as punishment for, among other things, his political beliefs, non-violent escape attempt 28 years ago, and membership in the former Black Panther Party

2

("BPP"). (First Am. Comp. at ¶¶ 23-25, 32, 41-44). Plaintiff further alleges that each served defendant, Leblanc, Stalder, Peabody, Vannoy, Fontenot, and Lamartiniere know that he is being held in solitary indefinitely as punishment and that each of these defendants is in a position to provide him with a hearing on his confinement and/or release from solitary, but has failed—with deliberate indifference to Plaintiff's constitutional rights—to take any action. (First Am. Comp. at ¶¶ 5-10, 19, 32-39, 43-46, 48-49).

Plaintiff further alleges that the Lockdown Review Board, tasked with providing inmates 90-day reviews of their classification into CCR, has failed to provide him any kind of substantive hearing on his confinement and that the "review hearings" are "sham" proceedings in which he is simply handed a piece of paper that checks the same, unjustified reasons for keeping him in solitary, either "nature of reason of original confinement" or "escape risk." (First Am. Comp. at ¶¶ 31-39, 46-47). Plaintiff also specifically alleges that Wardens Cain, Peabody, Vannoy, Fontenot, and Lamartiniere have "influenced or participated in the decisions of the Lockdown Review Board to refuse to release [him] from extended lockdown." (First Am. Comp. at ¶38). As for the Secretaries, Plaintiff specifically alleges that both Leblanc and Stalder oversaw this system, had full knowledge of the due process deficiencies, the length and punitive nature of his confinement, that the confinement was based on his political beliefs, and refused to correct the constitutional violations. (First Am. Comp. at ¶¶ 5-6, 46, 52-58).

## I.   LEGAL STANDARDS

When a defendant pleads qualified immunity in his answer, "the district court may … require the plaintiff to reply to that defense in detail." *Schultea*, 47 F.3d at 1433.

"Vindicating the immunity doctrine will ordinarily require such a reply … when greater detail [in the complaint] might assist." *Id.* at 1434. Where a plaintiff has supported his claims with "sufficient precision and factual specificity to raise a genuine issue as to the illegality of defendant's conduct at the time of the alleged acts," a *Schultea* reply need not be ordered and discovery can continue. *Id.*

A defendant requesting a *Schultea* reply and asserting qualified immunity should "plead his defense with some particularity" so that a court can "require[] particularity in the reply." *Id.* at 1433. Where a defendant has not plead the defense with particularity, any *Schultea* reply will not be able to "fairly engage" the assertion of qualified immunity and is not warranted or useful. *See Reyes v. Sazan*, 168 F.3d 158, 161 (5th Cir. 1999) (a *Schultea* reply allows the court to "examine afresh whether [the plaintiff's] reply is 'tailored to the assertion of qualified immunity and fairly engage[s] its allegations.'") (quoting *Schultea*, 47 F.3d. at 1433).

Where a plaintiff "has already set forth specific facts which might overcome [the defendant's] entitlement to qualified immunity," there is "no benefit" to ordering a Rule 7(a) reply. *Faulkner v. Johnson Co. Sheriff's Dep't.*, Civ. No. 00-0254, 2001 WL 322430, *5 (N.D. Tex. Mar. 30, 2001).

A plaintiff states facts overcoming a defendant's assertion of qualified immunity where he alleges, with factual specificity, (1) a violation of an established constitutional right and (2) that the right was clearly established at the time of the defendant's alleged misconduct. *Wilkerson v. Goodwin*, --- F.3d. ---, 2014 WL 7211168, *3 (5th Cir. 2014). To be "clearly established" for the purposes of qualified immunity "the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.*

4

## II. DEFENDANTS FAIL TO PLEAD QUALIFIED IMMUNITY WITH SPECIFICITY AND A RULE 7(A) REPLY IS NOT WARRANTED

Defendants assert the qualified immunity defenses by stating conclusorily that they "are immune from judgment because they acted at all times reasonably and in good faith and in accordance with federal and state law and institutional rules and regulations." (Rec. Doc 20 at p. 2). Defendants have not pleaded the defense with particularity. Given this failure, a *Schultea* reply is neither warranted nor useful. *See Reyes v. Sazan*, 168 F.3d 158, 161 (5th Cir. 1999).

Even if asked to reply, Plaintiff will be unable to "fairly engage" the assertion of qualified immunity because it is unclear what facts defendants believe support their claim. *See Reyes v. Sazan*, 168 F.3d 158, 161 (5th Cir. 1999) (a *Schultea* reply allows the court to "examine afresh whether [the plaintiff's] reply is 'tailored to the assertion of qualified immunity and fairly engage[s] its allegations.'") (quoting *Schultea*, 47 F.3d. at 1433). As the *Schultea* court noted when it retained the premise that a plaintiff need not anticipate the qualified immunity defense in his complaint, "the facts of good faith and the facts of underlying immunity depend on facts peculiarly within the knowledge and control of the defendant." *Schultea*, 47 F.3d at 1431 (citations omitted).

Plaintiff simply has no way to engage the qualified immunity defense as it has been asserted. Defendants' motion should be denied on this basis alone.

## III. PLAINTIFF ALLEGES FACTS SUFFICIENT TO OVERCOME DEFENDANTS' ASSERTION OF QUALIFIED IMMUNITY

Defendants argue that the Plaintiff's allegations are conclusory in nature and fail to set forth specific allegations detailing why each Defendant may be individually liable for damages. (Rec. Doc. 30-1, p. 2). Defendants ignore the First Amended Complaint's eight pages of factual allegations and specific detail of actions, or inaction, taken by each served Defendant.

Defendants disingenuously argue that Plaintiff has lumped them into two groups, the Secretaries and the Wardens. (Rec. Doc. 30-1, p. 3). However, Plaintiff has not claimed there are two groups of Defendants. Instead, Plaintiff alleges the history of his 35 year confinement in solitary, naming individual's actions or inactions where he is in possession of those facts, and claiming that each defendant violated his rights because they had knowledge of his indefinite confinement, based on his political beliefs, and continuing without the protections of due process. (First Am. Comp. at ¶¶19-50).

As will be shown more fully below, Plaintiff has set "forth specific facts which might overcome [the defendant's] entitlement to qualified immunity," for each claim of a constitutional violation and there is "no benefit" to ordering a Rule 7(a) reply. *Faulkner*, 2001 WL 322430, *5.

### a. Plaintiff Alleges Facts Sufficient to Overcome Defendants' Asserted Qualified Immunity for Violations of his First Amendment Rights

To plead facts sufficient to overcome Defendants' claimed qualified immunity for violation of his First Amendment rights, Plaintiff must allege that his constitutional right to hold political beliefs and be free from punishment for those political beliefs was clearly established at the time of his confinement in solitary. *Wilkerson*, 2014 WL 7211168, *3. Plaintiff was placed in solitary confinement the day he arrived at LSP on March 21, 1978.

A prisoner's First Amendment right to hold political beliefs and participate in political expression has been clearly defined since the 1970s. "Neither militant political ideas nor past or threatened litigation on the part of the inmate will authorize prison discipline by way of segregation or otherwise." *Morgan v. LaVallee*, 526 F.2d 221, 225 (2nd Cir. 1975) (citing *U.S. ex rel. Larkins v. Oswald*, 510 F.2d 583, 584 (2d Cir. 1975); *Sostre v. McGinnis*, 442 F.2d 178, 189 (2d. Cir. 1971) (en banc) cert. denied sub nom. *Oswald v. Sostre*, 405 U.S. 978 (1972).

It has likewise been established since the 1970s that possession of Black Panther Party materials, even where such material "contain[s] considerable revolutionary or militant rhetoric, …. cannot be made the subject of disciplinary proceedings" or be sufficient reason to place inmate in solitary confinement. *Larkins*, 510 F.2d at 587-588 (upholding jury award for wrongful placement in solitary, over 12 days, for "possession of 'revolutionary' papers" in inmate's cell).

To sanction the punishment of inmates for holding political beliefs, or even putting those beliefs on paper, "even though in the judgment of prison officials the writings were 'inflammatory' and 'racist,' … would permit prison authorities to manipulate and crush thoughts under the guise of regulation." *Sostre*, 442 F.2d at 202. "Any real threat to prison security that [the inmate's] possession of his writings might have posed could have been met by confiscation rather than punishment." *Id*. at 203.

Plaintiff alleges he is being held in solitary because of "his political beliefs as a Blank Panther" and that Warden Cain has specifically stated that membership in the Black Panther Party is sufficient to keep an inmate in solitary confinement. (First Am. Comp. at ¶¶41-23). Plaintiff has also alleged that each Defendant knows that this is the reason he is being held in solitary confinement, that such reasons are unconstitutional, and that not one Defendant has taken steps to rectify this egregious constitutional violation. (First Am. Comp. at ¶¶4-10, 45-49, 56).

As plaintiff has gathered more facts regarding his persecution for his political beliefs, he has disclosed these facts to the defendants in discovery. (Ex. A. Whitmore Responses to Discovery, pp. 8-11).

In short, Plaintiff has stated with factual specificity that he is being held in solitary because of his political beliefs and membership in the Black Panther Party. Because the right to be free from punishment for political beliefs has been established since at least the 1970s, Plaintiff has set "forth specific facts which might overcome [the defendant's] entitlement to qualified immunity," and there is "no benefit" to ordering a Rule 7(a) reply on Plaintiff's First Amendment claims. *Faulkner*, 2001 WL 322430, *5.

### b. Plaintiff Alleges Facts Sufficient to Overcome Defendants' Asserted Qualified Immunity for Violations of his Fourteenth Amendment Due Process Rights

To plead facts sufficient to overcome Defendants' claimed qualified immunity for violation of his Fourteenth Amendment due process rights, Plaintiff must allege that he had a liberty interest in his classification and that this interest gave rise to due process protections. *Wilkerson*, 2014 WL 7211168, *3. Plaintiff must further allege that the process provided was insufficient to meet these protections. *Id.*

A prisoner's Fourteenth Amendment right to due process protections from indefinite, arbitrary, or unfounded placement in solitary confinement is clearly established. *Wilkerson*, 2014 WL 7211168, *10. As early as 2005, the Supreme Court made clear that "'indefinite' placement in 'highly restrictive conditions' implicates a liberty interest, even if that placement is the result of an initial classification."[1] *Id.* (quoting *Wilkinson v. Austin*, 545 U.S. 209, 213, 222-24 (2005). Both the Fifth Circuit and the Supreme Court have "recognized that even if an initial security classification does not generally implicate a liberty interest, such an interest may arise where an initial classification is also attended by 'extraordinary circumstances,' that is, an 'atypical and significant hardship.'" *Id.* (quoting *Wilkinson*, 545 U.S. at 213). Moreover, "no reasonable prison official could conclude that continuing four decades in

---

[1] Plaintiff alleges his classification as a CCR inmate is punitive and not administrative.

8

indefinite solitary confinement would not implicate a liberty interest protected by due process." *Id.* at *11.

It is unclear how Defendants, having been told time and again since 2002 that solitary confinement of this duration gives rise to a liberty interest, can now claim that Plaintiff Whitmore—who has been in solitary confinement for over 35 years—"has no vested liberty interest arising out of his initial classification." (Rec. Doc. 30-1, p. 2); *see Wilkerson v. Stalder*, Civ. No. 00-0304, Rec. Doc. 46, p. 16 (March 28, 2002 Magistrate Report holding "no objectively reasonable officer could believe" that three decades in solitary "was not atypical or extraordinary under the established Supreme Court and Fifth Circuit Standards."), Rec. Doc. 105 (February 1, 2005 Magistrate Report, pp. 21-22 holding the same).

In specific factual detail, Plaintiff alleges the extraordinary circumstances and duration of his confinement in solitary. (First Am. Comp. at ¶¶19, 26-30). Plaintiff has also alleged that the "reviews" held by the Lockdown Review Board are a sham and mere pretense to keeping him in solitary confinement indefinitely. (First Am. Comp. at ¶¶31, 35-37.) Where Plaintiff has facts available to him, he alleges each Defendant's specific involvement in the "review process" or their knowledge of and acquiescence to the constitutional infirmities of the process. (First Am. Comp. at ¶¶38-39, 46, 48).

Plaintiff alleged with factual specificity that he has a liberty interest in his classification, that this interest gave rise to due process protections, and that the process provided was insufficient to meet these protections. Plaintiff has set "forth specific facts which might overcome [the defendant's] entitlement to qualified immunity," and there is "no benefit" to ordering a Rule 7(a) reply on Plaintiff's Fourteenth Amendment due process claims. *Faulkner*, 2001 WL 322430, *5.

### c. Plaintiff Alleges Facts Sufficient to Overcome Defendants' Asserted Qualified Immunity for Violations of his Eighth Amendment Rights

To plead facts sufficient to overcome Defendants' claimed qualified immunity for violation of his Eighth Amendment rights, Plaintiff must allege that he has suffered an extreme deprivation by placement in solitary confinement and that the Defendants acted with deliberate indifference to this extreme deprivation. *Wilkerson*, 2014 WL 7211168, *3; *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

Since the 1970s it has been clearly established that the Eighth Amendment proscribes more than physically barbarous punishments and that "[c]onfinement in a prison or in an isolation cell is a form of punishment subject to scrutiny under Eighth Amendment standards." *Hutto v. Finney*, 437 U.S. 678, 685 (1975). While punitive isolation is not "necessarily unconstitutional, [] it may be, depending on the duration of the confinement and the conditions thereof." *Id.* (quotations omitted).

Although no court has specifically held what duration in solitary confinement constitutes cruel and unusual punishment, it has been clearly established that "[t]he length of confinement cannot be ignored in deciding whether the confinement meets constitutional standards." *Id.* at 686. "[T]he longer the stay in solitary confinement, the greater the chance it violates the Eighth Amendment." *Rosario v. Williams*, Civ. No. 13-1945, 2013 WL 338114, *7 (E.D.Pa. Jan. 29, 2014) (citing *Hutto v. Finney*, 437 U.S. 678, 686 (1975)). It is clear that indefinite and/or more than three decades confinement in solitary can violate the Eighth Amendment.

As well, the Fifth Circuit has held that the exact solitary confinement conditions in which Plaintiff Whitmore has been held for over 35 years constitute "extraordinary circumstances" that pose "atypical and significant hardship[s]." *Wilkerson*, 2014 WL 7211168,

10

*10. "It is difficult, if not impossible, to imagine circumstances more extraordinary that nearly four decades in solitary confinement." *Id.* at *11.

Plaintiff has alleged with factual specificity that he has suffered an extreme deprivation by placement in solitary confinement for over 35 years, nearly four decades, and that each Defendant acted with deliberate indifference to this extreme deprivation. (First Am. Comp. ¶¶19, 46, 49). Plaintiff has set "forth specific facts which might overcome [the defendant's] entitlement to qualified immunity," and there is "no benefit" to ordering a Rule 7(a) reply on Plaintiff's Eighth Amendment claims. *Faulkner*, 2001 WL 322430, *5.

### d. Plaintiff Alleges Facts Sufficient to Overcome Defendants' Asserted Qualified Immunity for Violations of his Fourteenth Amendment Equal Protection Rights

To plead facts sufficient to overcome Defendants' claimed qualified immunity for violation of his Fourteenth Amendment equal protection rights, Plaintiff must allege that he was treated differently than similarly-situated individuals on the basis of his race and that racially discriminatory intent or purpose was behind the disparate treatment. *Wilkerson*, 2014 WL 7211168, *3.

It is well established that the equal protection clause of the Fourteenth Amendment prohibits states from intentionally discriminating against individuals based on race. *Shaw v. Reno,* 509 U.S. 630, 642 (1993). "Proof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause." *City of Cuyahoga Falls v. Buckeye Cmty. Hope Found.,* 538 U.S. 188, 194 (2003) (citation and internal quotes omitted). Where punishment in prison is inflicted on a discriminatory basis because of a person's race, such punishment violates the equal protection clause of the Fourteenth Amendment. *Labat v. McKeithen*, 243 F.Supp. 662, 666 (E.D. La. 1965).

11

Plaintiff alleges that he is being held indefinitely in solitary confinement as punishment for an escape attempt in 1986 and that other, similarly situated, white inmates who attempted escape during the same week were not placed in solitary confinement. (First Am. Comp. ¶¶23-25). Plaintiff further alleges that Defendants have kept him in solitary as punishment for his escape attempt and because he is black. (First Am. Comp. ¶¶32, 58).

Plaintiff has alleged with factual specificity that he has was placed in solitary as punishment for his escape attempt while white inmates who also attempted escape were not placed in solitary confinement and that such punishment was because of his race. Plaintiff has set "forth specific facts which might overcome [the defendants'] entitlement to qualified immunity," and there is "no benefit" to ordering a Rule 7(a) reply on Plaintiff's Fourteenth Amendment Equal Protection claims. *Faulkner*, 2001 WL 322430, *5.

### IV. DEFENDANTS' ALLEGATIONS THAT PLAINTIFF HAS PLEADED VICARIOUS LIABILITY AND FAILED TO SPECIFY INDIVIDUAL GROUNDS FOR LIABILITY ARE RED HERRINGS

Defendants' arguments that Plaintiff fails to plead facts sufficient to overcome qualified immunity demonstrate a failure to read the complaint in its entirety and an ignorance of the facts alleged therein.

First, Defendants argue that Plaintiff is effectively making *respondeat superior* claims against the Wardens for individual liability. (Rec. Doc. 30-1, p. 8). However, this misstates Plaintiff's claims. Plaintiff alleges that each Warden is responsible for his own action or inaction as it relates to Plaintiff's indefinite confinement in solitary. As noted above, where Plaintiff has specific facts regarding actions taken by specific Defendants, he has listed those facts. Where Plaintiff claims liability based on inaction, as Defendants rightly admit is a proper way to state a claim (*see* Rec. Doc. 30-1, p. 8), he has specifically stated such inaction. Plaintiff

has not alleged *respondeat superior* claims for liability under 28 U.S.C. section 1983 and Defendants' contention to the contrary is misplaced and misleading.

Defendants' argument also ignores that liability may exist even if one of the individual Secretaries or Wardens was not personally involved in the complained-of actions. "Supervisory liability exists even without personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation. *Miller v. Cain*, No. 12-730, 2013 WL 5550900, *3 (M.D. La. Sep. 16, 2013). Plaintiff has alleged that LSP's Lockdown Review Board proceedings, overseen and approved by the Secretaries and occasionally personally attended by one of the Wardens, lack any meaningful criteria to guide assessments of an inmate's classification and are essentially a sham. (First Am. Comp. ¶¶31-39).

Defendants also argue that Plaintiff "fails to allege any specific or independent action taken by any one of the Wardens." (Rec. Doc. 30-1, p. 9). This assertion is also incorrect. As shown above, and throughout the Complaint, where Plaintiff possessed the facts he made specific allegations of action by individual Wardens and, where liability is based on inaction, Plaintiff alleges such inaction on the part of each Warden. (*See* First Am. Comp. ¶¶31-35, 37-39, 41-50). Moreover, Defendants are incorrect that it is "insufficient to group the Wardens together." (Rec. Doc. 30-1, p. 9). Many of the Wardens have taken the same action and each Warden as well as both Secretaries have failed to take any action to get Mr. Whitmore out of solitary confinement or provide him with a substantive review of his classification. Since each has failed in the same way, and many have taken the same constitutionally infirm actions, there is no other way to state the facts.

The First Amended Complaint must be read as a whole pleading, Plaintiff makes factual allegations regarding the conditions of his confinement, the duration, the sham review process, his punishment for his political beliefs, and his disparate punishment based on his race. These factual allegations apply to each Defendant. It is of no moment that Plaintiff does not yet know all the ways each Defendant has contributed to his unconstitutional confinement in solitary; he has pleaded facts sufficient to overcome qualified immunity and the case should move forward.

Defendants' motion falls far short of the standards required to justify delaying the case and requiring Plaintiff to submit a Rule 7(a) reply. Defendants have failed to specifically allege their defense of qualified immunity. Any reply would be incapable of responding to the specifics of the defense since Defendants have not provided those specifics. Even if Defendants had specifically alleged the qualified immunity defense, Plaintiff has set "forth specific facts which might overcome [the Defendant's] entitlement to qualified immunity," for each claim of a constitutional violation and there is "no benefit" to ordering a Rule 7(a) reply. *Faulkner*, 2001 WL 322430, \*5. Defendants' motion should be denied.

Respectfully submitted,

*/s/Michelle M. Rutherford*
Michelle M. Rutherford, Bar No. 34968, TA
Richard E. Sarver, Bar No. 23558
David N. Luder, Bar No. 33595
Erica A. Therio, Bar No. 34115
BARRASSO USDIN KUPPERMAN
 FREEMAN & SARVER, L.L.C.
909 Poydras Street, Suite 2400
New Orleans, Louisiana 70112
Telephone:    (504) 589-9700
Facsimile:    (504) 589-9701

        Email: mrutherford@barrassousdin.com
              rsarver@barrassousdin.com
              dluder@barrassousdin.com
              etherio@barrassousdin.com

Rose Murray, Bar No. 34690
JONES, SWANSON, HUDDELL & GARRISON, L.L.C.
601 Poydras Street, Suite 2655
New Orleans, LA 70130
Telephone:   (504) 523-2500
Telecopier:   (504) 523-2508
Email: rmurray@jonesswanson.com

***Counsel for Kenny Whitmore (#86468)***

## CERTIFICATE OF SERVICE

I hereby certify that on this 31st day of December 2014, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel registered for electronic service.

                                            */s/Michelle M. Rutherford*

*{1031051_1}*