UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| KENNY WHITMORE (#86468) | * | CIVIL ACTION NO.: 4-0004-JJB-RLB |
| | * | |
| VERSUS | * | JUDGE JOHN W. DEGRAVELLES |
| | * | |
| N. BURL CAIN, WARDEN, ET AL. | * | MAGISTRATE JUDGE RICHARD L. |
| | * | BOURGEOIS, JR. |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * * *

**PLAINTIFF KENNY WHITMORE'S OPPOSITION TO
DEFENDANTS' PARTIAL MOTION FOR SUMMARY JUDGMENT**

Plaintiff Kenny Whitmore submits this Opposition to Defendants' Motion for Partial Summary Judgment. Rec. Doc. 57. Defendants fail to provide the Court with evidence of undisputed facts material to their assertion of qualified immunity and the motion should be denied.

## **INTRODUCTION**

Defendants Richard Stalder, James LeBlanc, Cathy Fontenot, and Richard Peabody claim qualified immunity in their individual capacities and move for summary judgment of all claims against them. Moving Defendants do not dispute that Mr. Whitmore's alleged constitutional rights are well-established, instead they argue only that he has failed to allege sufficient personal involvement on their part in the depravations of these rights. The only support moving Defendants provide for this claim, and at this early stage in discovery, are affidavits stating that none of them has spoken personally with Mr. Whitmore, nor have they personally approved his housing assignment.

The Moving Defendant's failure to speak personally with Mr. Whitmore and their failure to personally approve his housing assignment (which the record disputes) does not absolve them of personal liability, nor does it immunize them from suit in their individual capacities. Because Mr. Whitmore has properly alleged, and the record supports, that each Defendant acted or failed to act in a way that is causally connected to his 35 year confinement to solitary, and the deprivation of his First, Eighth, and Fourteenth amendment rights, Moving Defendants are not entitled to summary judgment on their claim of qualified immunity.

All Defendants move for dismissal of Mr. Whitmore's claims prior to January 2, 2013 based on Louisiana's one-year prescriptive period for delictual actions. Defendants' prescription arguments fail, however, because Mr. Whitmore's 35 years in solitary confinement is the result of an ongoing pattern of constitutional violations that prevents his claims from being time-barred. Every 90 days Mr. Whitmore is handed a piece of paper from the Lockdown Review Board ("the Board") purporting to review his classification in closed-cell restriction ("solitary"[1]). With two exceptions in the past 35 years, the Board invariably keeps him in solitary confinement. There is no reasoning on the form, no explanation, only the same mixture of check marks, illegible signatures, and a date 90 days from the last on each form. Each day that Mr. Whitmore spends in solitary confinement compounds and continues his physical and mental suffering.

To date Mr. Whitmore has received approximately 144 of these Board forms, each nearly identical to the last. Every Warden sued in this action has caused Mr. Whitmore a deprivation of his First, Eighth and Fourteenth amendment rights by either participating in these decisions, signing the forms keeping Mr. Whitmore in solitary, enforcing the Board's decisions and

---

[1]     Courts have determined that "[e]xtended lockdown [at Angola] is the effective equivalent of solitary confinement." *Wilkerson v. Stalder*, 329 F.3d 431, 433 (5th 2003).

Warden Cain's policy of keeping Mr. Whitmore in solitary until he changes his political beliefs, or failing to ensure Mr. Whitmore was provided with a review of his indefinite classification to solitary confinement. The Secretaries have contributed to the continued deprivation of Mr. Whitmore's due process rights by creating, enforcing, and failing to fix policies that deny all inmates, no matter how lengthy their confinement to solitary, the opportunity to appeal or seek review of a Board decision keeping them in solitary, no matter how long their stay.

This continued pattern of denying Mr. Whitmore reclassification into the general population is without penological justification and continually deprives him of due process, while inflicting cruel and unusual punishment, and denying him a right to his political beliefs. Each Defendant named and served in this suit has contributed to the repeated and regular imposition of his practically-permanent assignment to solitary. The Moving Defendants cannot hide their causally-contributing acts behind the shield of qualified immunity, meant to protect public officials from the slings of "insubstantial lawsuits," not from the questions asked by legitimate claims of constitutional deprivation and injury. Mr. Whitmore's ongoing claims based on his 35 year confinement in solitary are not time-barred because they constitute a pattern of continuing constitutional violations.

## FACTUAL BACKGROUND

### I.    SOLITARY CONFINEMENT

Mr. Whitmore has spent over 35 years, 12,857 days as of the filing of this brief, in solitary confinement. His cell is approximately 9 feet from the back concrete wall to the front, barred door, with 6 feet of space between side walls. The metal bunk beds on one wall project approximately 3 feet into the cell, and the toilet sink combination takes up a few square feet.

Exhibit A, Affidavit of Kenneth Whitmore[2] ("Whitmore Aff.") ¶30, Exhibit 1. All of this effectively leaves Mr. Whitmore 4 x3 feet of space to move around in for 23 hours a day.

One hour a day, Mr. Whitmore may shower or walk the tier in shackles alone. During this hour, three times a week and weather permitting, Mr. Whitmore may elect to be placed in full restraints—including a waist chains and leg irons—and escorted to a fenced exercise yard where he may exercise alone. *Wilkerson v. Stalder*, Civ. A. No. 00-307, 2013 WL 6665452, *2, n. 5 (M.D. La. Dec. 17, 2013); Whitmore Affidavit, ¶36.

The exercise pen in Camp D, where Mr. Whitmore has spent many of his years in solitary, is a concrete slab approximately 12 feet wide and 15 feet long, completely encased in chain link fencing on all sides and above. Whitmore Affidavit, ¶31. Mr. Whitmore has not touched grass for at least five years. Whitmore Affidavit, ¶32.

Severe restrictions are placed on Mr. Whitmore's possession of personal property, including the number of books and types of reading material allowed. *Wilkerson*, 2013 WL 6665452 at *2, n. 5. His access to legal counsel and materials is also substantially more restricted than in the general prison population, as is contact visitation. *Id.* By contrast, inmates in the general prison population work and socialize. They live in dormitories, and have educational, training, and recreational opportunities all of which are denied to Mr. Whitmore. *Id.*

The conditions of Mr. Whitmore's incarceration in extended lockdown almost totally deprive him of human contact, mental stimulus, physical activity, personal property, and human dignity. The Fifth Circuit has described these exact conditions of confinement as "effectively indefinite" and sufficiently restrictive to constitute an atypical and significant hardship under

---

[2]     Mr. Whitmore's affidavit submitted at the time of filing is not signed. Counsel read through the affidavit with him on the phone prior to filing and will move to substitute a signed copy once his signature is obtained.

*Sandin v. Conner*, 512 U.S. 472 (1995). *Wilkerson v. Goodwin*, 774 F.3d 845, 855 (5th Cir. 2014).

## II.    <u>KENNETH WHITMORE</u>

Mr. Whitmore has not given the Prison much to worry about over his years there. His disciplinary record is short and mostly consists of low-level rule infractions such as radio and TV abuse and possession of items classified as contraband such as extra toilet paper. *See* Exhibit B, Conduct Report Summary, pp. 2-4. He has had only one infraction arguably related to violence, for fighting in 1982. *Id.*

Mr. Whitmore did attempt to escape the Prison on July 5, 1986. While working in the fields, he hopped a fence with another inmate, Alberto Sosa. Whitmore Aff. ¶5. He was captured within 12 hours and returned to the Prison without incident. Whitmore Aff. ¶6. No one was harmed during his escape attempt and it did not involve weapons. *Id.*

When Mr. Whitmore was captured and returned, he was immediately placed back on extended lockdown/solitary and he has remained in solitary ever since. Whitmore Aff. ¶7. Alberto Sosa was also placed in Camp J and extended lockdown upon his return to the Prison. He remained there for only 9 months and was then placed in the general population. Whitmore Aff. ¶9.

At least four other white inmates who attempted to escape the week Mr. Whitmore did in 1986 served only 9 months in extended lockdown or closed-cell restriction before they were reclassified into the general population.   Whitmore Aff. ¶10. Donald Wooley, also a white inmate, kidnapped a prison worker during his escape in 1999 and was placed in solitary confinement upon return. He was recently reclassified into the general population. Whitmore Aff. ¶11.

Mr. Whitmore is friends with Albert Woodfox, Robert King, and the late Herman Wallace. Whitmore Aff. ¶34. These men are commonly referred to by Warden Cain and the media as the Angola 3. Mr. Whitmore has been a member of the Black Panther Party almost since his arrival at Angola. Whitmore Aff. ¶33. Messrs. Woodfox, King, and Wallace were also Black Panther Party members. Whitmore Aff. ¶34.

Warden Cain has stated to media outlets and in deposition that he believes the Black Panthers are a threat to the safety of the Prison. Blake Bakkila, Annabel Edwards, Edward Ferguson, & Alexa Santos, *Warden Considers Ending Angola Inmate's Solitary Confinement After 28 Straight Years,* THE ADVOCATE (July 29, 2014) http://theadvocate.com/home/9807246-125/warden-considers-ending-angola-inmates. Warden Cain has told other Wardens at the Prison that he believes Mr. Whitmore should not be released from solitary until he affirmatively changes his political beliefs as a Black Panther. *See* Whitmore Aff. ¶37. The Angola Chapter of the Black Panther Party has been defunct since the late 1990s. Whitmore Aff. ¶35.

### III.    THE LOCKDOWN REVIEW BOARD

The Department of Corrections, through the Secretary, requires each prison to have an initial classification and reclassification board. LA. ADMIN. CODE tit. 22, Part 1, §311(D) (2005). If an inmate is assigned to extended lockdown (solitary), the policy created by the Secretary requires an inmate to receive a review for "possible release to a less restricted status" every 90 days. *Id.* §347(F).

The Secretary's policy for extended lockdown/solitary review does not establish the criteria by which an inmate can be reclassified into the general population. It does not require the Board to create or distribute the criteria that guides their decisions and it does not require the Board to take the length of confinement in solitary in to consideration when completing the 90

day reviews. *See* Exhibit C, (Department of Corrections Disciplinary Rules and Procedures for Adult Offenders, codified at LA. ADMIN. CODE tit. 22, Part 1, §§341-365).

Decisions of the Board are not reviewable by appeal to any other authority. LA. ADMIN. CODE tit. §325(C)(4). Pursuant to policies of the Secretary, all Board decisions are final. *Id.* The only other decisions not appealable through the process are decisions of the court, the pardon and parole board, and the Louisiana Risk Assessment Panel. *Id.* §§ 325(C)(1)-(3).

Mr. Whitmore has been given a Board summary (the form on which they write their review) approximately every 90 days throughout his 35 years in solitary confinement. Exhibit D. Every time except for one the Board has kept him assigned to solitary. *Id.*, p. DPSC – 002201.[3]

Mr. Whitmore has never attended a meeting of the Board, nor is he told what criteria will get him reclassified into the general population. Whitmore Affidavit, ¶¶18-19. The one time he was reclassified, it was by mistake and other prison officials wanted him back in solitary. Whitmore Affidavit, ¶4.

Mr. Whitmore receives the Board summary at the end of his cell block, through iron-barred door at the end of the tier. Whitmore Affidavit, ¶14. Each time he has received a summary, the Board's decision is already filled out. *Id.*

Mr. Whitmore has asked the Board handing him the pre-determined assignment why he is not being reclassified, but he has only ever been told that the Warden has to be the one to release him. Whitmore Affidavit, ¶¶15-16. The Board has never given him any reason for his continued confinement to solitary. Whitmore Affidavit, ¶15.

---

[3]     It is unclear why between Mr. Whitmore's reclassification into a working cell block on October 15, 1984 (Ex. D, p DPSC – 002201) and his assignment to the general population on March 28, 1985 (Ex. D, p. DPSC – 002199) that the Board completed a summary dated January 17, 1985, stating he should not be released because of the nature of original reason for lockdown. (Ex. D, p. DPSC – 002200).

The Board members have on occasion, and in response to Mr. Whitmore's request for the reasons behind his indefinite stay in solitary, told him that they cannot be the ones to let him go and that he will have to write to the Warden. Whitmore Aff. ¶¶15-16.

Mr. Whitmore has written letters about the length of his stay and requested to be moved numerous times. Whitmore Aff. ¶¶20-22. His letters to Wardens Vannoy, Cain, and Lamartiniere have not received responses. Whitmore Aff. ¶20. He has also asked numerous Wardens to help him get out of solitary confinement: Vannoy, Lamartiniere, Peabody, Smith, Dupont, and Poret. He has consistently been told that "they" or "the Warden" won't let that happen. Whitmore Aff. ¶22.

The one time he tried to appeal the Board's decision through the administrative remedy procedure the Warden's office responded that "Lockdown Review Board decisions may not be challenged." Exhibit E, p. 1; Whitmore Aff. ¶21.

## IV.    SECRETARIES STALDER AND LEBLANC

Secretaries Stalder and LeBlanc were, during their respective times as Secretary of the Department of Corrections, responsible for promulgating rules, regulations, and the inmate Disciplinary Rules and Procedures for Adult Offenders (which are part of the Administrative Code). LA. ADMIN. CODE tit. §341(B) (the inmate "rules, regulations, and procedures may only be changed by the Secretary of the Department of Public Safety and Corrections."); *see also e.g.* Exhibit C, p. 3 (preface by Secretary LeBlanc); Exhibit F, p. 1 (preface by Secretary Stalder).

In addition to the Disciplinary Rules, Secretaries Stalder and LeBlanc implemented and were tasked with the sole authority to adopt and change the Department's Administrative Remedy Procedure. La. Rev. Stat. Ann. 15:1171(A); LA. ADMIN. CODE tit. §325(AUTHORITY NOTE) ("Promulgated in accordance with R.S. 1171, et seq.").

The Department's Administrative Remedy Procedure, created to give inmates a "formal grievance mechanism," explicitly removes all lockdown review board decisions from review or appeal. LA. ADMIN. CODE tit. §325(C)(4). The only other decisions not appealable through the administrative remedy procedure are decisions of the court, the pardon and parole board, and the Louisiana Risk Assessment Panel. *Id.* §§325(C)(1)-(3).

Secretary LeBlanc has been a business partner to and is a "really good friend" of Warden Burl Cain's. Gordon Russell & Katie Moore, *Former Corrections Insider Reaps Work-Release Deals: Competitive Selection Process Fails to Materialize*, THE ADVOCATE (Oct. 13, 2014), http://theadvocate.com/correctionsproject.

Secretary LeBlanc is involved with and advises Warden Cain on decisions regarding inmates, including Mr. Whitmore, in the Prison's solitary tiers. Secretary LeBlanc considered closing the extended lockdown unit at the Prison in 2010, and reported to The Advocate that he intended to keep the inmates in isolation even if the solitary tier was closed. James Ridgeway & Jean Castella, *Angola Prison May Close Lockdown Unit but Vows to Keep Inmates in Isolation*, THE ADVOCATE (Oct. 15, 2010), http://solitarywatch.com/2010/10/15/angola-prison-may-close-lockdown-unit-but-vows-to-keep-inmates-in-isolation/.

## V. WARDEN CATHY FONTENOT

Warden Fontenot was an assistant warden at the Prison for 19 years. During this time she responded to all media requests and public information matters. She also reported to the Warden and Deputy Wardens "on all matters related to inmate classification…" Rec. Doc. 57-4, ¶2.

Warden Fontenot is generally familiar with websites that discuss Mr. Whitmore's lengthy confinement to solitary, the difficult conditions of that confinement, and his pleas to be released. Rec. Doc. 57-4, ¶3 and attached exhibits.

Mr. Whitmore has written personally to Warden Fontenot about his lengthy confinement in solitary. Whitmore Aff. ¶28. She has personally denied his request for visits and in the course of denying these visits, Warden Fontenot spoke with Maria Hinds, one of Mr. Whitmore's supporters and friends. Ms. Hinds also made Warden Fontenot aware of his lengthy stay in solitary confinement. Whitmore Aff. ¶29.

At least one of Mr. Whitmore's Board review summaries has Warden Fontenot's name on it and is blank, except for the notation "record in Warden Fontenot's office" and "Wdn. Font. 11-5-13." Ex. D, p. DPSC – 002031.

## VI.   **WARDEN RICHARD PEABODY**

Warden Richard Peabody is a deputy warden at the Prison and has been employed in some capacity at the Prison for 37 years. He has been at the Prison since the day Mr. Whitmore arrived and was placed in solitary.

Sometime in 2011-2012, Warden Peabody told Mr. Whitmore that solitary was where "he belonged" and that he would not release Mr. Whitmore from solitary. Whitmore Aff. ¶¶26-27.

Warden Peabody was at various times during Mr. Whitmore's confinement to solitary the warden in charge of security and classification. Whitmore Aff. ¶24. During the 80s and 90s, Warden Peabody was the warden in charge of the CCR, or solitary, tiers. Whitmore Aff. ¶23. He is listed as the "authority" for Mr. Whitmore's confinement to solitary at least once on Prison-produced records related to Mr. Whitmore. Ex. G, p. 4 (right column, bottom half of page).

As the Warden previously in charge of security and classification and previously in charge of the solitary tier, Warden Peabody knows that the Board review process is a rote exercise, that the forms are completed before they are given to the inmate, and that there is no way for Mr. Whitmore to challenge the decision of the Board. Warden Peabody has not taken

any steps to change the process or see that Mr. Whitmore is properly evaluated for suitability in the general population.

## VII.   APPLICABLE LAW

### A.  Qualified Immunity

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, (1982). The "strong public interest in protecting public officials from the costs associated with the defense of damages actions" is "best served by a defense that permits insubstantial lawsuits to be quickly terminated." *Crawford-El v. Britton*, 523 U.S. 574, 590 (1998). There is no unfairness attributable to "holding one accountable for actions that he or she knew, or should have known, violated the constitutional rights of the plaintiff." *Id.* at 591.

Courts evaluate such claims of qualified immunity using a two-part test: "(1) whether the facts that a plaintiff has shown establish a violation of a constitutional right; and (2) whether the right was clearly established at the time of the defendant's alleged misconduct." *Wilkerson v. Goodwin*, 774 F.3d 845, 851 (5th Cir. 2014) (citations omitted). The court may examine the two factors in any order. *Id.* "If the law was clearly established, the immunity defense should ordinarily fail, since a reasonably competent public official should know the law governing his conduct." *Crawford-El*, 523 U.S. at 591 (emphasis added).

To be "clearly established" for the purposes of qualified immunity "the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Wilkerson v. Goodwin*, 774 F.3d. at 851. This inquiry "requires an

assessment of whether the official's conduct would have been objectively reasonable at the time of the incident." *Id.* (citations omitted).

### B.  Qualified Immunity on Motions for Summary Judgment

A nonmoving party can defeat a motion for summary judgment by citing to the record or by "'showing that the materials [defendants] cited do not establish the absence or presence of a genuine dispute.'" *Wilkerson v. Stalder* (*Wilkerson I*), No. Civ .A. 00-304, 2013 WL 6665452, at *4 (M.D. La. Dec. 17, 2013) (quoting Fed. R. Civ. P.  56(c)(1)) *aff'd sub nom. Wilkerson v. Goodwin*, 774 F.3d 845 (5th Cir. 2014).

Motions for summary judgment based on qualified immunity should be denied if the reasonableness of a defendant's conduct "mandates a number of factual inferences." *Cox v. Columbia Cas. Co.*, No. Civ. A. 12-306-SDD, 2014 WL 29456, at *10 (M.D. La. Jan. 3, 2014). Such qualified immunity motions should likewise fail where there is a factual dispute as to whether the defendant's conduct was reasonable. *Kelly v. LaForce*, 288 F.3d 1, 7 (1st Cir. 2002); *Victoria W. v. Larpenter*, No. Civ. A. 00-1960, 2001 WL 263080, at *3 (E.D. La. Mar. 15, 2001); *see also McKinney v. City of Southaven,* No. Civ. A. 9-46, 2010 WL 1380391, at *1 (N.D. Miss. Mar. 31, 2010).

If a nonmovant affirms he "cannot present facts essential to justify its opposition" because he has not had the opportunity to make full discovery, the court may: (1) defer considering the motion or deny it;(2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Fed. R. Civ. P. 56(d); *Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986).

*Harlow v. Fitzgerald*, 457 U.S. 800 (1982), and its progeny's suggestion that qualified immunity should generally be decided before extensive discovery is based on the Supreme

Court's missive that ordinarily all a court deciding the issue of qualified immunity "need determine is a question of law." *Mitchell v. Forsyth*, 472 U.S. 511, 528 (1985). Where the defendant's claim to immunity rests on factual issues, the immunity issues becomes "inextricably bound up with the merits." *DiMarco v. Rome Hosp. & Murphy Mem'l Hosp.*, 952 F.2d 661, 666 (2d Cir. 1992).

In such cases, denial of a motion for summary judgment based on the alleged facts of qualified immunity is not appealable, *Land v. Dietz*, 276 F. App'x 384, 387 (5th Cir. 2008), and the Court can defer ruling of the motion and order further discovery. FED. R. CIV. P. 56(d).

## VIII. THE DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY BECAUSE EACH CAUSALLY CONTRIBUTED TO MR. WHITMORE'S CONSTITUTIONAL DEPRIVATIONS

A defendant is properly held individually liable under section 1983 if he is "either personally involved in the acts causing the deprivation of a person's constitutional rights, or there [is] causal connection between an act of the [defendant] and the constitutional violation sought to be redressed." *Lozano v. Smith*, 718 F.2d 756, 768 (5th Cir. 1983); *Miller v. Cain*, No. Civ. A. 12-730-JJB, 2013 WL 5550900, at *3 (M.D. La. Oct. 8, 2013).

Such a causal connection may be shown where the alleged "constitutional deprivation and practices occur as a result of the implementation of the [defendant's] affirmative wrongful policies by his subordinates, or where the [defendant] wrongfully breaches an affirmative duty specially imposed upon him by state law." *Id.*

"[L]iability exists even without overt personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation." *Miller*, 2013 WL 5550900, at *3 (finding plaintiff's allegations of defendants' actions and inactions alleged "policies which have resulted in a denial of adequate medical treatment.") (citing *Thompkins v.*

*Belt,* 828 F.2d 298 (5th Cir.1987); *Grandstaff v. City of Borger,* 767 F.2d 161 (5th Cir.1985), *cert. denied,* 480 U.S. 917 (1987)); *see also Outley v. Cain*, No. Civ. A. 14-219-SDD-SC, 2014 WL 7186751, at *4 (M.D. La. Dec. 16, 2014).

### A. The Secretaries' Policies Directly Denied Mr. Whitmore Due Process and Contributed to Further Violations of his Constitutional Rights

Secretaries Stalder and LeBlanc each implemented the Disciplinary Rules and Administrative Review Process that prevented Mr. Whitmore from seeking review of his 35 year confinement in solitary. LA. ADMIN. CODE tit. §§325(C)(4); 341(B); Exhibit C, p. 3 (preface by Secretary LeBlanc); Exhibit F, p. 1 (preface by Secretary Stalder). These policies directly deprive Mr. Whitmore and all other inmates of the well-established right to due process to which they are entitled when they are "indefinitely placed in highly restrictive conditions." *Wilkerson v. Goodwin*, 774 F.3d. at 857-858.

Without possibility of review or established criteria for reclassification into the general population, an inmate like Mr. Whitmore faces only the vagaries and whims of the Board or whoever has the most influence over them, and he has no ability to know what is what.

The Board members who told Mr. Whitmore they had no ability to release him and the Wardens who told the Board he shouldn't be released at all were allowed to deny Mr. Whitmore of his First, Eighth, and Fourteenth amendments because the Secretaries issued policies that failed to ensure due process was afforded. Moreover, the policies themselves denied Mr. Whitmore the due process review of his classification required by the Fourteenth Amendment.

It was not reasonable for either Mr. Stalder or Mr. Leblanc, at any time during their role as Secretary, to believe that a policy allowing inmates to remain in solitary without taking duration of confinement into consideration and without opportunity for review is a constitutionally sound policy. *Id.* at 858 ("no reasonable prison official could conclude that

continuing four decades in indefinite solitary confinement would not implicate a liberty interest protected by due process.").[4]

It is of no moment whether the Secretaries knew Mr. Whitmore or personally approved his classification into solitary. The Secretaries' policies are causally connected to Mr. Whitmore's extensive and lengthy constitutional deprivations and their request for qualified immunity should be denied.

Additionally, Secretary LeBlanc's affidavit omits his close affiliation with Warden Cain, the Warden who has spoken to the media about why he keeps Mr. Whitmore in solitary, and omits his 2010 investigation into shutting down the solitary tier and accompanying promise to keep the inmates, including Mr. Whitmore, in isolation.

Wardens Fontenot and Peabody's requests for qualified immunity suffer from similar problems: each has acted or failed to act in a way that has directly contributed to the violation of Mr. Whitmore's constitutional rights and his indefinite stay in solitary.

### B. Disputed Factual Issues Exist as to Whether Warden Fontenot Contributed to Mr. Whitmore's Indefinite Stay in Solitary

Warden Fontenot is generally familiar with websites that discuss Mr. Whitmore's lengthy confinement to solitary, the difficult conditions of that confinement, and his pleas to be released. Rec. Doc. 57-4, ¶3 and attached exhibits. She also affirms that she reported to the Warden and Deputy Wardens "on all matters related to inmate classification…" Rec. Doc. 57-4, ¶2.

---

[4]     Defendants do not contest the well-established state of Mr. Whitmore's alleged constitutional rights. To the extent they request summary judgment on qualified immunity but do not dispute that his alleged rights are well-established, they have waived those arguments and conceded the point. Plaintiff will not recite the law on this point as it is included in his Opposition to Defendant's Motion for Rule 7 Reply and his Rule 7 Reply. Rec. Docs. 51, 56. In an abundance of caution Mr. Whitmore fully incorporates those briefs by reference here.

In discussing these classification matters with the Warden and the Deputy Warden, it is unclear whether Warden Fontenot ever addressed or had the opportunity to address Mr. Whitmore's continued classification in solitary, or whether she ever suggested to the Warden or a Deputy Warden that he be properly reviewed and reclassified. Her knowledge of his situation combined with her failure to act makes her deliberately indifferent to Mr. Whitmore's constitutional deprivations and she cannot escape individual liability. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Gobert v. Caldwell*, 463 F.3d 339, 345 (5th Cir. 2006).

Moreover, Warden Fontenot's affidavit does not address her conversations with Maria Hinds, Whitmore Aff. ¶29, or the fact that her name appears on at least one of Mr. Whitmore's Board review summaries as recent as November 2013. Ex. D, p. DPSC – 002031. At the very least, the documents and statements from Mr. Whitmore create questions of fact that preclude summary judgment and that should be explored in discovery.

Warden Fontenot's claim to qualified immunity "mandates a number of factual inferences" for the Court to decide in her favor and does not have sufficient evidence of *undisputed* materials facts entitling her to relief. *See Cox*, 2014 WL 29456 at *10; *Kelly*, 288 F.3d at 7; *Victoria W.*, 2001 WL 263080 at *3. Warden Fontenot's motion should be denied.

### C.  Warden Peabody Directly Contributed to Mr. Whitmore's Indefinite Stay in Solitary

Warden Peabody likewise fails to address the conflicts in the evidentiary record that show he did have direct involvement with Mr. Whitmore's indefinite confinement to solitary. *See* Whitmore Aff. ¶¶22-27; Ex. G. Mr. Whitmore stated in his Rule 7 Reply (so Warden Peabody was on notice of the factual issue), and states again in his affidavit, that he had a conversation with Warden Peabody in which Peabody refused to release Mr. Whitmore from solitary and told him he was "where he belonged." Rec. Doc. 56, p. 15; Whitmore Aff. ¶¶26-27.

Yet, Warden Peabody claims he has had no direct involvement with keeping Mr. Whitmore in solitary. Even the Warden's own affidavit, addressing only his time as Deputy Warden of Programs and Operations, alludes to a time when his duties included classification and housing of inmates and a time when he did participate in Mr. Whitmore's Boards and kept him in solitary. Rec. Doc. 57-5, ¶¶2-6.

The Warden's argument for solitary is based almost exclusively on the fact that he believes Mr. Whitmore's claims prior to January 2013 have prescribed and are irrelevant to the Court's analysis of qualified immunity. Rec. Doc. 57-1, p. 8. The Warden cites no support for his proposition and Mr. Whitmore shows below why his claims are not prescribed.

Moreover, Warden Peabody fails to address his comment, made only a few years ago, that Mr. Whitmore was where he belonged. This creates an issue of fact as to whether Warden Peabody is still actively ensuring that Mr. Whitmore remains where he belongs. It is a fact that Mr. Whitmore should be allowed to explore even if the court finds his claims have prescribed.

Warden Peabody has been involved in keeping Mr. Whitmore in solitary the longest and Mr. Whitmore contends discovery will reveal the further depths of Warden Peabody's involvement with his indefinite stay in solitary.

Because Warden Peabody has not addressed factual issues surrounding his current involvement with Mr. Whitmore's confinement to solitary and because Mr. Whitmore's claims are not prescribed, Warden Peabody's motion should be denied.

## IX.   DEFENDANTS' REPEATED AND REGULAR IMPOSITION OF SOLITARY CONFINEMENT FOR IMPROPER PURPOSES CONSTITUES A CONTINUING VIOLATION

Louisiana's a one-year prescriptive period, or statute of limitations, for delictual actions applies to § 1983 claims. *Lewis v. Ascension Parish School Bd.*, 662 F.3d 343, 347 (5th Cir.

2011). Federal law, however, "governs when a cause of action arises." *Brosette v. City of Baton Rouge*, 837 F.Supp. 759, 762 (M.D.La. 1993).

Where the last act alleged by the plaintiff is part of an ongoing pattern of constitutional violations, "[t]he continuing violation theory provides that … allegations concerning earlier acts are not time-barred." *McGregor v. Louisiana State Bd. of Sup'rs*, 3 F.3d 850, 866 (5th Cir. 1993).

Where an inmate alleges that "prison officials repeatedly and regularly imposed lockdown for improper purposes" and that with each day of lockdown the inmate's "injuries increased," the limitations period begins "running from the last date of lockdown." *Turley v. Rednour*, 729 F.3d 645, 651 (7th Cir. 2013).

Every day of injury after the date on which an official began to display "deliberate indifference" to an inmate's cruel and unusual conditions is "fair game for the plaintiff's suit, by virtue of the doctrine of 'continuing violation.'" *Heard v. Sheehan*, 253 F.3d 316, 318 (holding that each day officials prolonged inmate's suffering by not addressing his medical issue "marked a fresh infliction of punishment that caused the statute of limitations to start running anew.") (citing *et al. Newell Recycling Co. v. EPA*, 231 F.3d 204, 206-07 (5th Cir. 2000)).

The cases cited by defendants in support of their claim for prescription do not address the substance of the continuing tort theory and explicitly acknowledge that federal law governs when a cause of action arises. Rec. Doc. 57-1, p. 4 (citing *Lewis v. Ascension Parish School Bd.*, 662 F.3d 343, 347-48 (5th Cir. 2011) (which acknowledges the continuing violation theory but states plaintiff in that case abandoned it); *Brosette v. City of Baton Rouge*, 837 F.Supp. 759, 762 (M.D.La. 1993) (acknowledging federal law governs when a cause of action arises).

Even when a defendant like Secretary Stalder was last involved with the plaintiff a few years before he filed suit, actions by that defendant that contributed to the plaintiff's are not prescribed if they contributed to the constitutional deprivation and continuing injury. *Donaldson v. O'Connor*, 493 F.2d 507, 529 (5th Cir. 1974) *vacated on other grounds by*, *O'Connor v. Donaldson*, 422 U.S. 563 (1975)). Where additional violations of law occur on an otherwise-time barred claim and injury continues accruing during incarceration, a defendant may have violated the plaintiff's constitutional rights beyond the close of the limitations period and a plaintiff can still recover. *Barnes v. Corizon Health Care, Inc.*, No. 2:13-cv-862-WKW, 2014 WL 3767583, *7-8 (M.D. Ala. July 31, 2014) (citations omitted).

Mr. Whitmore's submitted evidence, including his Board summaries and his affidavit, shows that "prison officials repeatedly and regularly imposed lockdown for improper purposes" and that with each day of lockdown his "injuries increased." Therefore, the limitations period does not begin to run until "the last date of lockdown" and his claims are not time-barred under Louisiana's one-year rule. *Turley*, 729 F.3d at 651.

## CONCLUSION

Mr. Whitmore has been denied his right to have political beliefs, to proper review of continued confinement in solitary, to be treated and punished similarly to the white inmates who also escaped from the prison, and to be free from cruel and unusual punishment. Defendants claim they never knew him personally and never spoke to him, so they can't be held personally liable for these constitutional deprivations.

But the evidence shows, and will continue to reveal, that each defendant named in this action causally contributed to the repeated and regular denial of Mr. Whitmore's constitutional rights and to his indefinite confinement in solitary. They should not be allowed to claim qualified

immunity without demonstrating to the Court that their actions or failure to act was objectively reasonable and undisputed.

Mr. Whitmore requests the Court deny the defendants' motion in its entirety and lift the stay on discovery so that his case can proceed. If the Court is inclined to grant portions of the defendants' motion, Mr. Whitmore requests the Court defer deciding and grant him time under Rule 56(d) to file a motion for discovery on the disputed factual issues.

Respectfully submitted,

*/s/Michelle M. Rutherford*
Michelle M. Rutherford, Bar No. 34968, TA
Richard E. Sarver, Bar No. 23558
David N. Luder, Bar No. 33595
Erica A. Therio, Bar No. 34115
BARRASSO USDIN KUPPERMAN
 FREEMAN & SARVER, L.L.C.
909 Poydras Street, Suite 2400
New Orleans, Louisiana 70112
Telephone:    (504) 589-9700
Facsimile:    (504) 589-9701
Email: mrutherford@barrassousdin.com
        rsarver@barrassousdin.com
        dluder@barrassousdin.com
        etherio@barrassousdin.com

Rose Murray, Bar No. 34690
JONES, SWANSON, HUDDELL & GARRISON, L.L.C.
601 Poydras Street, Suite 2655
New Orleans, LA 70130
Telephone:    (504) 523-2500
Telecopier:    (504) 523-2508
Email: rmurray@jonesswanson.com

***Attorneys for Kenny Whitmore (#86468)***

20

## CERTIFICATE OF SERVICE

I hereby certify that on this 20th day of February 2015, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel registered for electronic service.

*/s/Michelle M. Rutherford*

*{1045822_1}*