RECEIVED
MAY 0 1 2006
P.C.C. Legal Office

ACCEPTED
MAY 0 3 2006
P.C.C. Wardens Office
Administration Remedy Procedure

EXHIBIT "A"

Administration Remedy Procedure

To: Warden Henderson.
From: Russell Hewitt #331926
Date: 4·24·006
Location: Cell Block Unit (upper Right cell #11)

Re: In. Request for Administration Remedy.

On the above Date, I Russell Hewitt #331926 Hereby Submit this Request in Good Faith in use of the Administration Remedy Procedure (A.R.P) under the Prison Litigation Reform Act (P.L.R.A) due To Being subject to Cruel and unusual punishment. During the period of Jan 19th until this Date, April 24th 2006. I, Russell Hewitt #331926 was Placed in Extended Lockdown Here At Phelps Correctional Center In which, I Am confined to a long lock in time of 23 Hours a day with (1) one Hour of Recreation Given As a United States And State Constitutional Right, law.

According to the applied definition of the U.S. And State Constitutional law that require That: An inmate Held For a long lock in period of time Must Be Provided excercise time of (1) one Hour as His Basic Minimal Human need. This is Stipulated As a Right, A law, And An order From And within the United State And State Constitution. It is not a Privelege.

Here At Phelps Correctional Center, The Above Mentioned United State And State Constitution order And law is Being Violated when it is Treated As a Privelege That can be Taken in lieu of Minor And Non- Relating, (To Recreation), Disciplinary Reports

'cut'd
Pg. II
→

And imposed Sanctions.
The imposing of certain Disciplinary actions, which Restricts excercise time combined with long lock in periods, that confines an inmate to its cell for the (1) one Hour given to the inmate by the United States and State Constitution, is cruel and unusual punishment, overly restrictive and harsh, and violates the U.S. and State Constitutional law; that upholds the decency and fundamental fairness of an inmates civilized measure of life's necessities.

This (1) one Hour recreation inmates are to recieve is not a privelege or an incentive that is earned. Therefore it should not be used as a vice to punish the inmate, it is not a privelege.

Relief Desired

I, Russell Hewitt #331926, am requesting that this Constitutional right be given and treated as such, and not continue to be violated by the treat-ment I recieve as a privelege, by facility officials who hold the Disciplinary board here at Phelps Correctional Center.

Respectfully Submitted,

Russell Hewitt #331926 UBC#11

CASE NUMBER: PCC-2006-0237

FIRST STEP RESPONSE FORM (FIRST STEP RESPONDENT)

TO: Hewitt, Russell 331926

**CB**

Living Quarters

Response to request dated 04/24/06, received in this office on 05/01/2006

Your request for Administrative relief has been received and reviewed. In your complaint you allege that while being housed in the cellblock that you have the right to one hour excercise daily for every 24 hours while housed in the cellblock. That according to the U. S. and state constitutution, this is a right and not a privilege. You allege that this right is being violated here at PCC through the imposing of certain Disciplinary actions which restricts excercise time. According to the La. Dept. of Public Saftey and Corrections, Disciplinary Rules and Procedures for Adult Inmates, dated December, 2000, on page 10, under the section for Sanctions there are allowable sentences for various offenses. For serious violations, (schedule B), on page 12, sentence #3, allows as one of the permissible sentences, confinement to room or cell for up to 30 days. Being taken through the Disciplinary process is Due Process. If you feel that you were tried or sentenced inappropriately then you may appeal any sentence received during this process. I do not find any merit with this complaint and your request for relief is denied.

Prepared by: _____

_____
6/1/06
Date

_____
Unit Head

**Instructions to Inmate:** If you are not satisfied with this response, you may go to Step Two by checking below and forwarding to the ARP Screening Officer in the manila envelope within 5 days of your receipt of this decision.

(✓) I am not satisfied with this response and wish to proceed to Step Two.

Reason: I, RUSSELL HEWITT #331926, AM NOT SATISFIED WITH THIS RESPONSE AND WISH TO PROCEED BECAUSE BEING MY CLAIM IS NOT BEING ANSWERED WITH A COMPLETE UNDERSTANDING OF AN INMATES RIGHT OVER A PRIVLEGE.

_____
6·02·006
Date

_____
Inmate's Signature   DOC# #331926

**EXHIBIT "A2"**

LOUISIANA DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS
CORRECTIONS SERVICES

CASE NUMBER: PCC-2006-0237

SECOND STEP RESPONSE FORM
(HEADQUARTERS)

TO: <u>Hewitt, Russell   331926</u>
     Inmate Name and Number

<u>PCC</u>
Living Unit

Response to Request Dated 06/02/2006, Received in this Office on 06/07/2006:

Your request for an Administrative review of ARP# PCC-2006-0237 has been received. A qualified member of the Headquarters staff has reviewed your request in order to render a fair and impartial response.

It has been determined, after a thorough review of all pertinent information provided, that your request was satisfied. The response provided is clear and concise. After due process hearings by a properly composed Disciplinary Board you were sanctioned to "confinement to room". The penalty of room confinement is an approved sanction per the Louisiana Department of Public Safety and Corrections Rule Book for Adult Inmates. Your allegation of not being allowed exercise is not correct. You have unimpeded access to space in your assigned cell to exercise.   As such, this office concurs with staff and find no further investigation warranted.

Your request for Administrative Remedy is denied.

_____<u>7-20-06</u>_____
Date

_____<u>Linda Ramsay</u>_____
Secretary's Signature or His Designee

**EXHIBIT "A3"**



# DEPARTMENT OF
## PUBLIC SAFETY AND CORRECTIONS

KATHLEEN BABINEAUX BLANCO, GOVERNOR

RICHARD L. STALDER, SECRETARY

# MEMORANDUM

TO:             Raymond Huddleston #409685
                Cellblock

FROM:           Delanie Burgess
                ARP Screening Officer, Phelps Correctional Center

DATE:           October 3, 2006

SUBJECT:        ARP PCC-2006-0529

Attached, you will find a copy of the response to an ARP that was previously written in regards to outside exercise while housed in the Cellblock.

Attachment

db

EXHIBIT "A4"

TO: Lewis, Travis 473262

Cellblock
Living Quarters

Response to request dated 09/03/06, received in this office on 09/06/2006

Your request has been received and reviewed.

You claim that you are being denied "mandatory out of cell exercise" while being housed in the Extended Lockdown Unit of Phelps Correctional Center.

You claim that being sentenced to cell confinement by the Disciplinary Board is inappropriate and illegal.

The Louisiana Department of Public Safety and Corrections Disciplinary Rules and Procedures for Adult Inmates handbook clearly states on page (12), paragraph (03) under penalty schedules for Schedule B offenses, that inmates may be sentenced to "Confinement to room or cell for up to (30) days (this does not exclude participation in work, meals, medical, or other essential call-outs)."

This is one sentence that a Disciplinary Board may impose. Repeated rule violations and hearings at future Disciplinary Boards may result in penalties of the same caliber.

The rule book does not stipulate a "set limit" of cell confinement that an inmate may receive for multiple rule violations.

You are not being denied meals, medical or any other essential call-outs, nor or you being denied your allotted shower time.

The sentences you have received are well within the guidelines. You are losing "privileges", not "rights" by choosing to disobey the rules and regulations of the Department and this Institution.

I can find no merit to your complaint and therefore deny your request for relief.

Prepared by: _A. Col. M. N____

_9-14-06_ .     _9/15/06_       _Robert _____
Date                               Unit Head

Instructions to Inmate: If you are not satisfied with this response, you may go to Step Two by checking below and forwarding to the ARP Screening Officer in the manila envelope within 5 days of your receipt of this decision.

( ) I am not satisfied with this response and wish to proceed to Step Two.

Reason: 
_____
_____
_____
_____

_____                           _____
Date                                          Inmate's Signature   DOC#

EXHIBIT "A5"

# CONSTITUTION OF THE UNITED STATES OF AMERICA

### Const. Amend. 8
### Bail--Punishment.

Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted.

### Const. Amend. 14, @ 1
### Sec. 1. [Citizens of the United States.]
### *(Ratified July 9, 1868)*

All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

EXHIBIT "C"

## La. Const. Art. I, @ 20 (2004)

## 20. Right to Humane Treatment

Section 20. No law shall subject any person to euthanasia, to torture, or to cruel, excessive, or unusual punishment. Full rights of citizenship shall be restored upon termination of state and federal supervision following conviction for any offense.

EXHIBIT "C"

Case 2:05-cv-00001-JVB-RbR Document 5-1 Filed 11/29/06 Page 9 of 47 PageID #: 29

STATUS: CONSULT SLIP LAWS CITED BELOW FOR RECENT CHANGES TO THIS DOCUMENT
LEXSEE 2006 La. HB 377 -- See section 1.

@ 15:828. Classification and treatment programs; qualified sex offender
programs; reports; additional good time

EXHIBIT "D"

A. (1) Persons committed to and in the physical custody of the department
shall be treated in a humane manner, and the department shall direct efforts
toward the rehabilitation of such persons in order to effect their return to the
community as promptly as practicable. In order to accomplish this purpose, the
secretary of the Department of Public Safety and Corrections shall establish
programs of classification and diagnosis, education, casework, counseling and
psychotherapy, vocational training and guidance, work, library and religious
services, and such other rehabilitation programs as are consistent with
available resources, physical custody, and appropriate classification criteria.
Such programs shall include but not be limited to the prison rehabilitation
pilot program as set forth in R.S. 15:828.1. Additionally, he shall
institute procedures to provide for the study and classification of all inmates
of penal or correctional institutions under the jurisdiction of the
department.

(2) (a) In cases where the offender has been convicted of a violation of a
sex offense as defined in R.S. 15:541(14.1) and, in accordance with the
penalty provisions of the particular statute, has been sentenced to hard labor
in the custody of the Department of Public Safety and Corrections and is housed
in a state correctional facility, the department, subject to the availability of
resources and appropriate individual classification criteria, should provide
counseling and therapy by institutional mental health staff in a sex offender
program until successfully completed or until expiration of sentence, release on
parole in accordance with and when permitted by R.S. 15:574.4, or other
release in accordance with law, whichever comes first.

(b) For purposes of this Paragraph, a "sex offender program" means one
which includes either or both group and individual therapy and may include
arousal reconditioning. Group therapy should be conducted by two therapists, one
male and one female, and, subject to availability of staff, at least one of whom
should be licensed as a psychologist, board-certified as a psychiatrist, or a
clinical social worker.

(c) The social worker, psychologist, or psychiatrist shall provide the
Board of Parole with progress reports and information in accordance with
R.S. 15:574.4(C)(2).

B. The secretary shall prescribe rules and regulations in the facilities and
institutions under the jurisdiction of the department to encourage voluntary
participation by inmates in vocational training, adult education, literacy, and
reading programs. When funds are provided, such educational programs shall be
available at each penal or correctional institution under the jurisdiction of
the department. The rules and regulations may include provisions for furloughs
or good time, in addition to the provisions of R.S. 15:571.3(B) and 571.14,
for offenders who are otherwise eligible, but no offender shall receive more
than ten additional days per month and one hundred eighty days total good time
for program participation.

C. A prisoner who has been denied eligibility for diminution of sentence for
good behavior as provided in R.S. 15:537 shall not be eligible for
additional good time as provided in Subsection B of this Section.

HISTORY: Added by Acts 1968, No. 192, @ 1. Acts 1989, No. 336, @ 1;Acts 1991, No. 51, @ 1;Acts 1991, No. 766, @
1; Acts 1992, No.723, @ 1;Acts 1993, No. 484, @ 1, eff. June 10, 1993; Acts 1993, No. 671, @ 1; Acts 1993, No. 872,
@ 1; Acts 1994, 3rd Ex. Sess.,No. 110, @ 1; Acts 1994, 3rd Ex. Sess., No. 138, @ 1; Acts 2001,
No. 1206, @ 1.

EXHIBIT "D"

# I. PREFACE

This book of disciplinary rules and procedures constitutes clear and proper notice of same for each adult inmate sentenced to the Department of Public Safety and Corrections.

This book rescinds and supersedes the "Disciplinary Rules and Procedures for Adult Inmates" dated February 15, 1993 (as amended) and appeal decisions rendered pursuant to those rules and procedures.

# II. FOREWORD

The "Disciplinary Rules and Procedures for Adult Inmates" are established to help provide structure and organization for the prisons, and a framework within which the inmate population can expect the disciplinary system to function. They must be followed at all adult and contract facilities.

These rules, regulations, and procedures may only be changed by the Secretary of the Department of Public Safety and Corrections.

An inmate is only entitled to a due process hearing or other application of these procedures when loss of good time is involved. Otherwise, utilization of these procedures does not constitute the granting of any enforceable right or privilege to any inmate.

There are certain classification or other actions which may be taken that effect an inmate's custody status, job classification, housing assignment, institutional assignment and/or ability to participate in institutional programs or activities for which an inmate may expect routine change during the course of his incarceration. Such changes may result from classification decision making activity to promote institutional security or other legitimate institutional goals, or the imposition of other disciplinary penalties. Such changes may not be disciplinary penalties in and of themselves. In addition, any similar changes which result from the action of other Department Regulations and institutional policies are not considered penalties in the context of the disciplinary process.

In the event of a genuine emergency, such as a serious disturbance disrupting normal operations or a natural disaster, the Secretary or his designee may suspend any and all disciplinary rules and procedures for the duration of the emergency. Full hearings must be held within a reasonable time after the end of the emergency for those inmates who were subject to loss of good time.

Richard L. Stalder
Secretary

2

EXHIBIT "E1"

## III. DEFINITIONS

<u>ADMINISTRATIVE SEGREGATION:</u> A temporary holding area, preferably a cell, where inmates are held whose continued presence in the general population poses a threat to life, property, self, staff, other inmates, the security or orderly running of the institution, or who are the subject of an investigation. In addition, inmates who are pending transfer to another institution or pending assignment or re-assignment within an institution may be held in "Administrative Segregation." (Refer to section on "DISCIPLINARY PROCEDURES - Administrative Segregation Guidelines.")

<u>APPEAL:</u> A request by an inmate for review of a disciplinary decision. (Refer to section on "APPEALS.")

<u>ATTEMPT:</u> When an inmate has an intent to violate these disciplinary rules, whether or not he actually does something toward violating the rule.

<u>CLASSIFICATION:</u> A process for determining the needs and requirements of those for whom confinement has been ordered and for assigning them to housing units, work assignments, and programs according to their needs and existing resources. Classification Board actions, even if resulting from an incident handled in the disciplinary process, are not disciplinary sanctions.

<u>CONFIDENTIAL INFORMANT:</u> Person whose identity is not revealed to the accused inmate but who provides an employee(s) with information concerning misbehavior or planned misbehavior.

<u>CONSPIRACY:</u> Two or more persons working in combination for the specific purpose of violating any disciplinary rule.

<u>COUNSEL AND COUNSEL SUBSTITUTES:</u> Counsel is an Attorney at Law of the inmate's choice who must be retained by the inmate. Counsel Substitutes are persons not admitted to the practice of law, but inmates who aid and assist, without cost, an accused inmate in the preparation and presentation of his defense and/or appeal. Counsel Substitutes are only those inmates appointed by the Warden, or his designee. (Refer to section on "DISCIPLINARY PROCEDURES - Counsel Substitutes.")

<u>CUSTODY:</u> The type of housing and the level of supervision required for an inmate. Custody assignments will reflect public safety as the first priority, staff and inmate safety within the institution as the second priority, and then institutional or inmate need.

<u>DISCIPLINARY DETENTION/EXTENDED LOCKDOWN:</u> Maximum security area for confining inmates. (Refer to section on "DISCIPLINARY PROCEDURES - Disciplinary Detention/Extended Lockdown.")

3

<u>DISCIPLINARY DETENTION/ISOLATION:</u> A punitive holding area where inmates are temporarily confined in a restricted situation after being so sentenced by the Disciplinary Board. (Refer to section on "DISCIPLINARY PROCEDURES - Disciplinary Detention/ Isolation.")

<u>DISCIPLINARY REPORT:</u> A report on the approved form filed by an employee who has reason to believe that an inmate(s) has violated one or more disciplinary rules. Disciplinary Reports may be heard by the Disciplinary Officer or the Disciplinary Board.

<u>HEARINGS:</u> A fair and impartial review conducted by the Disciplinary Officer or the Disciplinary Board.

<u>INVESTIGATION REPORT:</u> A report submitted for disposition to the Disciplinary Board detailing the facts uncovered in an investigation.

<u>MAXIMUM CUSTODY:</u> Assignment of an inmate to a cell based upon the need to protect the inmate, other inmates, the public, staff, or the institution. This includes Administrative Segregation, Disciplinary Detention/Extended Lockdown and Working Cellblocks and may include Protective Custody/Extended Lockdown. Movements inside the secure perimeter of a facility by maximum custody inmates are closely monitored by staff and may include the utilization of restraints in accordance with institutional policy. Movement outside of a secure perimeter is accomplished only under armed supervision or when appropriately restrained or otherwise secured.

<u>MEDIUM CUSTODY:</u> Generally, assignment of an inmate to a dormitory housing area. Movement outside of a secure perimeter is accomplished only under armed supervision or when appropriately restrained or otherwise secured. Institutional procedure governs internal movement controls.

<u>MINIMUM CUSTODY:</u> Generally, assignment of an inmate to a dormitory housing area. Movement outside of a secure perimeter is usually authorized without armed supervision or restraint. Institutional procedure governs the level of staff supervision when outside the secure perimeter, as well as internal movement controls.

<u>POSTED POLICY:</u> As used herein, applies to policy memorandums detailing what behavior is required or forbidden of inmates and generally reflects the individual needs of the facility--such as, but not limited to, count procedure, off-limits areas and ID Card policy. Posted Policies must be distributed and posted in such a manner that inmates are placed on notice as to what behavior is required or forbidden, and the actions that may be taken should the policy be violated. (See Department Regulation No. C-01-006 "Institutional Policies/Procedures and Inmate Posted Policies.")

<u>PROTECTIVE CUSTODY/EXTENDED LOCKDOWN:</u> A classification utilized when an inmate has a verifiable need for protection. (Refer to section on "DISCIPLINARY PROCEDURES - Protective Custody/Extended Lockdown.")

4

**EXHIBIT "E3"**

will not be given for time spent in Administrative Segregation on a request for protection or while awaiting transfer to another area.

Inmates in Administrative Segregation shall be allowed to receive all correspondence and to originate correspondence. Inmates in Administrative Segregation will be allowed visits; clean clothing on a scheduled basis; toothbrush and toothpaste; sufficient heat; light; ventilation; toilet facilities; and the same meals as other inmates. The status of inmates in Administrative Segregation should be reviewed by an appropriate review board at least every seven days for the first two months and every 30 days thereafter.

COUNSEL SUBSTITUTES: Behavior of Counsel Substitutes and Legal Aid Office workers must be above reproach. A job change is mandatory following conviction of a serious offense. Counsel Substitutes are not required to file appeals but should inform the inmate who wants to appeal of the proper way to file. They may be removed from their positions if the Warden or his designee believes it appropriate. No inmate (Counsel Substitute or not) can sell or trade for value legal services of any sort. Inmates who are not Counsel Substitutes may not provide services to other inmates without the approval of the Warden or his designee.

DISCIPLINARY BOARD: A properly composed board will consist of two people--a duly authorized Chairman, and a duly authorized Member--each representing a different element (security, administration, or treatment.) The Chairman must be approved by the Secretary or his designee. The Member must be approved by the Warden or his designee. Decisions must be unanimous. If the decision is not unanimous, the case is automatically deferred for referral to a different Disciplinary Board. If the second decision is not unanimous, then a finding of Not Guilty is appropriate. Hearings shall be held within seven days of the date of the report, excluding weekends and holidays, for those inmates not placed in Administrative Segregation, unless the hearing is prevented by exceptional circumstances, unavoidable delays, or reasonable postponements. Reasons for all delays should be documented.

DISCIPLINARY OFFICER/LOW COURT HEARING: A ranking security officer (Lieutenant or above) or any supervisory level employee from administration or treatment appointed by the Warden who conducts hearings of minor violations and who may impose only minor sanctions. Any Disciplinary Officer directly involved in the incident or who is biased for or against the accused cannot hear the case unless the accused waives recusal. Performance of a routine administrative duty does not necessarily constitute "direct involvement" or "bias." At these hearings, the accused inmate represents himself and is given full opportunity to speak in his own behalf. The presence of Counsel Substitutes, witnesses, or the accusing employee is not permitted. These hearings are not taped. Hearings shall be held within seven days of the date of the report, excluding weekends and holidays, for those inmates not placed in Administrative Segregation, unless the hearing is prevented by exceptional circumstances, unavoidable delays, or reasonable postponements. Reasons for all delays should be documented. The Disciplinary Officer may also hear inmates who have signed written requests for protection and may recommend appropriate action.

EXHIBIT "E4"

DISCIPLINARY DETENTION/EXTENDED LOCKDOWN: An indeterminate period of lockdown characterized by routine 90 day classification reviews to determine eligibility/suitability for release from this status. This type of segregation is used primarily after a Disciplinary Hearing for an inmate found guilty of violating one or more serious rules, or of being dangerous to himself or others, or of being a serious escape risk, or of posing a clear threat to the security of the facility. A Classification Board hearing is sufficient for an inmate who is initially classified as maximum custody.

Inmates in Disciplinary Detention/Extended Lockdown will be reviewed by an appropriate review board for possible release to a less restricted status approximately every 90 days.

DISCIPLINARY DETENTION/ISOLATION: A determinate period of lockdown that is characterized by a limit of 10 consecutive days without a 24 hour break or no more than 20 days in a 30 day period. After 10 consecutive days in Disciplinary Detention/Isolation, the inmate must be released for a period of time not less than 24 hours. No inmate may be confined in Disciplinary Detention/Isolation except by action of the Disciplinary Board on the basis of a Disciplinary Report.

Inmates in Disciplinary Detention/Isolation shall be allowed to receive all correspondence and to originate correspondence. Inmates in Disciplinary Detention/Isolation will be allowed: visits; clean clothing on a scheduled basis; toothbrush and toothpaste; sufficient heat; light; ventilation; toilet facilities; and the same meals as other inmates.

PROTECTIVE CUSTODY/EXTENDED LOCKDOWN: Utilized for an inmate in need of protection. A Disciplinary Board or Classification Board hearing is not necessary when an inmate has signed a written request for protection and is transferred to Protective Custody/Extended Lockdown by the Disciplinary Officer/Disciplinary Board or Classification Board.

Inmates in Protective Custody/Extended Lockdown should be reviewed by an appropriate review board for possible release to a less restricted status at least every 7 days for the first 2 months and every 30 days thereafter.

WORKING CELLBLOCK: An indeterminate period of assignment to a maximum custody status characterized by access to work and other programs consistent with security restrictions and institutional procedures. Classification reviews are utilized to determine eligibility/suitability for release from this status. This type of assignment is used primarily after a Disciplinary Hearing for an inmate found guilty of violating one or more serious rules, or of being dangerous to himself or others, or of being a serious escape risk, or of being in need of protection, or of posing a clear threat to the security of the facility. A Classification Board hearing is sufficient for an inmate who is initially classified as maximum custody.

**EXHIBIT "E5"**

the sentence, and must not participate in the hearing at all when he is the accusing employee, unless he is summoned to testify under cross-examination. The accused's record may be examined to discover a pattern of similar misbehavior or a pending suspended sentence. The record may be examined in order to determine an appropriate sentence; and

8.      Following the deliberations, the Chairman will announce the verdict. If the verdict is Guilty, the Chairman will then announce the sentence. The Board has full authority to suspend any sentence they impose for a period of up to 90 days.

<u>CORRECTING DISCIPLINARY REPORTS:</u>  A reviewing employee may change the rule number to fit the description prior to the hearing but should ensure that the accused gets a corrected copy of the report at least 24 hours before the hearing begins. Rule number(s) may be added if the offense is clearly described on the report. An incident may consist of several related events; however, each separate and distinct rule violation should be processed independently in the disciplinary system.

Before the hearing begins, the Board may change the rule number to match the description of alleged misbehavior, if necessary, and also may change the rule number at any point prior to the deliberations, but should offer the accused a continuance to prepare the defense. It is the description of the conduct and not the rule number which determines the offense. The continuance may be waived and does not necessarily need to be for 24 hours.

<u>EVIDENCE:</u> The Disciplinary Board shall carefully evaluate all evidence presented or stipulated. When the Disciplinary Report is based solely on information from a Confidential Informant, or from an inmate whose identity is known, it <u>must be corroborated</u> by witnesses (who may be other Confidential Informants), the record, or other evidence. The only time the accusing employee must be summoned for cross-examination is when the report is based solely on information from Confidential Informants. In order for the accuser to attest to the reliability of the information received from a Confidential Informant, the informant must not have been unreliable in the past and must have legitimate knowledge of the present incident(s).

## VI.  SANCTIONS

Sentences must fit the offense and the offender. An inmate with a poor conduct record may receive a more severe sentence than an inmate with a good conduct record for the same offense. Even so, serious offenses call for serious penalties. An inmate who violates more than one rule or the same rule more than once during an incident may receive a permissible sanction for each violation. After a finding of guilt for a new violation, a previously suspended sentence may be imposed as well as a new sentence. State and federal criminal laws apply to inmates. In addition to being sanctioned by prison authorities, inmates may also be prosecuted in state or federal court for criminal conduct. Restitution imposed in accordance with Department Regulation No. B-05-003 "Imposition

10

**EXHIBIT "E6"**

## SCHEDULE B

1. Reprimand;
2. Loss of Minor Privilege for up to 12 weeks, unless violation involved abuse of that privilege, then up to - 24 weeks;
3. Confinement to room or cell for up to 30 days (this does not exclude participation in work, meals, medical, or other essential call-outs);
4. Extra Duty - up to 8 days for each violation;
5. Disciplinary Detention/Isolation - up to 10 days for each violation;
6. Forfeiture of Good Time - up to a maximum of 180 days for each violation;
7. Quarters change;
8. Job change;
9. Loss of Hobbycraft - up to 12 months (at the discretion of the Warden or his designee, based upon the length of the sentence, this penalty may include loss of the hobbycraft box assignment--in such cases, the inmate would not be eligible to apply for resumption of this privilege until after the sentence has been served.) Loss of hobbycraft privileges that result from custody status changes, classification actions, housing or institutional assignment changes, other changes that may routinely occur during the course of incarceration, or the imposition of other disciplinary penalties are not to be considered as a "Loss of Hobbycraft" sanction in the context of the disciplinary process;
10. Custody change from minimum to medium custody status. (Imposition of this sanction may include transfer to another institution.) Any quarters change, job change, or other changes that may result from imposition of this sanction are not a separate penalty for purposes of this section unless expressly indicated as a sanction;
11. Custody change from minimum or medium custody status to maximum custody status (Working Cellblock or Disciplinary Detention/Extended Lockdown.) (Imposition of this sanction may include transfer to another institution.) Any quarters change, job change, or other changes that may result from imposition of this sanction are not a separate penalty for purposes of this section unless expressly indicated as a sanction;
12. Loss of visiting, if the violation involves visiting, to be reviewed by the Warden or his designee every 90 days; (restrictions relative to non-contact versus contact visiting are governed by Department Regulation No. C-02-008 "Inmate Visitation" and are not considered disciplinary penalties).

## PENALTY CLARIFICATIONS:

GOOD TIME: An inmate is presumed to have earned his good time for the month on the first day of the month and may forfeit such good time at any point during the month.

SUSPENDED SENTENCES: The Disciplinary Officer or the Disciplinary Board may suspend any sentence they impose for a period of up to 90 days. The period of suspension begins on the date of sentence. When the time period has expired, the report itself remains a part of the record, although the sentence may no longer be imposed.

12

005 "Forfeiture of Good Time from Inmates who Escape or Commit Battery on an Employee" may provide for forfeiture of good time in addition to the provisions of these procedures.

4.  **DISOBEDIENCE (Schedule A):** Inmates must obey the Posted Policies for the facility in which they are confined. They must obey signs or other notices of restricted activities in certain areas, safety rules, or other general instructions. The only valid excuse for Disobedience or Aggravated Disobedience is when the immediate result of obedience would be bodily injury (this includes incapacity by virtue of a certified medical reason).

5.  **DISOBEDIENCE, AGGRAVATED (Schedule B):** Inmates must obey direct verbal orders cooperatively and promptly; not debate, argue, or ignore them before obeying. When orders conflict, the last order received must be obeyed. Even orders the inmate believes improper must be obeyed; grievances must be pursued through proper channels. Sentences imposed by the Disciplinary Officer or the Disciplinary Board are to be carried out by the inmate. Violations of duty status will apply to this rule as will a violation of an order from the Disciplinary Board. The only valid excuse for Disobedience or Aggravated Disobedience is when the immediate result of obedience would be bodily injury (this includes incapacity by virtue of a certified medical reason).

6.  **DISORDERLY CONDUCT (Schedule A):** All boisterous behavior is forbidden. This includes, but is not limited to, horseplay and/or disorderly conduct. Inmates shall not jump ahead or cut into lines at the store, movie, mess hall, or during group movements of inmates. Visitors and guests shall be treated courteously and not be subjected to disorderly or intrusive conduct. Inmates shall not communicate verbally into or out of cellblocks or other housing areas.

7.  **DISRESPECT (Schedule A):** Employees, visitors, guests or their families shall not be subject to disrespectful conversation, correspondence, phone calls, actions or gestures. Inmates shall address employees, visitors, guests, or their families by proper title or by "Mr.," "Ms.," "Miss," or "Mrs." whichever is appropriate.

8.  **ESCAPE (Schedule B):** An escape or attempt to escape from the grounds of an institution or from the custody of an employee outside a facility, successful or not, or the failure to return from a furlough is a violation. La. R.S. 15:571.4 and Department Regulation No. B-04-005 "Forfeiture of Good Time from Inmates who Escape or Commit Battery on an Employee" may provide for forfeiture of good time for aggravated escape or simple escape in addition to the provisions of these procedures. (La. R.S. 14:110A.(2) provides for additional conditions under which an inmate in work release status may be charged under this rule.)

9.  DELETED. See Rule No. 30.

16

PCC - Class 3A
Inmates sentenced to Working Cellblock or Disciplinary Dention/extended Lockdown will be held in "Admin. Seg." pending transfer to a Class 1 or institution.
Maximum (administrative segregation)

Minimun Custody - General assignment of an inmate to a dormitory housing area. Movement outside of as ecure perimeter is usually authorized with out armed supervision or restraint.

Medium Custody - Generally assignment of an inmate to dormitory housing area. Movement outside of a secure perimeter is accomplished only under armed supervision or when appropriately restrainted or otherwise secured and appropriately supervised. Institution procedure governs internal movement controls.

Maximum Custody - Generally assignment of an inmate to cellbased upon the need to protect the inmate, other inmates. the public, staff, or the institution. This includes temporary assignment to Administrative Segregation or permenant assignment to Disciplinary Dentention/Extended Lockdown and Working Cellblock and may included Protective Custody/Extended Lockdown. Movement inside the secure perimeter of a facility by maximum custody inmates are closely monitored by staff and may included the utilization of restraints in accordance with institutional policy.

Protective Custody - Level 1
1) Highest level based on nature of crime, prior employment history, age, or other significant protection concerns;
2) Generally determined to be used to live in general population at any instutition;

Level 2
4) May result in placement in lockdown is generally conducted by a "Disciplinary Officer", "Disciplinary Board". "Classification Committee", or "Lockdown Review Board".
6) All Class 1,2 and 3 institutions are eligible to house Protective Custody - Level 2 inmates.


Department Regualtion B-05-001
CCTM from minimum to medium (Imposition of this sanction may include transfer to another institution)
CCTM from minimum or medium to maximum status (Working Cellblock or Disciplinary Detention/Extended Lockdown)(Imposition of this sanction may include transfer to another institution)

**EXHIBIT "E9"**

EXHIBIT "F"

INSTITUTION: | P.C.C.

| 1. Name of Inmate | 2. Number | 3. Date of Incident | 4. Time of Incident |
|---|---|---|---|
| Huddleston, Raymond | 409685 | 6-10-06 | 9:20 pm |

| 5. Place of Incident | 6. Job Assignment (Inmate) | 7. Housing Assignment (Inmate) |
|---|---|---|
| Cellblock Upper Left Tier #6 | Farm Line 5 | XLD UL #6 |

| 8. Rule Violated | 9. Rule Number |
|---|---|
| Aggravated Disobedience | #5 |

10. Description of Incident (Include all relevant information - "unusual inmate behavior, staff witnesses, physical evidence & disposition, immediate action including use of force"; use other side, if necessary)

On 6-10-06 at approximately 9:20pm I Sgt Danny Bozelt heard Inmate Huddleston Talking in a loud voice down the Tier. Inmate Huddleston was Told that lights were out and there was no talking down the tier. Inmate Huddleston Continued To Argue and yell that he wanted to see the Capt. Capt K. Niagun was notified. This is a violation of posted Policy #20 paragraph #1.

| 11. Inmate Placed in Adm. Seg. | Yes | No ☒ |
|---|---|---|

Already in C/B

| 12. Signature of reporting employee | 13. Name, Title, Assignment (Print) |
|---|---|
| Sgt Danny Bozelt | Danny Bozelt Sgt Cellblock |

| 14. Date of Report | 15. Time of Report | 16. Report (copy) given to above inmate by: | 17. Inmate's Signature: |
|---|---|---|---|
| 6-10-06 | 9:30 pm | Sgt Danny Bozelt 6-11-06 5:33 pm | Huddleston |

| 18. Plea by Inmate: | Not Guilty | Guilty ☒ | 19. Verdict: | Not Guilty | Guilty ☒ |
|---|---|---|---|---|---|

| 20. Date of Hearing: | 21. Counsel Substitute: |
|---|---|
| 06/19/06 | DOC#: LAGRS |

22. Motions: _____

23. Reasons for Disposition:
- ☒ Report is clear and precise.
- ☐ Lack of a credible defense/little or no defense.
- ☐ Based on his statement.
- ☐ The officer's version is determined to be more credible than the inmate's.
- ☒ Pled guilty/accepted guilty plea.
- ☐ Only defense is denying contents of report.
- ☐ The inmate presented no evidence to refute the charges.
- ☐ The Investigative officer's testimony was deemed more truthful and accurate than the inmate's.
- ☒ Plea bargain.
- ☐ The inmate's demeanor led the board to believe that the inmate's testimony was untrue.
- ☐ Other _____ Rec'd 12/19/05  Act 138

24. Reasons for Sentence:
- ☐ Seriousness of offense.
- ☒ The need to protect the institution, employees, or other.
- ☒ Poor Conduct record. A total of __17__ rule violation(s). A total of __14__ Schedule B violations since __Rec'd__.
- ☐ A total of _____ # _____ rule violations since _____.
- ☐ Other _____ XLD

25. Sentence:
2 wks cell confinement

| Suspended ☐ | Days |
|---|---|
| Imposed ☒ | |

26. Sentence:
Forfeiture 30 days GT

| Suspended ☐ | Days |
|---|---|
| Imposed ☒ | |

27. DISCIPLINARY BOARD:
Cost may be imposed for any property loss, damage, or medical expense occasioned through the fault of an inmate who in so causing the loss, damage, or medical expenses also is found guilty through the disciplinary process of violating one or more of the rules set out in the Disciplinary Rules and Procedures for Adult Inmates.

CHAIRMAN (DISCIPLINARY OFFICER)

MEMBER

EXHIBIT "F1"

**INSTITUTION:**

| 1. Name of Inmate | 2. Number | 3. Date of Incident | 4. Time of Incident |
|---|---|---|---|
| Huddleston, Raymond | 409685 | 9-3-06 | approximately 9:00pm |

| 5. Place of Incident | 6. Job Assignment (Inmate) | 7. Housing Assignment (Inmate) |
|---|---|---|
| Upper left Tier cell #6 | Farm Line 5 | XID-UL-6 |

| 8. Rule Violated | 9. Rule Number |
|---|---|
| Aggravated Disobedience | #5 |

10. Description of Incident (Include all relevant information - "unusual inmate behavior, staff witnesses, physical evidence & disposition, immediate action including use of force"; use other side, if necessary)

On 9-3-06 at approximately 9:00pm I/M Phillip Gonzales #508375 while out on the Tier for Exercise and phone use, Gave the phone to I/M Raymond Huddleston, who is on cell confinement and not allowed to use the phone, When I/M Gonzales was question he admitted to giving the phone to I/M Huddleston. This was verified by checking the Lazer voice phone system, where it showed I/M Huddleston placed a call on 9-3-06 at 9:00pm that lasted for 2 min and 2 sec.

| 11. Inmate Placed in Adm. Seg. | ☐ Yes ☒ No |
|---|---|

already in cellblock.

| 12. Signature of reporting employee | 13. Name, Title, Assignment (Print) |
|---|---|
| Sgt. Danny Baylis | Baylis, Danny Cnr |

| 14. Date of Report | 15. Time of Report | 16. Report (copy) given to 9-4-06 | 17. Inmate's Signature: |
|---|---|---|---|
| 9-3-06 | 10:30pm | above inmate by Sgt. Dan David 5:31a | Refused to Sign |

| 18. Plea by Inmate: ☐ Not Guilty ☒ Guilty | 19. Verdict: ☐ Not Guilty ☒ Guilty |
|---|---|

| 20. Date of Hearing: 9-13-06 | 21. Counsel Substitute: DOC# Sedlock |
|---|---|

22. Motions: _____

23. **Reasons for Disposition:**
☐ Report is clear and precise.   ☐ Lack of a credible defense/little or no defense.   ☐ Based on his statement.
☐ The officer's version is determined to be more credible than the inmate's.   ☐ Pled guilty/accepted guilty plea.
☐ Only defense is denying contents of report.   ☐ The inmate presented no evidence to refute the charges.
☐ The Investigative officer's testimony was deemed more truthful and accurate than the inmate's.   ☒ Plea bargain.
☐ The inmate's demeanor led the board to believe that the inmate's testimony was untrue.
☐ Other _____

24. **Reasons for Sentence:**
☐ Seriousness of offense.   ☐ The need to protect the institution, employees, or other.
☒ Poor Conduct record. A total of __28__ rule violation(s). A total of __25__ Schedule B violations since __2006__
   A total of _____ # _____ rule violations since _____
☐ Other _____ Act 138   Rcvd 12/19/05

25. Sentence:
2 wks cell confinement

| | Suspended ☐ ___ Days |
|---|---|
| | Imposed ☒ |

26. Sentence:

| | Suspended ☐ ___ Days |
|---|---|
| | Imposed ☐ |

27. **DISCIPLINARY BOARD:**
Cost may be imposed for any property loss, damage, or medical expense occasioned through the fault of an inmate who in so causing the loss, damage, or medical expenses also is found guilty through the disciplinary process of violating one or more of the rules set out in the Disciplinary Rules and Procedures for Adult Inmates.

CHAIRMAN (DISCIPLINARY OFFICER)

MEMBER

**EXHIBIT "F2"**

# DISCIPLINARY REPORT

INSTITUTION: P.C.C.

| 1. Name of Inmate | 2. Number | 3. Date of Incident | 4. Time of Incident |
|---|---|---|---|
| Raymond Huddleston | 409685 | 9-9-06 | Approx. 6:51pm |

| 5. Place of Incident | 6. Job Assignment (Inmate) | 7. Housing Assignment (Inmate) |
|---|---|---|
| Upper left tier cell #6 | Form line #5 | KLB-UL-6 |

| 8. Rule Violated | 9. Rule Number |
|---|---|
| Aggravated Disobedience & Property Destruction | #5 & #17 |

**10. Description of Incident** (Include all relevant information - "unusual inmate behavior, staff witnesses, physical evidence & disposition, immediate action including use of force"; use other side, if necessary)

On 9-9-06 approx. 6:51pm I, Sgt. C. Dashotel while making rounds observed and heard inmate Raymond Huddleston #409685 of upper left tier cell #6 talking to inmate David Cooper of upper left tier cell #11. I gave inmate Huddleston a direct verbal order to stop talking down the tier or if it continues I will give you a charge. Inmate Huddleston hollered, I am just standing here, standing here, you got me bad, call the Captain, I want to see the Captain now! I gave inmate Huddleston another direct verbal order to stop hollering. I also told, inmate Huddleston, Captain is busy and you can see Captain-Smith when he makes his rounds. Inmate Huddleston said, "I will make you call the captain now" and began kicking

| 11. Inmate Placed in Adm. Seg. | ☐ Yes | ☒ No |
|---|---|---|
| | Already in cellblock | |

| 12. Signature of reporting employee | 13. Name, Title, Assignment (Print) |
|---|---|
| Sgt. Chris Dashotel | Chris Dashotel, Sgt., Cellblock |

| 14. Date of Report | 15. Time of Report | 16. Report (copy) given to above inmate by: | 17. Inmate's Signature: Issued copy |
|---|---|---|---|
| 9-9-06 | 9:58pm | Sgt. Chris Dashotel 10:10pm | Refused to sign |

| 18. Plea by Inmate: | ☐ Not Guilty | ☒ Guilty | 19. Verdict: | ☐ Not Guilty | ☒ Guilty |
|---|---|---|---|---|---|

| 20. Date of Hearing: | 21. Counsel Substitute: DOC# |
|---|---|
| 9-13-06 | Sedlock |

**22. Motions:** _____

**23. Reasons for Disposition:**

☐ Report is clear and precise.    ☐ Lack of a credible defense/little or no defense.    ☐ Based on his statement.

☐ The officer's version is determined to be more credible than the inmate's.    ☐ Pled guilty/accepted guilty plea.

☐ Only defense is denying contents of report.    ☐ The inmate presented no evidence to refute the charges.

☐ The Investigative officer's testimony was deemed more truthful and accurate than the inmate's.    ☒ Plea bargain.

☐ The inmate's demeanor led the board to believe that the inmate's testimony was untrue.

☐ Other _____

**24. Reasons for Sentence:**

☐ Seriousness of offense.    ☐ The need to protect the institution, employees, or other.

☒ Poor Conduct record. A total of 30 rule violation(s). A total of 27 Schedule B violations since 2006.

A total of _____ # _____ rule violations since _____

☐ Other _____ Act 138   12/19/05

| 25. Sentence: | | Suspended ☐ | Days |
|---|---|---|---|
| 2 wks cell confinement | | Imposed ☒ | |

| 26. Sentence: | | Suspended ☐ | Days |
|---|---|---|---|
| Forf of 30 days Goodtime | | Imposed ☒ | |

**27. DISCIPLINARY BOARD:**

Cost may be imposed for any property loss, damage, or medical expense occasioned through the fault of an inmate who in so causing the loss, damage, or medical expenses also is found guilty through the disciplinary process of violating one or more of the rules set out in the Disciplinary Rules and Procedures for Adult Inmates.

Melanie Burns
CHAIRMAN (DISCIPLINARY OFFICER)

Myra D. Kester
MEMBER

**EXHIBIT "F3"**

LOUISIANA DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS

# DISCIPLINARY REPORT

**INSTITUTION:** _____ **P.C.C.**

| | | | |
|---|---|---|---|
| 1. Name of Inmate *Travis Lewis* | 2. Number *473262* | 3. Date of Incident *7/11/06* | 4. Time of Incident *approx 4:10 pm* |

| | | |
|---|---|---|
| 5. Place of Incident *Cellblock XLD-UL-13* | 6. Job Assignment (Inmate) *Farm Line 4/AM* | 7. Housing Assignment (Inmate) *XLD-UL-13* |

| | |
|---|---|
| 8. Rule Violated *Aggravated Disobedience* | 9. Rule Number *#5* |

**10. Description of Incident** (Include all relevant information - "unusual inmate behavior, staff witnesses, physical evidence & disposition, immediate action including use of force"; use other side, if necessary)

*On 7/11/06 at approx 4:10 pm, I, MSgt Billy Richardson, observed Inmate Travis Lewis, 473262, hollering very loudly down the tier. Inmate Lewis has been warned several times that loud talking in the Cellblock is not permitted. This is in violation of Inmate Posted Policy #20 paragraph #1. Lt Bellamy was notified.*

**11. Inmate Placed in Adm. Seg.** ☐ Yes ☒ No *Already in C/B*

| | |
|---|---|
| 12. Signature of reporting employee *MSgt D.R.* | 13. Name, Title, Assignment (Print) *Billy Richardson, MSgt B-1* |
| 14. Date of Report *7/11/06* | 15. Time of Report *425 pm* |
| 16. Report (copy) given to above inmate by: *Sgt D Reed 7-14-06 10:04AM* | 17. Inmate's Signature *refused to sign* |

| | |
|---|---|
| 18. Plea by Inmate: ☐ Not Guilty ☐ Guilty | 19. Verdict: ☐ Not Guilty ☐ Guilty |
| 20. Date of Hearing: *7-19-06* | 21. Counsel Substitute: DOC#: *Kellough* |

**22. Motions:** _____

**23. Reasons for Disposition:**

☐ Report is clear and precise.    ☐ Lack of a credible defense/little or no defense.    ☐ Based on his statement.

☐ The officer's version is determined to be more credible than the inmate's.    ☐ Pled guilty/accepted guilty plea.

☐ Only defense is denying contents of report.    ☐ The inmate presented no evidence to refute the charges.

☐ The investigative officer's testimony was deemed more truthful and accurate than the inmate's.    ☒ Plea bargain.

☐ The inmate's demeanor led the board to believe that the inmate's testimony was untrue.

☐ Other _____

**24. Reasons for Sentence:**

☒ Seriousness of offense.    ☐ The need to protect the institution, employees, or other.

☒ Poor Conduct record. A total of *20* rule violation(s). A total of *17* Schedule B violations since *new*

A total of _____ # _____ rule violations since _____

☐ Other _____    *LC 1/23/06*

**25. Sentence:** *2 whs cell confinement*

*4et 138*

☐ Suspended _____ Days    ☒ Imposed

**26. Sentence:**

☐ Suspended _____ Days    ☐ Imposed

**27. DISCIPLINARY BOARD:**

Cost may be imposed for any property loss, damage, or medical expense occasioned through the fault of an inmate who in so causing the loss, damage, or medical expenses also is found guilty through the disciplinary process of violating one or more of the rules set out in the Disciplinary Rules and Procedures for Adult Inmates.

*CIP*

CHAIRMAN (DISCIPLINARY OFFICER) _____

MEMBER _____

**EXHIBIT "F4"**

**LOUISIANA DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS**
**DISCIPLINARY REPORT**

INSTITUTION: **P.C.C.**

| 1. Name of Inmate | 2. Number | 3. Date of Incident | 4. Time of Incident |
|---|---|---|---|
| Lewis Travis | 473262 | 7-29-06 | APPROX 11:20A |

| 5. Place of Incident | 6. Job Assignment (Inmate) | 7. Housing Assignment (Inmate) |
|---|---|---|
| C/B | FARM LINE #4 | XLD UL13 |

| 8. Rule Violated | 9. Rule Number |
|---|---|
| Disobedience Aggravated | 5 |

**10. Description of Incident** (Include all relevant information - "unusual inmate behavior, staff witnesses, physical evidence & disposition, immediate action including use of force"; use other side, if necessary)

ON 7-29-06 AT APPROX 11:20A, I SGT L. MYERS GAVE INMATE Lewis TRAVIS #473262 A DIRECT VERBAL ORDER TO STOP hollering Down The Tier AND THAT NO LOUD TALKING is permitted in the Cell block. Inmate Lewis has been warned several Times TODAY. LT Bellamy was Notified. This is A violation of posted policy #20 PARAGRAPH Q.

**11. Inmate Placed in Adm. Seg.** ☐ Yes ☒ No — Already in C/B

| 12. Signature of reporting employee | 13. Name, Title, Assignment (Print) |
|---|---|
| Sgt L. My... | Leland Myers SGT C/B officer |

| 14. Date of Report | 15. Time of Report | 16. Report (copy) given to above inmate by: | 17. Inmate's Signature: |
|---|---|---|---|
| 7-29-06 | 12:00p | Sgt L. Myers 7-29-06 11:25A | Refused to sign |

**18. Plea by Inmate:** ☒ Not Guilty ☐ Guilty

**19. Verdict:** ☐ Not Guilty ☒ Guilty

**20. Date of Hearing:** 8/7/06

**21. Counsel Substitute:** DOC#: Boudreaux

**22. Motions:** ___

**23. Reasons for Disposition:**
☒ Report is clear and precise.    ☐ Lack of a credible defense/little or no defense.    ☐ Based on his statement.
☒ The officer's version is determined to be more credible than the inmate's.    ☐ Pled guilty/accepted guilty plea.
☐ Only defense is denying contents of report.    ☐ The inmate presented no evidence to refute the charges.
☐ The investigative officer's testimony was deemed more truthful and accurate than the inmate's.    ☒ Plea bargain.
☐ The inmate's demeanor led the board to believe that the inmate's testimony was untrue.
☐ Other ___

**24. Reasons for Sentence:**
☒ Seriousness of offense.    ☒ The need to protect the institution, employees, or other.    Jan. '06 Received
☒ Poor Conduct record. A total of **22** rule violation(s). A total of **19** Schedule B violations since
A total of **9** # **5** rule violations since Received.
☐ Other ___

**25. Sentence:**
2 w/s Cell Confinement    Suspended ☐ ___ Days    Imposed ☒

**26. Sentence:**
Suspended ☐ ___ Days    Imposed ☐

**27. DISCIPLINARY BOARD:**
Cost may be imposed for any property loss, damage, or medical expense occasioned through the fault of an inmate who in so causing the loss, damage, or medical expenses also is found guilty through the disciplinary process of violating one or more of the rules set out in the Disciplinary Rules and Procedures for Adult Inmates.

CHAIRMAN (DISCIPLINARY OFFICER) _May_

MEMBER _Angie Pearce_

**EXHIBIT "F5"**

LOUISIANA DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS

## DISCIPLINARY REPORT

INSTITUTION: **P.C.C.**

| 1. Name of Inmate | 2. Number | 3. Date of Incident | 4. Time of Incident |
|---|---|---|---|
| Travis Lewis | 473262 | 7-30-06 | Approx. 9:37pm |

| 5. Place of Incident | 6. Job Assignment (Inmate) | 7. Housing Assignment (Inmate) |
|---|---|---|
| Upper left tier cell 13 | Farm line #4 | XLD - UL - 13 |

8. Rule Violated: Aggravated Disobedience

9. Rule Number: #5

10. Description of Incident (Include all relevant information - "unusual inmate behavior, staff witnesses, physical evidence & disposition, immediate action including use of force"; use other side, if necessary)

On 7-30-06 at approx. 9:37pm. While I, Sgt. C. Deshotel was making rounds on the upper left tier. I observed and heard inmate Travis Lewis #473262 talking in a loud boisterous manner down the tier to other inmates. I gave inmate Lewis a direct verbal order to hold the noise down. Inmate Lewis complied. Inmate Lewis is in violation of Inmate Posted Policy #20 paragraph #1. Lpt. Smith was notified.

| 11. Inmate Placed in Adm. Seg. | ☐ Yes | ☑ No |
|---|---|---|

Already in cellblock

| 12. Signature of reporting employee | 13. Name, Title, Assignment (Print) |
|---|---|
| Sgt. C. Deshotel | Chris Deshotel, Sgt., Cellblock |

| 14. Date of Report | 15. Time of Report | 16. Report (copy) given to above inmate by | 17. Inmate's Signature: |
|---|---|---|---|
| 7-31-06 | 1:15 AM | 7-31-06 5:34pm | Issued Copy Refused to sign |

| 18. Plea by Inmate: ☐ Not Guilty ☐ Guilty | 19. Verdict: ☐ Not Guilty ☑ Guilty |
|---|---|

| 20. Date of Hearing: 8/7/06 | 21. Counsel Substitute: DOC#: Boudreaux |
|---|---|

22. Motions:

23. Reasons for Disposition:
- ☑ Report is clear and precise.
- ☐ Lack of a credible defense/little or no defense.
- ☐ Based on his statement.
- ☑ The officer's version is determined to be more credible than the inmate's.
- ☐ Pled guilty/accepted guilty plea.
- ☐ Only defense is denying contents of report.
- ☐ The inmate presented no evidence to refute the charges.
- ☐ The Investigative officer's testimony was deemed more truthful and accurate than the inmate's.
- ☑ Plea bargain.
- ☐ The inmate's demeanor led the board to believe that the inmate's testimony was untrue.
- ☐ Other _____

24. Reasons for Sentence:
- ☑ Seriousness of offense.
- ☑ The need to protect the institution, employees, or other.
- ☑ Poor Conduct record. A total of **23** rule violation(s). A total of **20** Schedule B violations since _Received_.
- A total of _____ # _____ rule violations since _____.
- ☐ Other _____

25. Sentence:
2 wks Cell Confinement

☐ Suspended _____ Days
☑ Imposed

26. Sentence:
10 Days SDI

☐ Suspended _____ Days
☑ Imposed

27. DISCIPLINARY BOARD:
Cost may be imposed for any property loss, damage, or medical expense occasioned through the fault of an inmate who in so causing the loss, damage, or medical expenses also is found guilty through the disciplinary process of violating one or more of the rules set out in the Disciplinary Rules and Procedures for Adult Inmates.

Maj. _____
CHAIRMAN (DISCIPLINARY OFFICER)

_____
MEMBER

**EXHIBIT "F6"**

**LOUISIANA DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS**
**DISCIPLINARY REPORT**

INSTITUTION: _P.C.C._

| 1. Name of Inmate | 2. Number | 3. Date of Incident | 4. Time of Incident |
|---|---|---|---|
| Travis Lewis | 473262 | 8-02-06 | Apx 7:46 pm |

| 5. Place of Incident | 6. Job Assignment (Inmate) | 7. Housing Assignment (Inmate) |
|---|---|---|
| cellblock | Farm Line 4 | XLD-UL-13 |

| 8. Rule Violated | 9. Rule Number |
|---|---|
| Aggravated Disobedience | 5 |

**10. Description of Incident** (Include all relevant information - "unusual inmate behavior, staff witnesses, physical evidence & disposition, immediate action including use of force"; use other side, if necessary)

On 8-02-06 at approximately 7:46 pm I Sgt James heard and observed inmate Travis Lewis #473262 assigned to cell UL-13 talking downstairs in a loud and boisterous manner to inmate Clarence Charles #98020 assigned to LL-10. This is a violation of Inmate Posted Policy #20 paragraph #1

**11. Inmate Placed in Adm. Seg.** ☐ Yes ☒ No  _Already in cellblock_

| 12. Signature of reporting employee | 13. Name, Title, Assignment (Print) |
|---|---|
| Sgt Hugh A James | Hugh A James Sgt Cellblock |

| 14. Date of Report | 15. Time of Report | 16. Report (copy) given to 8-3-06 above inmate by: Sgt Paul Hickman 5:33 am | 17. Inmate's Signature: Refused To Sign |
|---|---|---|---|
| 8-02-06 | 10:40 pm | | |

**18. Plea by Inmate:** ☐ Not Guilty ☐ Guilty   **19. Verdict:** ☐ Not Guilty ☒ Guilty

| 20. Date of Hearing: 8/7/06 | 21. Counsel Substitute: DOC#: _Daughasny_ |
|---|---|

**22. Motions:** _____

**23. Reasons for Disposition:**
- ☒ Report is clear and precise.
- ☐ Lack of a credible defense/little or no defense.
- ☐ Based on his statement.
- ☐ The officer's version is determined to be more credible than the inmate's.
- ☐ Pled guilty/accepted guilty plea.
- ☐ Only defense is denying contents of report.
- ☐ The inmate presented no evidence to refute the charges.
- ☐ The investigative officer's testimony was deemed more truthful and accurate than the inmate's.
- ☒ Plea bargain.
- ☐ The inmate's demeanor led the board to believe that the inmate's testimony was untrue.
- ☐ Other _____

**24. Reasons for Sentence:**
- ☒ Seriousness of offense.
- ☒ The need to protect the institution, employees, or other.
- ☒ Poor Conduct record. A total of _25_ rule violation(s). A total of _22_ Schedule B violations since _Received_
- A total of _____ # _____ rule violations since _____
- ☐ Other _____

**25. Sentence:**  _2 wks Cell Confinement_   Suspended ☐ _____ Days   Imposed ☒

**26. Sentence:**  _10 Days DDE_   Suspended ☐ _____ Days   Imposed ☒

**27. DISCIPLINARY BOARD:**
Cost may be imposed for any property loss, damage, or medical expense occasioned through the fault of an inmate who in so causing the loss, damage, or medical expenses also is found guilty through the disciplinary process of violating one or more of the rules set out in the Disciplinary Rules and Procedures for Adult Inmates.

CHAIRMAN (DISCIPLINARY OFFICER) _____

MEMBER _Angie Pearce_

**EXHIBIT "F7"**

NAME: Perry Chopin

DOC: 467588

DATE:

| No. | Incident Date | Rule No. | Hearing Date | Repri-mand | Extra Duty | Isol | Loss of G.T. | Rec. Change (Job, Qtrs, Inst) | Loss of Privileges/ Incentive Wages | Room Conf | Rest |
|-----|---------------|----------|--------------|------------|------------|------|--------------|-------------------------------|-------------------------------------|-----------|------|
| 1 | 7-28-04 | 28 | 7-29-04 | | | | | | Yrd on extd T sus 90 day | 12 day | |
| 2. | 8/8/04 | 5 | 8/9/04 | | 4 | | | | 2 wks no yard | | |
| 3 | 8/8/04 | 5 | 8/9/04 | | 8 | | | | 4 wks no recreation | | |
| 4 | 8/19/04 | 5 | 8/19/04 | | | | | | 8 days extra duty sent imposed 18 day Rm Conf. impost | | |
| 5 | 9/4/04 | 5 | 9/7/04 | | | | 15 | | 28 Days No Canta 18 Days Rm Conf Imposed | | |
| 6 | 9/28/04 | 28 | 9/30/04 | | | | 30 | | | | |
| 7. | 10-19-04 | 5 | 10/21/04 | | 8 day (CTS) (susp 90 day) (90 day sus) | | 10 days (susp 90 day) | | | | |
| 8. | 10/28/04 | 5 | 11/1/04 | | 2 day 8 day (CTS-4 day) | | Jmp suspent 12-1-04 - 2 day Xtra Duty | 8 do x 2 hrs (CTS) + 10 day imp 10/21/04 | 3 wks loss yrd + rec 2 wks less canteen | | |
| 9 | 1/11/05 | 22 | 1/14/05 | | | | | | | | |
| 10. | 1/11/05 | 1 | 1/14/05 | | | | | | | | |
| 11 | 1-14-55 | 5 | 1-18-05 | | CTS 8 Imp | | | | 3 wks ½ rec | | |
| 12. | 1-6-05 | 1A | 1-10-05 | | 4 day | | 30 day imp | | 6 wks loss yrd or rec | | |
| 13. | 1/25/05 | 5 | 1/25/05 | | | | | | | | |
| 14. | 2/5/05 | 28 | 2/9/05 | | 8 day | | Imp 55 30 day | | | | |
| 15 | 2/18/05 | 32 | 2/20/05 | | 8 day CTS | | 30 day imp | | | | |

1. Contraband
1A. Unauthorized Items (A)
3 Defiance (B)
4 Disobedience (A)
5 Agg. Disobedience (B)
6 Disorderly Conduct (A)
7 Disrespect (A)

8. Escape (B)
9. Deleted
10. Fighting (B)
11. Agg. Fighting
12. Gambling (B)
13. Deleted
14. Intoxication

15. Malingering (B)
16. Rescinded
17. Prop. Destruction (B)
18. Radio/TV Abuse (A)
19. Self-Mutilation (B)
20. Rescinded
21. Agg. Sex Off (B)

22. Theft (B)
24. Unauth. Area (A)
25. Deleted
26. Unsanitary Prac. (A)
27 Work Offense (A)
28. Agg. Work Offense (B)
29 Disturbance (B)

30 Gen. Prohibited Behavior

**EXHIBIT "F8"**

# LOUISIANA DEPARTMENT OF PUBLIC SAFETY & CORRECTIONS
## CONDUCT REPORT

NAME: Perry Chim

DOC: 467588

DATE:


Act 1095

| No. | Incident Date | Rule No. | Hearing Date | Repri-mand | Extra Duty | Isol | Loss of G.T. | Rec. Change (Job, Qtrs, Inst) | Loss of Privileges/ Incentive Wages | Room Conf | Rest |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 16 | 2/18/05 | 5 22 | 2/24/05 | | 8 days ny | | 31 days lng | | | | |
| 17 | 2-26-05 | 3 | 3-2-05 | | 8 days. Imp. | 5 days. CB | 38 days. Imp. | | | | |
| 18 | 3-8-05 | 3 | 3-11-05 | | cts 8 day 10 days | | | | ~~1 wk cell confines~~ | | |
| | 3-8-05 | 5 | 3-11-05 | | | | | | 1 wk cell conf | | |
| 20 | 3-14-05 | 5 | 3-16-05 | | 8 | | | | | | |
| 21. | 4-5-05 | 6 | 4-6-05 | | 1 day | | | | | | |
| 22. | 4-30-05 | 28 | 5-4-05 | | (CTS) DDT 5 | 15 | | | | | |
| 23 | 5-7-05 | 22 | 5-16-05 | | 8 | | | only | 2 weeks Yd Rec | | |
| 24 | 5-12-05 | 3 6 | 5-16-05 | | 0 day cts 10 day | 51 conf 60 | | | ~~8 day~~ 2 wks canteen 1 wk cell conf | | |
| 25 | 5-12-05 | 5 | 5-16-05 | | (cts) 8 days | | | | imp 2wks yd + Rec | | |
| 26 | 5/31/05 | 3 | 5/31/05 | | (cts) 8 days imp | | | | | | |
| 27 | 6/11/05 | 5 | 6/15/05 | | 8 days | 5 days (CB) | | | | | |
| 28. | 6-15-05 | 10 | 6-17-05 | | (CTS) 8 days | | | | 1 wk. yd. + Rec | | Rest 4/15.05 |
| 29 | 6/28/05 | 5 | 7/1/05 | | 8 day (CTS) | | | | 4 wks loss yd & Rec. | | |
| 30. | 6/25/05 | 24 | 6/28/05 | | | | | | 1 wk. yd. & Rec. | | |

1. Contraband
A. Unauthorized Items (A)
1. Defiance (B)
1. Disobedience (A)
1. Agg. Disobedience (B)
1. Disorderly Conduct (A)
1. Disrespect (A)

8. Escape (B)
9. Deleted
10. Fighting (B)
11. Rescinded
12. Gambling (B)
13. Deleted
14. Intoxication

15. Malingering (B)
16. Rescinded
17. Prop. Destruction (B)
18. Radio/TV Abuse (A)
19. Self-Mutilation (B)
20. Rescinded
21. Agg. Sex Off (B)

22. Theft (B)
24. Unauth. Area (A)
25. Deleted
26. Unsanitary Prac. (A)
27. Work Offense (A)
28. Agg. Work Offense. (B)
29. Disturbance (B)

30. Gen. Prohibited Behavior (B)

EXHIBIT "F9"

4/2002

Case 2:05-cv-01397-PM-KK Document 62-9 02/20/15 Page 28 of 47 PageID #: 48

# LOUISIANA DEPARTMENT OF PUBLIC SAFETY & CORRECTIONS
## CONDUCT REPORT

NAME: Chopin, Perry

DOC: 467588

DATE:

| No. | Incident Date | Rule No. | Hearing Date | Repri-mand | Extra Duty | Isol | Loss of G.T. | Rec. Change (Job, Qtrs, Inst) | Loss of Privileges/ Incentive Wages | Room Conf | Rest |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 31 | 7/8/05 | 10/5 | 7/11/05 | | 8 days | 4 days CTS (CTS) | | | 2 wks loss yd & rec | | 4/5 |
| 32. | 8/7/15 | 28 | 8/10/05 | | 8 | DDI 4 | | | | | |
| 33. | 8/9/05 | 5 | 8/12/05 | | 8 days | | | | 2 wks loss TV | | |
| 34 | 8/5/05 | 26 | 8/10/05 | | | | | | 2 wks loss canteen | | |
| 35 | 8-18-05 | 28 | 8-22-05 | | | CTS 10 | | | | | |
| 36 | 8-19-05 | 3 | 8-22-05 | | | 10 | | | | Cal conf. 2 wks | |
| 37 | 9-7-05 | 5 | 9-12-05 | | 8 CTS (6) | | | 4 wks loss of yard & Rec. | | | |
| 38. | 9/15/05 | 5 | 9/22/05 | | 8 days | | | | 2 wks loss yd & rec | | |
| 39. | 10/7/05 | 5 | 10/10/05 | | . | 10 | | Dorm change | . . . | | |
| 40 | 10-19-05 | 21 | 10-21-05 | | 8 days CTS | 10 days | | | | | |
| 41 | 10/7/05 | 4 | 10/17/05 | | 1 day | | | | | | |
| 42 | 10/20/05 | 5 | 10/21/05 | | | | | | 2 wk loss phone - imp 2 wks loss canteen - susp | | |
| 43 | 11/7/05 | 21 | 11/9/05 | | 8 days CTS | 10 days no credit | | | | | |
| 44. | 11/24/05 | 21 | 11/28/05 | | | 10 day | | CCTM wcB imp | Imp ss of 2 wks loss canteen | | |
| 45 | 11/2/05 | 4 | 11/28/05 | | 4 days | | | | | | |

. Contraband
A. Unauthorized Items (A)
. Defiance (B)
. Disobedience (A)
. Agg. Disobedience (B)
. Disorderly Conduct (A)
. Disrespect (A)

8. Escape (B)
9. Deleted
10. Fighting (B)
11. Agg. Fighting
12. Gambling (B)
13. Deleted
14. Intoxication

15. Malingering (B)
16. Rescinded
17. Prop. Destruction (B)
18. Radio/TV Abuse (A)
19. Self-Mutilation (B)
20. Rescinded
21. Agg. Sex Off (B)

22. Theft (B)
24. Unauth. Area (A)
25. Deleted
26. Unsanitary Prac. (A)
27. Work Offense (A)
28. Agg. Work Offense (B)
29. Disturbance (B)

30. Gen. Prohibited Behavior (B)

EXHIBIT "F10"

4/2002

# LOUISIANA DEPARTMENT OF PUBLIC SAFETY & CORRECTIONS
## CONDUCT REPORT

**NAME:** Perry Chopin

**DOC:** 467588

**DATE:** 12-9-05

| No. | Incident Date | Rule No. | Hearing Date | Repri-Mand | Extra Duty | Isol. | FTE | Rec. Change (Job, Qtrs, Inst.) | Loss Of Privileges | Room Conf | Rest |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 46. | 1-4-06 | 1 | 1-11-06 | | | 5 days imp. | | | | 2 weeks cell (susp) | |
| 47 | 1/14/06 | 5 | 1/23/06 | | | 10 days Imp | | | | 2 wks cell Conf | |
| 48 | 1/15/06 | 5 | 1/23/06 | | | 10 day Imp (No audit) | | | | 2 wks cell conf | |
| 49. | 1-23-06 | 5 | 1-27-06 | | | 5 dy. | | | | Cell 2 wk. | |
| 50 | 2-2-06 | 5 | 2-6-06 | | | 10 days OOI | | | | 2 wk Cell Confinement | |
| 51. | 2-21-06 | 5 | 3-1-06 | | | DDI 5 | | | | 2 wk cell conf. | |
| 52. | 3/6/06 | 5 | 3/3/06 | | | | | | imp 1 wks loss phone | | |
| 53 | 3/10/06 | 5 | 3/17/06 | | | 30 | | cell on lockdown | 3 weeks Phone | | |
| 54. | 4/3/06 | 5 | 4/7/06 | | | | | 2 wks Cell conf. | Custody change to Extended Lockdown | | |
| 55. | 5-23-06 | 24 | 5-26-06 | | 3 (CTS) | | | | | | |
| 56. | 5-24-06 | 22 | 5-26-06 | | 8 | susp. 90 ) DDI 10 | | | | | |
| 57 | 5-29-06 | 22 | 6-5-06 | | 4 days (CTS-0) | | | | | | |
| 58. | 6-14-06 | 17 | 6-16-06 | | | 3 days CTS | | | | | |
| 59 | 6/19/06 | 5 | 6-23-06 | | 3 days | | | | 2 wks T.V. 2 wks loss Yard | | |

1. Contraband (B)
2. Contraband. Att. Poss. (A)
3. Defiance (B)
4. Disobedience (A)
5. Agg. Disobedience (B)
6. Disorderly Conduct (A)
7. Disrespect (A)
8. Att. Escape (B)
   Escape (B)
9. Favoritism (A/B)
10. Fighting (B)
11. Agg. Fighting (B)
12. Gambling (B)
13. Deleted
14. Intoxication (B)
15. Malingering (A)
16. Agg. Malingering (B)
17. Prop. Destruction (B)
18. Radio/TV Abuse (A)
19. Self-Mutilation (B)
20. Rescinded
21. Agg. Sex Off (B)
22. Theft (B)
23. Theft. Att. (A)
24. Unauth. Area (A)
25. Unauth. Food (A)
26. Unsanitary Prac. (A)
27. Work Offense (A)
28. Agg. Work Off. (B)

**EXHIBIT "F11"**

**NAME:** Chopin, Perry

**DOC:** 467588

**DATE:**

| No. | Incident Date | Rule No. | Hearing Date | Repri-mand | Extra Duty | Isol | Loss of G.T. | Rec. Change (Job, Qtrs, Inst) | Loss of Privileges/ Incentive Wages | Room Conf | Res |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 60 | 7/7/06 | 28 | 7/7/06 | | | | could only 30 take 30 days | | 4 wks loss cyt & rec | | |
| 61 | 7/2/06 | 22 | 7/7/06 | | 8 | | | | 4 wks loss phone | | |
| 62 | 7/6/06 | 5 | 7/10/06 | | | 10 cts | | | | | |
| 63 | 7/9/06 | 5 | 7/10/06 | | 8 | 10 | | | | | |
| 64 | 7/18/06 | 11 | 7/21/06 | | | | | | | | |
| 65 | 7/25/06 | 5 | 7/28/06 | | 8 ct | | | | 4 wks loss of incentive wage | | |
| 66 | 8/14/06 | 21 | 8/16/06 | | | 10 days cts | | cotm-wcb susp 90days | | | |
| 67 | 8/13/06 | 4 | 8/31/06 | | | | | | 2 wks loss cyd & rec. | | |
| 68 | 9/1/06 | 21 | 9/8/06 | | | cts | | inf of cell & actual on 9/18/06 | | 2 wks cell conf | |
| 69 | 9/19/06 | 1 | 9/22/06 | | | | | 2 wks cell conf. | | | |
| 70 | 9/19/06 | 15 | 9/22/06 | | | | | 2 wks cell conf | | | |

1. Contraband
1A. Unauthorized Items (A)
3. Defiance (B)
4. Disobedience (A)
5. Agg. Disobedience (B)
6. Disorderly Conduct (A)
7. Disrespect (A)

8. Escape (B)
9. Deleted
10. Fighting (B)
11. Agg. Fighting
12. Gambling (B)
13. Deleted
14. Intoxication

15. Malingering (B)
16. Rescinded
17. Prop. Destruction (B)
18. Radio/TV Abuse (A)
19. Self-Mutilation (B)
20. Rescinded
21. Agg. Sex Off (B)

22. Theft (B)
24. Unauth. Area (A)
25. Deleted
26. Unsanitary Prac. (A)
27. Work Offense (A)
28. Agg. Work Offense. (B)
29. Disturbance (B)

30. Gen. Prohibited Behavior (B)

**EXHIBIT "F12"**

4/2002

# LOUISIANA DEPARTMENT OF PUBLIC SAFETY & CORRECTIONS
## CONDUCT REPORT

**NAME:** Douis, William

**DOC:** 470482

**DATE:**

| REPORT | | | | BOARD ACTION | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| No. | Incident Date | Rule No. | Hearing Date | Repri-mand | Extra Duty | Isol | Loss of G.T. | Rec. Change (Job, Qtrs, Inst) | Loss of Privileges/ Incentive Wages | Room Conf | Res |
| 1 | 2-13-05 | 21 | 2-14-05 | | | | 30 | | 4wks phone | | |
| 2 | 2/16/05 | 5 | 2/17/05 | | | | | | 4 whs canteen 4 whs phone | | |
| 3. | 6-27-05 | 28 | 6-27-05 | | 8 days Imp. | 30 days Aff CTS | | | | | |
| 4. | 9/6/05 | 28 | 9/7/05 | | 8 dup Sus 90 drp | 30 dup Sus 90 drp | | | | | |
| 5. | | | A | | | | | | | | |
| 5 | 10/24/05 | 21 | 10/26/05 | | Imp 8 days 9/1/05 | 3 DOI CTS | 30 imp 9/17/05 180 Imp 90 | | | | |
| 6. | 11-9-05 | 21 | 11-14-05 | | | 107 could not lose | 180 day | CCTM working cellblock | | | |
| 7. | 12/8/05 | 5 | 12/21/05 | | | 6 sus 90 days | | | | 2wks Cellconf | |
| 8. | 1-4-06 | 1 | 1-9-06 | | | 10 imp DOI | | 2wks cell confinement | | | |
| 9. | 1-20-06 | 21 | 1-27-06 | | | (No cred+) 10 | 72 could only lose 180 | | | | |
| 10. | 2/26/06 | 1 | 3/3/06 | | | | | | Imp 2wks loss phone | | |
| 11 | 3/26/06 | 5 | 3/29/06 | | | Impose 10 day DOI - sus 1/9/06 | 2wks cell confinement | | | | |
| 12 | 5-9-06 | 5 | 5-15-06 | | | | | Custody change to Medium | | 2 weeks Cell | |
| — | | | 6/1/06 | | | | | | | | |
| 13 | 6/17/06 | 5 | 8/21/06 | | | | | | 2wks loss of canteen | | |
| 14 | 8/20/06 | 5 | 8/21/06 | | | | | | | | |

1. Contraband
1A. Unauthorized Items (A)
2. Defiance (B)
3. Disobedience (A)
4. Agg. Disobedience (B)
5. Disorderly Conduct (A)
7. Disrespect (A)

8. Escape (B)
9. Deleted
10. Fighting (B)
11. Agg. Fighting
12. Gambling (B)
13. Deleted
14. Intoxication

15. Malingering (B)
16. Rescinded
17. Prop. Destruction (B)
18. Radio/TV Abuse (A)
19. Self-Mutilation (B)
20. Rescinded
21. Agg. Sex Off (B)

22. Theft (B)
24. Unauth. Area (A)
25. Deleted
26. Unsanitary Prac. (A)
27. Work Offense (A)
28. Agg. Work Offense. (B)
29. Disturbance (B)

30. Gen. Prohibited Behavi

**EXHIBIT "F13"**

4/20

Case 2:06-cv-00916-JWD-RLB   Document 94-1   Filed 11/29/06   Page 32 of 47   PageID #: 52

# LOUISIANA DEPARTMENT OF PUBLIC SAFETY & CORRECTIONS
## CONDUCT REPORT

NAME: William Davis

DOC: 470462

DATE:

| No. | Incident Date | Rule No. | Hearing Date | Repri-mand | Extra Duty | Isol | Loss of G.T. | Rec. Change (Job, Qtrs, Inst) | Loss of Privileges/ Incentive Wages | Room Conf | Rest |
|-----|---------------|----------|--------------|-----------|-----------|------|--------------|-------------------------------|--------------------------------|-----------|------|
| 15 | 8/26/06 | 21 | 8/30/06 | | | | 90 | CCTM Extended lockdown | | | |
| 16 | 8/30/06 | 5 | 9/8/06 | | | 2wks susp. | | | | | |
| 17 | 9/9/06 | 1 | 9/12/06 | | | | | | | 2 wks cell | |

1. Contraband
1A. Unauthorized Items (A)
3. Defiance (B)
4. Disobedience (A)
5. Agg. Disobedience (B)
6. Disorderly Conduct (A)
7. Disrespect (A)

8. Escape (B)
9. Deleted
10. Fighting (B)
11. Agg. Fighting
12. Gambling (B)
13. Deleted
14. Intoxication

15. Malingering (B)
16. Rescinded
17. Prop. Destruction (B)
18. Radio/TV Abuse (A)
19. Self-Mutilation (B)
20. Rescinded
21. Agg. Sex Off (B)

22. Theft (B)
24. Unauth. Area (A)
25. Deleted
26. Unsanitary Prac. (A)
27. Work Offense (A)
28. Agg. Work Offense. (B)
29. Disturbance (B)

30. Gen. Prohibited Behavior

**EXHIBIT "F14"**

4/200

EXHIBIT "G"

**TO: INMATE POPULATION**

**RE: POSSESSIONS, PRIVILEGES AND RESPONSIBILITIES OF CELL BLOCK INMATES.**

**STANDARDS: 4-4249**

General conditions of confinement:

(A.)  There are severe restrictions on what items an inmate may have in his cell. An inmate should read the Posted Policy applicable to the Cellblock.

(B.)  The PCC Chaplain shall be allowed to visit any inmate in the cellblock at any time, unless an emergency has been declared by the Warden. Chaplains who are not employed by PCC, may visit the cellblock to contact inmates if approved by the Warden or his designee. Visits to the Cellblock by the Inmate Religious Counsel are governed by Unit Policy/Procedure #121.

(C.)  <u>LEGAL MATERIALS</u>: If an inmate in the cellblock complains of difficulties in meeting a legal deadline the concern shall immediately be referred up the Chain of Command. If an inmate in the cellblock advises of a need for reference material books or supplies, the Assistant Warden shall be contacted to process the request as necessary. Legal Reference Material may be given to inmates in Lockdown, by counsel substitute. This includes copies of Appeals, ARP's, Legal copies and Legal material related to the inmate.

(D.)  <u>COUNSEL SUBSTITUTES</u>: SHALL VISIT THE CELLBLOCK Monday through Sunday at 2:00 PM to talk to any inmate who so request. If no visit occurs the Assistant Warden shall be notified. The Unit Captain shall ensure this takes place.

(E.)  <u>SHOWER AND SHAVE</u>: All inmates in the cellblock shall be allowed to shower and shave each day. If a shower time is not offered for good safety or security reason or if the inmate refuses a shower, it shall be documented in the log book. Refusing a shower for 3 consecutive days or more shall constitute unsanitary practices.

(F.)  <u>TELEPHONE CALLS</u>: An inmate in Disciplinary Detention (Isolation) may make one personal telephone call for each 10 days in Isolation, to be made after the 10th day of the term in Isolation. All calls shall be documented in the log book.

An inmate who has been in Administrative Segregation for 72 hours has the right to make telephone calls as if he was in general population. Calls are allowed while the inmate is out of his cell for shower/exercise and counts as part of the hour out of the cell. Calls should be documented.

<u>NOTE</u>: Inmates in Disciplinary Detention or Administrative Segregation may make phone calls to Attorney of Record if staff verify the call is to the Attorney of the inmate prior to inmate being on the phone.

(G.)  Exercise: All inmates in Administrative Segregation Protective Custody, and or Disciplinary Detention Isolation are permitted one hour exercise each day outside their cell. Exercise Time includes shower and phone use. Inmates who have been confined to the cellblock for 30 continuous days are eligible for "outside" recreation on Tuesday and

**INMATE POSTED POLICY #20**                                          **EFFECTIVE DATE: 06/01/05**

**RE:    POSSESSIONS, PRIVILEGES AND                          PAGE: 2
         RESPONSIBILITIES OF CELL BLOCK INMATES.**
******************************************************************************************

Thursdays. An inmate offered "outside" recreation who refuses, will only have 15 minutes to shower and 15 minutes to use the phone. Exercise Time may be deferred for a documented safety or security reason.

(H.)    VISITING: Regardless of the cellblock classification, inmates are allowed to visit in the Non-Contact Visiting Room with approved visitors. Cellblock jumpsuits with proper fitting and concealment must be worn. Exceptions are allowed in situations where an inmate presents a clear threat to Unit Security as determined by ranking Security Officer. A denial of visiting must be documented in a UOR.

(I.)    LIBRARY SERVICE/EDUCATIONAL PROGRAMS: Any inmate in the cellblock may have a Bible or other verifiable religious publication. The institutional Librarian shall visit the cellblock on Monday, Wednesday and Friday to provide suitable reading material for those inmates in Administrative Segregation or Extended Lockdown. Publications which need not be returned to the Library may be suitable. Educational Program materials will be made available on an appropriate basis as determined by the Assistant Warden for Treatment. Inmates who were in Educational programs prior to lockdown may retain educational material.

(J.)    ITEMS ALLOWED IN THE CELL: Inmates who are confined to Administrative Segregation may have the following items in their cell:

(1) One metal bed
(2) One mattress
(3) Two sheets
(4) Storage locker or section of locker
(5) One toothbrush
(6) One tube of toothpaste
(7) Two towels
(8) Two washcloths
(9) One soap and dish
(10) Three pair of socks
(11) Three pair of underwear
(12) Three T shirts or undershirts
(13) One pair of either tennis shoes or shower slippers
(14) Deodorant
(15) Watch
(16) Wedding Ring
(17) Writing materials
(18) Envelopes, stamps
(19) Legal Material
(20) Family pictures
(21) One bible or religious book
(22) One cup

**EXHIBIT "G2"**

**INMATE POSTED POLICY #20**     **EFFECTIVE DATE: 06/01/05**

RE:   **POSSESSIONS, PRIVILEGES AND**          **PAGE: 3**
      **RESPONSIBILITIES OF CELL BLOCK INMATES.**
********************************************************************************

If an inmate is placed in Disciplinary Detention then he will have all items removed from the cell beginning at 6:00 A.M. and ending at 6:00 P.M. except the following:

(1) One metal bed (frame only)

(2) One watch

(3) One ring

(4) Clothing items being worn

(5) One Cup

This applies to every day of the week while in D.D.I.

Any item may be removed from the cell of a inmate for a document able Security reason if authorized by a Security Captain, Major, or higher command.  Document on a UOR and in the Cellblock log book.

Items removed daily from the cells of inmates confined to Isolation shall be placed neatly in a vacant cell on the tier.  Inmate orderlies may be utilized to transport the items but must be observed and supervised by Security Staff as there are no locks on the storage boxes.  An inmate confined to D.D.I. cannot use items of clothing, toilet tissue, etc. for a pillow or to sit on.

**ALL INMATES IN THE CELLBLOCK SHALL RECEIVE TWO CLEAN SHEETS AND A CLEAN NON DEGRADING NON TORN JUMPSUIT DAILY (MEDICAL EXCEPTION AUTHORIZED)**

**THE LAUNDRY OF PERSONAL ITEMS FOR CELLBLOCK INMATES** shall be on the same basis as provided general population (Twice a Week)

<u>**ITEMS NOT ALLOWED IN THE CELL**</u>:  Items that cellblock inmates may not keep in their cell shall be secured in the Property Room using a Seal Lock System.  Once an item is secured in the Property Room the item remains in Storage until the inmate exits the cellblock, except that once an inmate is sentenced or scheduled for transfer from PCC, the Cellblock Officers shall inventory the items and also hobbycraft items which might be in the Gym.  The Unit will store inmate property items but assumes no responsibility for food or perishable items which might be damaged or become otherwise unusable.  It must be remembered that hobbycraft & music instruments etc., cannot be transferred; so these items go to the Mailroom or other disposal.

(K.)   <u>BARBER SERVICES</u>:  Cellblock Officers shall secure an institutional barber on Saturday and supervise barbering services for any cellblock inmate who wishes.  Exception to services may be made for good reason if authorized by Security (Captain or Major) Supervisor and justified in writing.  Disposable razors are issued as needed.

(L.)   <u>CANTEEN</u>:  An inmate who has been in lockdown for seven days or more shall be allowed Canteen privileges.  The only items which may be purchased are the items which an inmate may keep in his cell.

(M.)   Guidelines for inmates who are assigned to the Cellblock because of beds not being

**EXHIBIT "G3"**

Case 2:05-cv-04667-JWD-RHR Document 51 Filed 12/29/08 Page 36 of 47 Page ID #: 56

RE:     **POSSESSIONS, PRIVILEGES AND**                          **PAGE: 4**
        **RESPONSIBILITIES OF CELL BLOCK INMATES.**

available in general population dormitories.

(1)     Will be allowed 15 minute shower time. Up to two of these inmates may shower during the same time period.

(2)     In general, possessions allowed in the cell will be the same as for other cellblock inmates. An exception is a state issued jacket, headwear, footwear, or other items needed for work.

(3)     Meals will be eaten in the cell.

(4)     Restraints do not have to be placed on these inmates when released from the cell. These inmates should not be out of the cell on the tier at the same time as inmates confined for disciplinary reasons.

(5)     May attend religious services including open callout.

(6)     May make one phone call per day of up to 15 minutes.

(7)     May make Canteen and purchase any consumable item but only those items allowed in other cells may be transported to the Cellblock.

(8)     Have same indigent basis as other inmates.

(9)     Will be released from cell for work call. May utilize H-1 restroom. Will return to Cellblock for 11:15 lockdown and 4:15 lockdown. On summer schedule may be released from Cellblock after 4:15 P.M. count and remain on yard until sundown count. On winter schedule will remain in cell after 4:15 P.M. count except for callouts and meals.

(10)    In general, when yard is open, these inmates may be out of Cellblock, but cannot continually come and go.

(11)    When possible these inmates should be on a different tier from inmates confined for disciplinary reasons.

(12)    Must have a visual body cavity search upon entering Cellblock.

(13)    May not possess smoke or tobacco items or have radio/tape players or food items while in Cellblock.

(14)    On Holidays and weekends no rap up requirement.

(15)    If leaves cell, must have made up bed and cleaned area and properly stored all items.

(16)    Will be allowed to make all callouts.

(17)    Will be allowed contact visits.

(18)    Do not have to wear orange jumpsuit.

(19)    May use barber services on yard only.

(20)    Must comply with other Cellblock rules where applicable.

(N)     All cellblock inmates are required to make rap-up 7 days of the week at 5:30am. All inmates will get up, dress in the jumpsuit provided, make up bed the same as listed for dorm inmates. Between the hours of 5:30 am to 6:00 pm inmates in Protective Custody and Administrative Segregation may lie down on their beds, but not under the cover. All cellblock inmates must keep their cell clean, neat, prepared for inspection at all times, must not place any items on cell bars, walls or ceiling, must store all personal items in assigned locker (may place folded towel, washcloth an end of bed:, and must not keep milk cartons, food items, extra cups or similar items after meals have been served. (Note paragraph M exception for General Population inmates temporarily in Cellblock).

(O)     All Cellblock inmates must utilize the bed assigned to them. If assigned a top bunk, then the inmate must use and sleep in the assigned bunk. Switching beds or using another bunk is prohibited.

**EXHIBIT "G4"**

**INMATE POSTED POLICY #20**                          **EFFECTIVE DATE: 06/01/05**

**RE:     POSSESSIONS, PRIVILEGES AND**                **PAGE: 5**
**RESPONSIBILITIES OF CELL BLOCK INMATES.**
****************************************************************************************************

(P)     All inmates assigned a jumpsuit must wear it zipped up or buttoned, and are not permitted to have the sleeves or pants legs rolled up. The jumpsuit must be worn when an inmate exits his cell.

(Q)     Cellblock inmates may only communicate with inmates in adjacent cells. Loud talking, hollering, yelling through the vents, trying to communicate with inmates on other tiers or outside the cellblock is prohibited and No Warning is required prior to being in violation of this rule.

(R)     Paragraph N, O, P, Q apply daily to all cellblock inmates unless an exception is listed.

(S)     Medical staff, Classification staff and Senior Security staff visit the cellblock daily. Inmates may discuss concerns with these staff members. Cellblock staff will document when these staff members visit.

Violations of this posted policy in general are actionable under Rule #5, Aggravated Disobedience, as governed by the Disciplinary Rules and Procedures for Adult Inmates, December 2000.

The possession of items by a Cellblock inmate, in violation of this posted policy may be actionable as a charge of violation of Rule #1, Contraband or Rule #1A, Unauthorized Item, depending on the degree to which Security is threatened. Refusing a shower for 3 consecutive days will be actionable as a violation of Rule #26, Unsanitary practices. Providing false information to staff about an attorney phone call is actionable as a violation of Rule #22, Theft. Refusing to remove items from a cell as ordered by Corrections Staff may be actionable as a violation of Rule #3, Defiance or Rule #5, Aggravated Disobedience, depending on the degree of the violation. Refusing to properly make up the bed, clean up the cell and properly store items in the cell, or dress in the prescribed uniform will be actionable as a violation of Rule #5, Aggravated disobedience. Failure to make rap-up at the appropriate time, refusing an order to make "Rap up" and/or continuing to talk loud after being told not to do so is actionable as a violation of Rule #5, Aggravated disobedience. Rule #30, General prohibited behaviors; Rule #29, Disturbance will apply to situations described in those rules. Rule #30 will be applied to any situation creating a safety hazard in the Cellblock or creating a fire or electrical hazard in the Cellblock.


Jim Rogers, Warden
C. Paul Phelps Correctional Center


THIS POSTED POLICY #20 SUPERSEDES:
Posted Policy #20 dated 07/15/05.

EXHIBIT "G5"

INMATE SSTED POLICY #20

EFFECTIVE DATE: 02/22/06

CELLBLOCK

TO:   INMATE POPULATION

RE:   POSSESSIONS, PRIVILEGES AND RESPONSIBILITIES OF SPECIAL MANAGEMENT (SMU) AND EXTENDED LOCKDOWN (XLD) INMATES

## General Rules of Confinement:

1.   Loud talking, running, singing and other disruptive behavior is not allowed. Inmates must talk softly while talking with officers or to inmates in adjoining cells.

2.   Inmates are not permitted to talk or shout to others through windows. They may not pass items through, over, or under fences, or from cell to cell, or to other tiers.

3.   Inmates may not put arms or legs through bars at anytime.

4.   Inmates may not climb on or shake ("rack down") cell bars or damage institutional property.

5.   Inmates may not hang anything from cell bars, vents, or light fixtures. Only one towel and one wash cloth may be hung from the rail provided on the bed.

6.   The cell or its contents (i.e., bed, locker) will not be damaged in any way.

7.   Inmates must make their beds with their blanket in a "hospital fashion" (45 degree angle) at the foot of the bed (the end closest to the tier), sheets and blankets pulled tight, tucked under the mattress with a 12 inch collar at the head of the bed. Their pillow will be placed at the head of the bed. On laundry days, the blanket must be placed on the bed, hospital fashion. Inmates must make their bed as soon as the laundry is given back to them. Beds will be made between the hours of 6:00 a.m. and 6:00 p.m. Inmates may sit or lie on their bed after it is made, but may not lie under the covers before 6:00 p.m.

8.   Inmates are responsible for cleaning their cell daily. Cells must be prepared for inspection at all times. Orderlies will issue cleaning supplies for this purpose. The toilet is not to be used as a trash can.

9.   Showers will be taken on Monday, Wednesday, and Friday. Inmates may not refuse a shower. Inmates will be permitted ten minutes to shower. They will be given a bath towel for their use which must be returned after the shower.

10.   Inmates will turn in their jumpsuit for a clean one after their shower.

11.   Inmates are not permitted to have razors in their cell. They will be given one during their shower time. The razor must be returned to the officers after the shower.

**EXHIBIT "G6"**

12. Inmates are not permitted to wash clothes in their cell or shower.

13. Trays, cups, utensils, condiments, and food items not eaten during meals may not be kept in the cell.

14. While on the tier, inmates must walk along the outer wall of the tier without stopping any place other than in front of their cell. Inmates may not enter or reach into another inmate's cell.

15. Inmates must stand along the outer tier wall while waiting for their cell to open. Inmates may not approach their cell door until it stops moving.

16. Indigent inmates may receive writing paper and envelopes from their Classification Officer. Their accounts will be debited for the actual costs of the materials.

17. Inmate counsel substitutes will make rounds in the cellblock on Tuesday, Thursday, and Saturday afternoons. However, security functions will take precedence in case of a conflict.

18. Inmates will only be allowed to attend medical call-outs or those specifically designated by the administration.

19. Cell lights will be turned on at 5:30 a.m. and remain on until 9:00 p.m. Cell lights will be turned off between the hours of 9:00 p.m. and 5:30 a.m.

20. On laundry days, dirty clothing and linen will be placed on the tier as instructed by the officers on duty. The laundry will be transported to the Laundry by the orderlies and returned later that day.

21. Inmates serving isolation will not be permitted to keep their mattress, sheets, pillow, or blankets between 6:00 a.m. and 8:30 p.m.

22. An alternative meal may be served to an inmate who abuses food or food service equipment in a way that could harm him, staff, or other inmates.

23. Inmates must be fully dressed, including appropriate footwear (5:30 a.m. to 6:00 p.m., Monday thru Sunday) and when going off the tier. Underwear must be worn and jumpsuit properly fastened during pill/sick call. Inmates are not allowed to roll up their sleeves or pants legs. Inmates will wear, at a minimum, under shorts while in their cell or going to or from the showers.

24. Barber services will be offered to inmates each Saturday.

25. Regular pens and pencils are not permitted. Inmates may request a "flex" ink pen to use in their cell. The flex pen must be returned to the officer after use and no later than lights out.

EXHIBIT "G7"

Inmate Posted Policy #20
Cellblock                                                           Page #3
February 22, 2006

26.     Regular toothbrushes are not allowed.  Inmates will be issued a "shank-less"
        toothbrush.  Toothpaste will be provided to inmates at each meal.

27.     Inmates will be permitted to make purchases from the Canteen once per week,
        generally on Thursday.  The only items which may be purchased are the items an
        inmate may keep in his cell (i.e., hygiene items, "over-the-counter" (OTC)
        medications, legal/writing supplies.)

28.     Inmates are allowed to write and send letters.  Inmates must put their name and
        DOC number on all outgoing mail.  Indigent inmates can mail two personal letters
        a week.

29.     Inmates cannot receive packages or periodicals.  Inmates cannot accumulate an
        excessive amount of correspondence or other papers (personal or legal.)

30.     Inmates must utilize the bed assigned to them.    Switching beds or
        using another bunk is prohibited.

31.     Inmates are permitted one hour out of their cell to exercise, five days per week,
        unless security or safety concerns dictate otherwise.  Generally, exercise days will
        be Tuesday, Thursday, Friday, Saturday and Sunday.  Exercise includes shower
        and telephone use.  Extended Lockdown (XLD) inmates will generally exercise in
        the outdoor exercise area.

32.     While exercising, inmates must walk the length of the recreation area without
        stopping.  Inmates out on the tier for exercise must walk closest to the outer wall
        and must not stop in front of any other cell.  Inmates will be allowed to talk in low
        tones to inmates in neighboring recreation areas/cells.  Failure to comply may
        result in the termination of the exercise period.  An inmate who declines his
        outside recreation will not receive extended shower and/or telephone use.

33.     Inmates will be allowed one 15 minute telephone call after their first 72 hours in
        the Special Management Unit (SMU.)  Thereafter, SMU and XLD inmates will be
        permitted to make a telephone call every 14 days.

34.     Inmates may make calls to their verifiable Attorney of Record during normal
        business hours (Monday through Friday, 8:00 a.m. to 4:30 p.m.)

35.     Inmates will visit in the non-contact visiting area.  The inmate will have 15
        minutes to get ready when notified that he has a visit.  Inmates will be allowed up
        to two visitors per non-contact visit.  Each visit will be no longer than one hour in
        duration.  Visitors may visit a total of two hours each month.

36.    SMU inmates are permitted the following items:

* One mattress
* One pillow
* Two sheets
* One pillow case
* One blanket
* One towel (XLD – 2 TOWELS)
* One washcloth (XLD – 2 WASH CLOTHES)
* Three pairs of white socks (XLD – 4 PRS. SOCKS)
* Three pairs of under shorts ( XLD – 4 PRS. UNDERSHORTS)
* Three undershirts or T-shirts (XLD – 4 UNDERSHIRTS OR T-SHIRTS)
* One pair of shower slippers or tennis shoes (XLD – SLIPPERS & BROGAIN:
* One shank-less toothbrush
* One small (2.5 ounces <) bar of soap
* One comb
* One roll of toilet paper
* Over-the-counter (OTC) medications (only one container per medication.)
* One watch
* One wedding ring
* One writing tablet (8 ½" x 14 ½" maximum)
* 50 envelopes (business size or smaller)
* 25 postage stamps (must be affixed to an envelope with the inmate's name and DOC # written in the return address section in ink.)
* Legal materials (limited to work in progress)
* Educational materials (limited to that required for self-study as authorized by instructor.)
* Three books (library, religious, law, etc.)

An inmate's property must fit and be stored inside his locker.

37.    XLD is considered permanent housing. Inmates in XLD may have the same items as inmates in the SMU, with the following exceptions: One additional: towel, washcloth, pair of socks, underwear, undershirt or T-shirt. In addition, Extended Lockdown inmates may retain both shower slippers and brogans, and 10 family photographs (may not be displayed.) Items not allowed in XLD will be mailed home at the inmate's expense or disposed of in accordance with Department Regulation #C-03-007.

38.    Inmates confined to the SMU will secure their excess property in the Property Room using a seal lock system. Perishable items will be disposed of.

EXHIBIT "G9"

Case 2:06-cv-01697-PM-KK Document 51-1 Filed 12/29/08 Page 42 of 47 PageID #: 62
Inmate Posted Policy #20
Cellblock
February 22, 2006

Page #5

39.    The Shift Captain may remove, for up to 48 hours, all or portions of otherwise approved items and/or restrict activities when those items and/or activities are used by the inmate to harm others, create a disturbance, or disrupt the orderly operation of the unit. Clothing items may be removed when such items are used in an unauthorized manner (i.e., to clog a toilet, to bind cell doors.) In such cases the inmate will be issued a paper gown.

Such instances, referred to as "cell restrictions," may be imposed beyond 48 hours, up to 30 days, when a documented pattern of behavior exists. Cell restrictions will not be imposed for any longer than is necessary to ensure the well-being of staff and inmates.

Violations of this posted policy are actionable under the appropriate disciplinary action as described in the Disciplinary Rules and Procedures for Adult Inmates handbook.


Robert C. Tanner, CCE
Warden

THIS INMATE POSTED POLICY #20 SUPERSEDES:
INMATE POSTED POLICY #20, DATED 07/15/04

**INMATE POSTED POLICY #30**                                    **EFFECTIVE DATE: 06/01/05**

**TO:**    **INMATE POPULATION**

EXHIBIT "H"

**RE:**    **CLARIFICATION OF MINOR PRIVILEGES/MAJOR PRIVILEGES**
          **Addition to Schedule B Penalties (Loss of Incentive Wages for up to one year.)**
*************************************************************************************************

The purpose of this policy is to assist in providing guidelines and clarification of some of the minor privileges.

1.    Minor privileges are:
      (A)    radio and/or T.V. privileges
      (B)    Recreation and yard activities
      (C)    telephone privileges (except for emergency/legal calls)
      (D)    canteen privileges
      (E)    movies
      (F)    any similar privileges

2.    Loss of radio - the inmate must turn in the radio to the Unit Mailroom for the time period that privilege is suspended.

3.    Loss of T.V. - the inmate may not be in the T.V. room or stationed where he may view the T.V. In the new dorms, the inmate may not station himself on his bed in such a position as to constantly view the T.V.

4.    Loss of recreation and yard activities - the inmate is restricted to his assigned housing area and cannot participate in inside or outside the dorm recreational activities ( such as but not limited to football, basketball, hobbycraft, volleyball, weight-lifting, card games, chess, etc.). The inmate may watch TV, use the phone, and may visit the Canteen. The inmate must be allowed to report for work, visitation, medical callouts, meals, classification callouts and/or any other non-discretionary institutional programs. The inmate will also be allowed to attend one religious service each week and utilize the Law Library (not reading library) as coordinated by Security or callout. The inmate may also attend organized inmate self-help group meetings (one each week).

5.    Loss of telephone - inmate cannot use the telephone except in a verified emergency as approved by the Unit Captain or above in rank or when there is a verifiable need to make a legal call as verified/approved by the Unit Captain or higher in rank.

6.    Loss of movies - inmate cannot attend movies for the period covered by the suspension.

7.    Loss of canteen - inmate cannot utilize the canteen for the time period covered by the suspension.

8.    Sentences regarding loss of minor privileges become finalized and are in effect when the sentence is published in the Daily Notification Bulletin. Low court sentences which are appealed are not in effect until heard by the Disciplinary Board and then posted on the Daily Notification Bulletin.

9.    Violation of any sentence imposed by either the Disciplinary Officer or Board may result in a charge of Aggravated Disobedience, Rule #5.

10.   On a Schedule A violation, there may be a loss of minor privileges for up to 4 weeks. On a schedule B violation, there may be a loss of minor privileges for up to 12 weeks and in some cases 24 weeks.

11.   Effective January 20, 2002. An additional Schedule B Penalty was made available to Disciplinary Boards. The Penalty of "Loss of Incentive Wages for up to one year" was included as a possible

EXHIBIT "H1"

**INMATE POSTED POLICY #30**                          **EFFECTIVE DATE: 06/01/05**

**RE: CLARIFICATION OF MINOR PRIVILEGES**              **PAGE: 2**

sentence.

12.   Outside recreation activities for cellblock inmates may be restricted for up to 30 days for any schedule B violation as determined by the Disciplinary Board.

Violations of this Posted Policy in general are actionable under rule #5 Aggravated Disobedience, as governed by the Disciplinary Rules and Procedures for Adult Inmates, December 2000.

Jim Rogers, Warden
C. Paul Phelps Correctional Center

THIS INMATE POSTED POLICY #30 SUPERSEDES:
INMATE POSTED POLICY #30 DATED 07/15/04.

EXHIBIT "H2"



**DEPARTMENT OF**
# PUBLIC SAFETY AND CORRECTIONS

KATHLEEN BABINEAUX BLANCO, GOVERNOR                    RICHARD L. STALDER, SECRETARY

# MEMORANDUM

TO:        Russell Hewitt        #331926
           PCC Cellblock

FROM:      Delanie Burgess
           Administrative Specialist

DATE:      September 6, 2006

SUBJECT:   Cellblock Review Board
_____

Your record was screened by the Cellblock Review Board on Tuesday, September 5, 2006.

Due to your poor conduct, at this time the Review Board can not recommend you being released back to the general population.

Your record will be screened again in October.

**EXHIBIT "H3"**

P. O. Box 1056 ● 14925 Hwy 27 N. ● DeQuincy, Louisiana 70633
(337) 786-7963
AN EQUAL OPPORTUNITY EMPLOYER



DEPARTMENT OF

# PUBLIC SAFETY AND CORRECTIONS

KATHLEEN BABINEAUX BLANCO, GOVERNOR

RICHARD L. STALDER, SECRETARY

# MEMORANDUM

TO:        David Cooper        #477676
           PCC Cellblock

FROM:      Delanie Burgess
           Administrative Specialist

DATE:      September 6, 2006

SUBJECT:   Cellblock Review Board

Your record was screened by the Cellblock Review Board on Tuesday, September 5, 2006.

It was noted that you have received 13 other charges while sentenced to CCTM/Extended Lockdown. Due to your poor conduct, at this time the Review Board can not recommend you being released back to the general population.

Your record will be screened again in October.

**EXHIBIT "H4"**

P. O. Box 1056 • 14925 Hwy 27 N. • DeQuincy, Louisiana 70633
(337) 786-7963
AN EQUAL OPPORTUNITY EMPLOYER

# CELLBLOCK REVIEW COMMITTEE



**Name:**      <u>**DAVID COOPER**</u>      DOC#<u>477676</u>

**Date Placed on CCTM:**      <u>06/28/06</u>

**Found Guilty of:**      <u>**AGG. DISOBEDIENCE**</u>

**Decision:**

     ✓     Detain in Cellblock. See reason below.

             Release from Cellblock with Custody Change to Medium.

Reason for decision:

_Poor conduct, will rescreen again in September._

Date: _8-15-06_

_A. Al. N. _____
Chairperson

_Delanie Burges_
Member

EXHIBIT "H5"