# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

KENNY WHITMORE                                        CIVIL ACTION

VERSUS                                                        NO. 14-4-JWD-RLB

BURL CAIN, ET AL.

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

**ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.**

Signed in Baton Rouge, Louisiana, on May 22, 2015.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**

## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**KENNY WHITMORE**                                              **CIVIL ACTION**

**VERSUS**                                                            **NO. 14-4-JWD-RLB**

**N. BURL CAIN, ET AL.**

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter is before the Court on the Motion for Partial Summary Judgment of Defendants LeBlanc, Cain, Vannoy, Lamartiniere, Fontenot, Peabody and Stalder (R. Doc. 57). The motion is opposed. (R. Doc. 62). Defendants have filed a Reply. (R. Doc. 69). For the following reasons, it is recommended that the motion should be granted in part and denied in part.

**I.      Background and Procedural History**

Kenny Whitmore ("Plaintiff") is an inmate at the Louisiana State Penitentiary in Angola, Louisiana ("LSP"). Plaintiff brings this "action for injunctive, declaratory, and monetary relief for violation of the First, Eighth, and Fourteenth Amendments of the United States Constitution and 42 U.S.C. § 1983." (R. Doc. 8 at 1). Plaintiff names as defendants (1) LSP Warden N. Burl Cain; (2) former Secretary of the Louisiana Department of Public Safety and Corrections ("DOC") Richard Stalder; (3) DOC Secretary James M. LeBlanc; (4) LSP Deputy Warden Richard Peabody; (5) LSP Assistant Warden Cathy Fontenot; (6) LSP Assistant Warden Darrel Vannoy; (7) LSP Assistant Warden Joe Lamartiniere; and (8) members of the Lockdown Review Board, including LSP Deputy Warden Sam Smith, Major Robert Rachal, Major Paul J. Myers,

Classification Officer Randy Ritchie, Classification Officer Tom Norris, Classification Officer Susan Fairchild, and Classification Officer Honeycutt.[1]  (R. Doc. 8 at 2-4).

Plaintiff alleges that he "has been held in extended lockdown for a period of approximately 35 years, from 1977 to the present, except for an intervening period in the general population from December 1984 until July 1986." (R. Doc. 9 at 4).  Plaintiff alleges that he was initially classified as an extended lockdown inmate based upon his friendship with Albert Woodfox and Robert King Wilkerson of the so-called Angola Three,[2] his membership in the Black Panther Party, and the fact he is black.  (R. Doc. 8 at 4).   Plaintiff alleges that after he was released into the general population in December of 1984, he was informed by Major Mayeaux that the reclassification was in error, but that he could remain in general population so long as he gave his word that he would "not start anything" or organize politically. (R. Doc. 8 at 5).

On or around July 5, 1986, Plaintiff and four other white inmates attempted to escape and were captured.  (R. Doc. 8 at 5).  Plaintiff alleges that in contrast to the white inmates, who were placed in extended lockdown for no more than 1 year after their attempted escapes, he has been held in extended lockdown ever since his attempted escape.  (R. Doc. 8 at 5).

Plaintiff alleges that at 90-day intervals the members of the Lockdown Review Board determine whether to extend Plaintiff's extended lockdown.  (R. Doc. 8 at 7).  Plaintiff alleges that no "review actually takes place" and that he is not allowed to argue why he should be released into the general population.  (R. Doc. 8 at 7-8).  Plaintiff further alleges that he is being penalized "because of his perceived political affiliation and political beliefs" and out of "an unfounded and unjustified fear" that he will convert new inmates to his affiliations and beliefs. (R. Doc. 8 at 10).

---

[1] Plaintiff does not provide a first name for Classification Officer Honeycutt.
[2] The third member of the "Angola Three" is the late Herman Wallace.

Plaintiff claims that in light of being held in extended lockdown for years he "has suffered severe mental anguish and other psychological damage, along with an unwarranted deprivation of the liberties and privileges granted other prisoners." (R. Doc. 8 at 11). He also claims to have "suffered physical injury as a result of his extended confinement in extended lockdown, including damage to his eyesight, hypertension/high blood pressure, and arthritis." (R. Doc. 8 at 11).

On July 21, 2014, Defendants answered the Amended Complaint. (R. Doc. 20). Defendants raised the affirmative defense that Plaintiff's "action is prescribed as to all claims arising more than one year to the date of filing suit." (R. Doc. 20 at 1). Defendants also raised the defense of qualified immunity. (R. Doc. 20 at 2). The Court granted Defendant's motion for a Rule 7(a) Reply to their assertion of qualified immunity (R. Doc. 55), which Plaintiff filed on January 20, 2015 (R. Doc. 56).

On January 30, 2015, Defendants moved for partial summary judgment based on prescription and qualified immunity. (R. Doc. 57). Defendants argue that Plaintiff's claims are prescribed, and should be dismissed with prejudice, to the extent they arose prior to January 2, 2013 (one year prior to when Plaintiff originally filed suit in state court). (R. Doc. 57-1 at 4). Because defendant Stalder left his position as Secretary of the Department of Corrections in 2008, Defendants argue that all claims against defendant Stalder should be dismissed with prejudice as no longer viable. (R. Doc. 57-1 at 4). In response, Plaintiff argues that his claims have not prescribed in light of the "continuing violation" theory or doctrine. (R. Doc. 62 at 17-19).

Defendants further argue that Plaintiff has failed to adequately plead claims against defendants Leblanc, Fontenot, and Peabody, because Plaintiff has failed to establish through his

Rule 7(a) Reply "the requisite link between each of the Defendants individually and the alleged wrongful acts." (R. Doc. 57-1 at 5). In support of these contentions, Defendants rely on a Statement of Undisputed Facts (R. Doc. 56-2) and affidavits submitted by defendants Leblanc (R. Doc. 57-3), Fontenot (R. Doc. 57-4), and Peabody (R. Doc. 57-5). In response, Plaintiff argues that these defendants are not entitled to qualified immunity because each causally contributed to his alleged constitutional deprivations. (R. Doc. 62 at 13-14). More specifically, Plaintiff argues that defendant LeBlanc implemented policies that directly prevented Plaintiff from seeking review of his status (R. Doc. 62 at 14-15), and there are questions of fact regarding whether Fontenot and Peabody had involvement with reviewing Plaintiff's status (R. Doc. 62 at 15-17).

## II.     Law and Analysis

### A.      Summary Judgment Standard

Pursuant to well-established legal principles, summary judgment is appropriate where there is no genuine disputed issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). A party moving for summary judgment must inform the Court of the basis for the motion and identify those portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, that show that there is no such genuine issue of material fact. *Celotex*, 477 U.S. at 323. If the moving party carries its burden of proof under Rule 56, the opposing party must direct the Court's attention to specific evidence in the record which demonstrates that the non-moving party can satisfy a reasonable jury that it is entitled to a verdict in its favor. *Anderson*, 477 U.S. at 248. This burden is not satisfied by some metaphysical doubt as to alleged material facts, by

unsworn and unsubstantiated assertions, by conclusory allegations, or by a mere scintilla of evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). Rather, Rule 56 mandates that summary judgment be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 323. Summary judgment is appropriate in any case where the evidence is so weak or tenuous on essential facts that the evidence could not support a judgment in favor of the non-moving party. *Little*, 37 F.3d at 1075. In resolving a motion for summary judgment, the Court must review the facts and inferences in the light most favorable to the non-moving party, and the Court may not evaluate the credibility of witnesses, weigh the evidence, or resolve factual disputes. *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991), *cert. denied*, 502 U.S. 1059 (1992).

B.      **The Continuing Violation Theory**

In an action brought pursuant to 42 U.S.C. § 1983, federal courts look to the law of the state in which the cause of action arose to determine the applicable statute of limitations, i.e., the prescriptive period. *Wallace v. Kato*, 549 U.S. 384, 387 (2007). Federal courts will also look to state tolling provisions in a § 1983 action. *Burge v. Parish of St. Tammany*, 996 F.2d 786, 788 (5th Cir. 1993); *Brosette v. City of Baton Rouge*, 837 F. Supp. 759, 762 (M.D. La. 1993). To determine the accrual date of a § 1983 action, however, the court must look to federal common law. *Wallace v. Kato*, 549 U.S. at 388; *Perez v. Laredo Junior Coll.*, 706 F.2d 731, 733 (5th Cir. 1983); *Brosette*, 837 F.Supp. at 762. "Under federal law, a cause of action accrues the moment the plaintiff knows or has reason to know of the injury." *Helton v. Clements,* 832 F.2d 332, 334 (5th Cir.1987). "Thus, the statute of limitations begins to run from the moment the plaintiff

becomes aware that he has suffered an injury or has sufficient information to know that he has been injured." *Id.*

There is no dispute that the prescriptive period under Louisiana law of one year for delictual actions pursuant to Louisiana Civil Code article 3492 is applicable in this case. *See Lewis v. Ascension Parish School Bd.*, 662 F.3d 343, 347 (5th Cir. 2011). The parties disagree, however, on whether Plaintiff's action should be considered a "continuing violation" that would prevent the commencement of the prescriptive period until after the continuing violation ceases.[3]

The continuing violation theory has its roots in Title VII discrimination cases, and the Fifth Circuit has noted that courts are "wary to use the continuing violation doctrine to save claims" outside of that context. *See McGregor v. Louisiana State Univ. Bd. of Sup'rs*, 3 F.3d 850, 866 n.27 (5th Cir. 1993). In determining when the prescriptive period commences to run in a § 1983 action, however, the court may look to Title VII cases. *Brosette*, 837 F. Supp. at 762 (*citing Perez*, 706 F.2d at 733). Where applicable, the "continuing violation theory relieves a plaintiff of establishing that all of the complained-of conduct occurred within the actionable period if the plaintiff can show a series of related acts, one or more of which falls within the limitations period." *Messer v. Meno*, 130 F.3d 130, 134-35 (5th Cir. 1997) (*citing Berry v. Board of Supervisors of LSU,* 715 F.2d 971, 979 (5th Cir.1983)); *see also Perez*, 706 F.2d at 733 ("To establish a continuing violation . . . the plaintiff must establish that the unconstitutional or illegal act was a part of 'standard operating procedure,' a fixed and continuing practice.") (citation omitted). The Supreme Court has indicated that the application of the continuing

---

[3] The Seventh Circuit has stated that the "continuing violation theory" is not a tolling doctrine, but instead determines the accrual date of an action, and is therefore derived from federal law and not state law. *See Heard v. Sheahan*, 253 F.3d 316, 319 (7th Cir. 2001). Plaintiff has not argued that his claims are timely pursuant to the continuing tort doctrine or any equitable tolling doctrine under Louisiana law.

violations doctrine should be "applied sparingly." *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002).

The Fifth Circuit has noted on several occasions that case law on the continuing violation doctrine is "inconsistent and confusing." *Glass v. Petro-Tex Chem. Corp.*, 757 F.2d 1554, 1560-61 (5th Cir. 1985) (citing *Dumas v. Town of Mount Vernon,* 612 F.2d 974, 977 (5th Cir. 1980); *Scarlett v. Seaboard Coast Line Railroad Co.,* 676 F.2d 1043, 1049 (5th Cir. 1982); *Berry v. Board of Supervisors of L.S.U.,* 715 F.2d at 979 n.11). Nevertheless, the Court has made the following clear regarding the proper application of the continuing violation theory:

> The core idea of the continuing violations theory . . . is that equitable considerations may very well require that the filing periods not begin to run until facts supportive of a . . . civil rights action are or should be apparent to a reasonably prudent person similarly situated. The focus is on what event, in fairness and logic, should have alerted the average lay person to act to protect his rights.

*Huckabay v. Moore*, 142 F.3d 233, 238-39 (5th Cir. 1998) (*citing Messer v. Meno*, 130 F.3d 130, 134-35 (5th Cir. 1997). The Plaintiff must "show an organized scheme leading to and including a present violation . . . such that it is the cumulative effect of the [illegal] practice, rather than any discrete occurrence, that gives rise to the cause of action." *Huckabay*, 142 F.3d at 239 (*citing Messer*, 130 F.2d at 135; *Glass*, 757 F.2d at 1561).

The Fifth Circuit has not determined whether the continued confinement of an inmate on extended lockdown constitutes a "continuing violation" for the purpose of preventing the commencement of the prescriptive period.[4] Plaintiff turns primarily to two decisions by the

---

[4] This court was faced with a similar argument in the § 1983 action brought by Robert King Wilkerson, Albert Woodfox, and Herman Wallace (the Angola Three) for their own extended lockdowns. *See Wilkerson v. Stalder*, No. 00-304 (M.D. La.). Those plaintiffs filed their action on March 30, 2000, alleging that they had been in extended lockdown for 28 years prior to filing suit. *Id.*, ECF. No. 1 at 7. The defendants moved to dismiss all federal law claims that arose prior to March 30, 1999, one year prior to when the plaintiffs filed suit. *Id.*, ECF. No. 24. Based on the plaintiff's representation that they were not bringing any claims that arose prior to March 30, 1999 (one year before filing their action) the court

Seventh Circuit, *Heard v. Sheahan*, 253 F.3d 316 (7th Cir. 2001) and *Turley v. Rednour*, 729 F.3d 645, 648 (7th Cir. 2013). (R. Doc. 62 at 18). In *Heard*, the *pro se* plaintiff's jailers allegedly refused to provide him medical attention for a suspected hernia and ultimately refused surgery after he was diagnosed with a ruptured hernia. *Heard*, 253 F.3d at 316. The Seventh Circuit concluded that the plaintiff's Eighth Amendment claim of deliberate indifference was a continuing violation because it involved a series of wrongful acts resulting in continuing injuries for which it would have been impractical to litigate in a serious of indefinite lawsuits. *Id*. at 320. The Seventh Circuit distinguished the facts before it from discrimination cases where "the damages from each discrete act of discrimination would be readily calculable without waiting for the entire series of acts to end." *Id*.

In *Turley*, the Seventh Circuit extended the reasoning in *Heard* to an action where plaintiff alleged that his entire prison was placed in lockdown 25 times in an approximately three year period, with 81 days being the longest continuous lockdown period. *See Turley*, 729 F.3d 645. The Seventh Circuit held that the plaintiff's "Eighth Amendment and conspiracy complaints concern continuing actions" because the "nature of his allegations are that prison officials repeatedly and regularly imposed lockdown for improper purposes, and with each continuing day and period of lockdown, [the plaintiff's] injuries increased." *Id*. at 651. After briefly reviewing the *Heard* decision, the Seventh Circuit concluded that the "statute of limitations began running from the last date of lockdown, or last day confined to the tiny cell, and consequently," the plaintiff's claim was timely. *Id*. The Seventh Circuit also held that the plaintiff's "claims could conceivably also be tolled under the cumulative approach to the

---

concluded that the issue was moot. *Id*., ECF No. 46 at 17 n.21, *report and recommendation adopted*, ECF No. 50 (Apr. 22, 2002).

continuing violation doctrine" as provided by the Supreme Court. *Id.* (citing *Morgan*, 536 U.S. at 101).[5]

The Seventh Circuit's reasoning and conclusions in *Heard* and *Turley* are unpersuasive in the instant action given the specific facts of this case. Unlike the *Heard* action, Plaintiff's claim in this action is not for deliberate indifference to a medical condition that has escalated over time.[6] The initial decision to place Plaintiff in lockdown was followed by various subsequent decisions of the Lockdown Review Boards to keep Plaintiff in lockdown. These acts constituted distinct events in response to which Plaintiff could have brought his lawsuit. "Unlike in a deliberate indifference case, [plaintiff] did not need to wait for the harm to accrue in order for his cause of action to become complete." *Foddrill v. McManus*, No. 13-00051, 2013 WL 6198228, at *3 (W.D. Tex. Nov. 26, 2013) (refusing to apply the reasoning of *Heard* to plaintiff's claim that his rights were continually violated by the issuance of a Criminal Trespass Warning banning him from certain city property); *see also Jones v. Johnston*, 160 F. App'x 336 (5th Cir. 2005) (no continuing tort where inmate complained that he was repeatedly placed in danger by

---

[5] In his concurring opinion, Chief Judge Easterbrook distinguishes three distinct situations in which there is a "continuing" violation or harm: (1) "Violations begin and continue, and the prevailing rule treats new acts, or ongoing inaction, as new violations" (*e.g.*, deliberate indifference to a painful medical condition as in *Heard*) ; (2) "Deeds that are not themselves violations of law become actionable if they add up" (*e.g.*, Title VII "hostile work environment" actions such as in *Morgan*); and (3) "A discrete wrongful act causes continuing harm" for which *Morgan* holds there is no extension of the period of limitations. *Turley*, 729 F.3d at 654 (Easterbrook, F., concurring). Chief Judge Easterbrook would have held that the lockdowns in *Turley* merited an extension of the statute of limitations under the second "cumulative-violation doctrine." *Id.* at 644-65.

[6] Plaintiff does use the phrase "deliberate indifference" in his Amended Complaint twice. First, he states that Defendants Cain, Peabody, Vannoy, Fontenot, and Lamartiniere acted with "deliberate indifference" to his "rights" by failing to take action. (R. Doc. 8 at 8). Second, he states that all of the defendants acted with "deliberate indifference to his condition" by refusing to release him from extended lockdown. (R. Doc. 8 at 10). Neither of these references to "deliberate indifference" reference Plaintiff's alleged physical and mental injuries caused by his "condition" of being held in extended lockdown. By distinguishing *Heard*, the court makes no finding at this time regarding whether Plaintiff has raised a "deliberate indifference" claim. It is sufficient to distinguish *Heard* on the basis that Plaintiff in this action does not allege that he suffered from a physical or mental injury independent of his confinement that Defendants ignored and allowed to escalate with deliberate indifference.

defendant's act of placing information in other inmates' pre-sentence reports that plaintiff was a "snitch"); *Lee v. Karriker*, No. 08-cv-328, 2009 WL 2590093 (E.D. Tex. Aug. 17, 2009) (no continuing tort where inmate complained of an "escape" charge in his record), *aff'd*, 383 F. App'x 491 (5th Cir. 2010).

Similarly, the Court declines to find that the reasoning utilized by the Seventh Circuit in *Turley* is applicable to the instant matter. In this case, Plaintiff alleges that each Lockdown Review Board decision subjected him to several more months of lockdown without meaningful review since 1986. Plaintiff alleges that Defendants put him in lockdown in light of his political leanings and race and, through sham 90-day reviews, kept him in lockdown. Plaintiff admits to having "received approximately 144" written decisions from the Lockdown Review Board while in extended lockdown. Under Fifth Circuit precedent, each Lockdown Review Board Decision should be considered an "event, in fairness and logic," that should have alerted Plaintiff "to act to protect his rights." *Huckabay*, 142 F.3d at 238-39. In the *Turley* action, the plaintiff alleged that prison officials repeatedly put the entire jail on lockdown for several months at a time over the course of three years in a conspiracy to create a staff shortage and to negotiate a pay raise, to take vacations, or "to psychologically punish all prisoners for the misconduct of a few." *Turley*, 729 F.3d at 648. Whereas a potential plaintiff in the situation presented in *Turley* may not have had sufficient information within those 3 years of consecutive lockdowns to determine that the lockdowns were potentially unlawful, Plaintiff in this case was in the position to make that determination after each discrete Lockdown Review Board Decision.

In contrast to the court's analysis in *Heard* and *Turley*, this Court finds the reasoning utilized by the Tenth Circuit to be more persuasive. In *Silverstein v. Federal Bureau of Prisons*, 559 Fed. App'x. 739 (10th Cir. 2014), a federal inmate plaintiff complained of his 30-year

placement in segregated confinement. The Court concluded in that case that a six year federal statute of limitations applied to the plaintiff's claim and that the plaintiff's claim for injuries and injunctive relief was not completely time-barred but was limited to events occurring during the six year period preceding the filing of the original Complaint. *See id.* at 751. In response to the plaintiff's contention that the continuous nature of his confinement justified the application of the continuing violation doctrine, the Court stated:

> With respect solely to the duration of his confinement, which he points out has been continuing and uninterrupted for over thirty years, we have held the continuing wrong doctrine "cannot be employed where the plaintiff's injury is definite and discoverable, and nothing prevented the plaintiff from coming forward to seek redress." . . . [Plaintiff] has not shown anything prevented him from seeking redress years ago, especially in light of his assertion he became aware of the decline in his mental health at least twenty years ago.

*Id.* (citations omitted). *See also Fogle v. Slack*, 419 Fed. App'x. 860, 864-65 (10th Cir. 2011) (concluding that the continuing violation doctrine did not apply to extend the applicable two-year limitations period where an inmate filed his Complaint approximately two years after his release from a three-year period of segregated confinement; also noting, as in the instant case, that there were discreet and separate decisions made at different times by different reviewing officials, "thus making it inappropriate to aggregate all such decisions into one continuing violation for limitations purposes").

In the instant case, at some point years ago, the plaintiff certainly became aware of the facts supporting his claim for relief, *i.e.*, he became aware that he had been held in segregated confinement for a period of many years, and he was in possession of information supporting a conclusion that such confinement was based upon his political beliefs and/or association with members of the Black Panther Party and would continue unless and until supervisory officials determined that he had renounced same. (*See* R. Doc. 62-2 at 5) (wherein Plaintiff attests that he

was informed, "sometime in 2011, ... [that he] needed to stop affiliating with the Black Panther Party and its members if [he] wanted out of solitary.")  He therefore had knowledge of the fact of his continuing confinement, of the reasons therefor, of his alleged deteriorating health and, by extension, of the "sham" nature of his periodic review board hearings and of the participation by individual board members in determining to maintain him in segregation.  The Court need not decide the exact date upon which the plaintiff obtained the requisite knowledge of the elements of his cause of action.  However, the Court concludes that such knowledge was obtained more than one year prior to the filing of the Complaint in this case and, as in *Silverstein, supra*, that the continuing violation doctrine should not be employed under these circumstances, where Plaintiff's claim for injury was "definite and discoverable" and where he "has not shown anything prevented him from seeking redress years ago."  Accordingly, as in *Silverstein*, the Court concludes that Plaintiff's claims are limited to events occurring during the one year period preceding the filing of the Complaint in this case.

Based on the foregoing, the continuing violation doctrine does not apply to the facts of this case.  Accordingly, to the extent Plaintiff's alleged claims arose prior to January 2, 2013 (one year prior to when Plaintiff originally filed suit), those claims are prescribed and should be dismissed with prejudice.  In addition, because defendant Stalder left his position as Secretary of the Department of Corrections in 2008, Plaintiff's claims against defendant Stalder should be dismissed with prejudice.[7]

### C.    Qualified Immunity

The qualified immunity defense is a familiar one and, employing a two-step process, operates to protect public officials who are performing discretionary tasks. *Huff v. Crites*, 473

---

[7] The dismissal of Plaintiff's claims based on prescription does not necessarily limit the scope of discoverable information relative to Plaintiff's non-prescribed claims pursuant to Rule 26 of the Federal Rules of Civil Procedure.

Fed. App'x. 398, 399 (5th Cir. 2012). As enunciated in *Saucier v. Katz*, 533 U.S. 194 (2001), the first step in the analysis is to consider whether, taking the facts as alleged in the light most favorable to the plaintiff, the defendant's conduct violated the plaintiff's constitutional rights. *Id.* at 201. Second, the district court looks to whether the rights allegedly violated were clearly established. *Id.* This inquiry, the Court stated, is undertaken in light of the specific context of the case, not as a broad, general proposition. *Id.* The relevant, dispositive inquiry in determining whether a constitutional right was clearly established is whether it would have been clear to a reasonable state official that his conduct was unlawful in the situation which he confronted. *Id.* at 202.

Pursuant to well-settled legal principles, in order for a prison official to be found liable under § 1983, the official must have been personally involved in conduct causing an alleged deprivation of a constitutional right or there must be a causal connection between the actions of the official and the constitutional violation sought to be redressed. *Lozano v. Smith,* 718 F.2d 756, 768 (5th Cir.1983). Any allegation that the Defendants are responsible for the actions of subordinate officers or co-employees under a theory of vicarious responsibility or *respondeat superior* is alone insufficient to state a claim under § 1983. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (*citing Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978)); *see also Bell v. Livingston,* 356 Fed. App'x. 715, 716-17 (5th Cir. 2009) (recognizing that "[a] supervisor may not be held liable for a civil rights violation under any theory of *respondeat superior* or vicarious liability"). In the absence of direct personal participation by a supervisory official in an alleged constitutional violation, the plaintiff must allege that the deprivation of his constitutional rights occurred either as a result of a subordinate's implementation of the supervisor's affirmative

wrongful policies or as a result of a breach by the supervisor of an affirmative duty specially imposed by state law. *Lozano*, 718 F.2d at 768.

The assertion of the qualified immunity defense alters the summary judgment burden of proof. *Michalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005). Once a defendant pleads qualified immunity, the burden shifts to the plaintiff, who "must rebut the defense by establishing that the official's allegedly wrongful conduct violated clearly established law and that genuine issues of material fact exist regarding the reasonableness of the official's conduct." *Gates v. Texas Department of Protective and Regulatory Services*, 537 F.3d 404, 419 (5th Cir. 2008) (*citing Michalik v. Hermann*, 422 F.3d at 262).[8]

Defendants have not argued, for the purpose of this motion, that Plaintiff's extended lockdown does not potentially violate his established constitutional rights.[9] Defendants solely argue that, taking the facts as alleged in the light most favorable to Plaintiff, the conduct of defendants LeBlanc, Fontenot, and Peabody did not violate Plaintiff's constitutional rights because Plaintiff "has failed to establish the requisite link between each of [these] Defendants individually and the alleged wrongful acts." (R. Doc. 57-1 at 5). Accordingly, the court will consider the specific allegations made with regard to LeBlanc, Fontenot, and Peabody in Plaintiff's Complaint and Rule 7(a) Reply to determine whether Plaintiff has met his burden of establishing genuine issues of material fact regarding the alleged causal connection between the

---

[8] The United States Supreme Court has held that rigid chronological adherence to the *Saucier* two-step methodology is not mandatory. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Although the *Saucier* methodology will be "often beneficial," the *Callahan* Court leaves to the lower courts discretion as to the order in which they may wish to address the two prongs of the qualified immunity analysis. *Id.*

[9] To be clear, this court previously held that "the state of the law in 1999 gave prison officials 'fair warning' that the continued confinement of [the Angola Three] in extended lockdown for over 28 years was constitutionally infirm." *Wilkerson v. Stalder*, 639 F. Supp. 2d 654, 682-85 (M.D. La. 2007). Accordingly, Plaintiff's rights were clearly established while he was being held in extended lockdown.

acts or omissions of each of these three defendants and the constitutional violation sought to be redressed.

### 1. Secretary James LeBlanc

In his initial Complaint, Plaintiff sued Secretary Leblanc in his individual and official capacities. (R. Doc. 1 at 10). After obtaining counsel, Plaintiff amended his complaint to sue Secretary Leblanc only in his official capacity. (R. Doc. 8 at 2).[10] Accordingly, in as much as the defense of qualified immunity is not available to Secretary Leblanc in his official capacity, the Motion for Summary Judgment should be denied as to this Defendant, reserving to Plaintiff his claims for declaratory and injunctive relief as to this Defendant. *See Brandon v. Holt*, 469 U.S. 464, 472-73 (1985) (the defense of qualified immunity is not available to a public official named in an official capacity).

---

[10] "An amended complaint supersedes the original complaint and renders it of no legal effect unless the amended complaint specifically refers to and adopts or incorporates by reference the earlier pleading." *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994); *see also Baylor Univ. Med. Ctr. v. W. Growers Assurance Trust*, No. 02-cv-1872, 2003 WL 21528676, at *2 (N.D. Tex. July 3, 2003) (factual allegations in Complaint that are not incorporated into an Amended Complaint are "amended away") (quoting *Hibernia National Bank v. Carner*, 997 F.2d 94, 101 (5th Cir. 1993)). Although the pleadings of *pro se* litigants are interpreted liberally, Plaintiff's Amended Complaint was filed by his attorneys and was explicit in naming Secretary LeBlanc in only his official capacity. (R. Doc. 8 at 2). The Court declines to interpret the additional factual allegations relative to this Defendant contained in Plaintiff's Rule 7(a) Reply (*see* R. Doc. 56 at 18-19) as further amending the Amended Complaint to name Secretary LeBlanc in his individual capacity. Even if the court considered the allegations in Plaintiff's Rule 7(a) Reply in this regard, the court would conclude that Secretary LeBlanc is entitled to qualified immunity. Plaintiff has failed to allege that Secretary LeBlanc has had any personal involvement in determining that Plaintiff should remain in extended lockdown. Plaintiff merely alleges that Secretary LeBlanc exercises supervisory authority of the prisons in Louisiana, worked closely with Defendant Cain, and created the policy allowing for the Lockdown Review Board to make 90-day classification reviews regarding whether to keep an inmate in extended lockdown. Secretary LeBlanc is not tasked with the decisions of the Lockdown Review Board, nor is he present on a regular or daily basis at the LSP. Secretary LeBlanc has submitted an uncontroverted affidavit stating that he has never spoken with the Plaintiff, had no knowledge of the Plaintiff prior to this lawsuit, and has never been involved in or reviewed any Lockdown Review Board Decision affecting the Plaintiff. (R. Doc. 57-3 at 2). Accordingly, had Plaintiff not "amended away" his claim against Secretary LeBlanc in his individual capacity, the court would dismiss those claims on the basis of qualified immunity. *See Wilkerson v. Stalder*, 639 F. Supp. 2d 654, 675 (M.D. La. 2007) (dismissing claims against former Secretary Richard Stalder on the basis that "Stalder was not alleged to have any knowledge of the plaintiffs' records or any involvement in the decision making process which kept the plaintiffs in CCR for 30 years, unlike [the other] defendants . . . .").

## 2.    Assistant Warden Cathy Fontenot

Plaintiff alleges that Warden Fontenot "is an assistant warden in charge of classification and programs" at LSP and has sued her in her official and individual capacities.  (R. Doc. 8 at 2). Plaintiff alleges that "at some time during the past 35 years" Warden Fontenot "reviewed and extended [his] extended lockdown" and "influenced or participated in the decisions of the Lockdown Review Board to refuse to release [Plaintiff] from extended lockdown.  (R. Doc. 8 at 7-8).  Plaintiff alleges that despite knowing of his "35 year confinement in extended lockdown" Warden Fontenot has "failed to take any action to facilitate his release from extended lockdown or to secure him a fair hearing on whether he poses a danger in the general prison population." (R. Doc. 8 at 8).  Finally, Plaintiff alleges that Warden Fontenot is penalizing him "because of his perceived political affiliation and political beliefs."  (R. Doc. 8 at 10).

In his Rule 7(a) Reply, Plaintiff provided the following additional factual allegations regarding Warden Fontenot:

> Warden Fontenot has been the assistant warden at LSP for 19 years. At various times during Mr. Whitmore's confinement to solitary she has been in charge of classification and participated in Lockdown Review Board decisions keeping Mr. Whitmore in solitary confinement. *See* Exhibit B. [R. Doc. 56-2] In reviewing his classification, Warden Fontenot did not speak to Mr. Whitmore or provide any actual review of his classification. She failed to interview Mr. Whitmore, talk with the Wardens of Camps J or C about his behavior, review his disciplinary record, or assess whether he is suitable for the general population. She instead relied on Warden Cain's instruction that Mr. Whitmore remain in solitary until he renounces his political beliefs.

> Warden Fontenot knows that the Lockdown Review Board does not provide Mr. Whitmore with a hearing or a substantive review of his classification. She validates and participates in the sham proceedings described above and implements Warden Cain's instruction that Mr. Whitmore will remain in solitary until he renounces his political beliefs and/or association with members of the Black Panther Party. On information and belief if a classification officer was to recommend to Warden Fontenot that Mr. Whitmore be released from solitary, she would deny the request.

Warden Fontenot knows that Mr. Whitmore has been in solitary confinement for over 35 years. She has rejected Mr. Whitmore's request for a group visit with his nephew, also an inmate at LSP, because of this classification. She acts with deliberate indifference in failing to release Mr. Whitmore from solitary or provide him with a constitutionally sound review of his classification.

In reviewing Mr. Whitmore's Lockdown Review Board summaries, Warden Fontenot was made aware that one purported reason for keeping Mr. Whitmore in solitary was as punishment for a rule infraction in 1986, his non-violent escape. Warden Fontenot knows that no other inmate has been punished in such a manner, but has failed to re-classify Mr. Whitmore as a general population inmate or provide him with proper review of his classification.

(R. Doc. 56 at 11-13).

Plaintiff has established that there are genuine issues of material fact regarding the alleged causal connection between Warden Fontenot's actions and his confinement. Significantly, Plaintiff has submitted evidence that Warden Fontenot had access to, and possibly reviewed, a Lockdown Review Summary concerning Plaintiff dated November 6, 2013. (R. Doc. 56-2). Although Warden Fontentot has submitted an affidavit in which she states that she has "never approved or denied, or been in a position to approve or deny, Whitmore's reassignment to or from CCR" (R. Doc. 57-4 at 3), there remains, in light of Plaintiff's assertions and evidence, a genuine issue of material fact regarding whether she was involved in any decisions to keep Plaintiff in extended lockdown within one year of the filing of the lawsuit.

Accordingly, Defendants' motion to dismiss Warden Fontenot on the basis of qualified immunity should be denied.

### 3. Assistant Warden Richard Peabody

Plaintiff alleges that Warden Peabody is a "deputy warden in charge of security" at LSP and has sued him in his official and individual capacities. (R. Doc. 8 at 2). Plaintiff alleges that Warden Peabody has "influenced or participated in the decisions of the Lockdown Review Board to refuse to release [Plaintiff] from extended lockdown. (R. Doc. 8 at 7-8). Plaintiff alleges that

despite knowing of his "35 year confinement in extended lockdown" Warden Peabody has "failed to take any action to facilitate his release from extended lockdown or to secure him a fair hearing on whether he poses a danger in the general prison population." (R. Doc. 8 at 8).

In his Rule 7(a) Reply, Plaintiff provided the following additional factual allegations regarding Warden Peabody:

> Warden Richard Peabody is a deputy warden at Angola and has worked at the prison for 37 years. At various times during Mr. Whitmore's 35 years in solitary, Warden Peabody has been in charge of security and classification and influenced and participated in Lockdown Review Board decisions keeping Mr. Whitmore in solitary. In reviewing his classification, Warden Peabody did not speak to Mr. Whitmore or provide any actual review of his classification. He failed to interview Mr. Whitmore, talk with the Wardens of Camps J or C about his behavior, review his disciplinary record, or assess whether he is suitable for the general population. Warden Peabody, having worked closely with Warden Cain since Cain started at LSP, instead relied on Warden Cain's command that Mr. Whitmore remain in solitary until he renounces his political beliefs.

> Sometime between 2009 and 2012, Mr. Whitmore had a conversation with Warden Peabody about the conditions and restrictions on the solitary tier. Mr. Whitmore requested more contact visits for the inmates in solitary; Warden Peabody said they could not have them. Mr. Whitmore then requested to be released from solitary and reclassified into the general population. Warden Peabody responded that solitary was where Mr. Whitmore belonged.

> Warden Peabody knows that the Lockdown Review Board does not provide Mr. Whitmore with a hearing or a substantive review of his classification. He validates and participates in the sham proceedings described above and implements Warden Cain's stated position that Mr. Whitmore will remain in solitary until he renounces his political beliefs and/or association with members of the Black Panther Party. On information and belief if a classification officer was to recommend to Warden Peabody that Mr. Whitmore be released from solitary, he would deny the request.

> Warden Peabody knows that Mr. Whitmore has been in solitary for over 35 years, since the day Whitmore arrived at LSP. Warden Peabody acts with deliberate indifference by failing to release Mr. Whitmore from solitary, refusing to give him a constitutionally sound review of his classification, and keeping him there on the basis of his political beliefs and association with members of the Black Panther Party.

> In reviewing Mr. Whitmore's Lockdown Review Board summaries, Warden Peabody was made aware that one purported reason for keeping Mr. Whitmore in solitary was as punishment for a rule infraction in 1986, his non violent escape. Warden Peabody knows that no other inmate has been punished in such a manner, but has failed to re-classify Mr. Whitmore as a general population inmate or provide him with proper review of his classification.

(R. Doc. 56 at 14-16).

Plaintiff has not established any genuine issues of material fact regarding the alleged causal connection between Warden Peabody's actions and his confinement. Plaintiff focuses on the alleged conversation between himself and Warden Peabody sometime between 2009 and 2012, but even if that conversation occurred it has no direct bearing on a Lockdown Review Board decision and occurred more than one year prior to filing of this lawsuit. Similarly, Plaintiff's emphasis on the position held by Warden Peabody prior to 2003 concerning security and classification is misplaced, as Plaintiff's claims during that time period are prescribed. Further, Warden Peabody has submitted an uncontroverted affidavit providing that in his position as Warden of Programs and Operations since 2003, he has no duties with regard to the classifications or housing of inmates, he has never participated in any of the Lockdown Review Boards concerning Plaintiff, he has not assigned or reassigned inmates to or from CCR, and he has "never approved or denied, or been in a position to approve or deny, Whitmore's assignment to or from CCR." (R. Doc. 57-5 at 1-2). Plaintiff has not submitted any evidence demonstrating that Warden Peabody had access to, and possibly reviewed, a Lockdown Review Summary concerning Plaintiff. (R. Doc. 56-2).

Accordingly, Defendants' motion to dismiss Warden Peabody, in his individual capacity, on the basis of qualified immunity should be granted.

### III. Recommendation

**IT IS RECOMMENDED** that Defendant's Motion for Partial Summary Judgment (R. Doc. 57) be **GRANTED in part and DENIED in part.**

**IT IS FURTHER RECOMMENDED** that the court find that Plaintiff's claims prior to January 2, 2013 are prescribed and should be dismissed with prejudice.

**IT IS FURTHER RECOMMENDED** that the court find that Plaintiff's claims against defendant Richard Stalder are prescribed and should be dismissed with prejudice.

**IT IS FURTHER RECOMMENDED** that the motion be denied as to Plaintiff's claims against Defendant Cathy Fontenot in her individual and official capacity and against Defendant James M. LeBlanc in his official capacity.[11]

**IT IS FURTHER RECOMMENDED** that the court find that Plaintiff's claims against defendant Richard Peabody, in his individual capacity, should be dismissed with prejudice on the basis of qualified immunity, reserving Plaintiff's rights against this Defendant in his official capacity.[12]

Signed in Baton Rouge, Louisiana, on May 22, 2015.

_____
**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**

---

[11] The Court makes no finding regarding the propriety of the claims for prospective relief against any Defendants in their official capacities.
[12] See Footnote 11.