UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| KENNY WHITMORE (#86468) | * | CIVIL ACTION NO.: 4-0004-JJB-RLB |
| | * | |
| VERSUS | * | JUDGE JOHN W. DEGRAVELLES |
| | * | |
| N. BURL CAIN, WARDEN, ET AL. | * | MAGISTRATE JUDGE RICHARD L. |
| | * | BOURGEOIS, JR. |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * * *

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S OBJECTIONS TO
MAGISTRATE'S MAY 22, 2015 REPORT AND RECOMMENDATIONS**

Plaintiff, Mr. Kenneth Whitmore, was twenty-three years old when he was placed in a solitary confinement cell at the Louisiana State Penitentiary ("LSP" or the "Prison"), in March 1978. He spent 7 years in that cell, incurring only one disciplinary infraction of a violent nature, for fighting with another inmate, during that time and was released into the general population 6 months before his thirty-first birthday. After a non-violent escape attempt, carried out by hopping a fence, Mr. Whitmore was placed back into solitary just a few months before his thirty second birthday. He has been in solitary confinement ever since, turning sixty years old in his 9 foot by 6 foot cell last October.

Over the past 35 years, the Lockdown Review Classification Board ("LDRB" or "Board"), the Prison, and its Wardens have kept Mr. Whitmore in solitary without penological justification, substantive review, or explanation. Mr. Whitmore's unremarkable disciplinary record, approximately 40 violations in his 35 years with the two most egregious, the fighting charge and the escape attempt, having occurred more than 30 years ago, demonstrates that Defendants have no legitimate penological justification for keeping Mr. Whitmore in solitary.

After numerous attempts to learn the reasons for his lengthy and continued confinement in solitary, Mr. Whitmore eventually learned that Warden N. Burl Cain, warden at the Prison since 1995, has refused to even consider letting Mr. Whitmore out of solitary confinement unless he changes his political beliefs and association with the Black Panther Party ("BPP").

Whether through direct "review" of his classification, influence over those on the Board, support of Cain's policy on Mr. Whitmore's political beliefs, or through extreme and deliberate indifference to Mr. Whitmore's lengthy stay in solitary and associated deterioration in his mental and physical health, each Defendant has causally contributed to Mr. Whitmore's injuries and violation of his constitutional rights.

## PROCEDURAL BACKGROUND

On January 30, 2015, all Defendants moved for partial summary judgment, arguing all of Plaintiff's claims before January 2, 2013, had prescribed under Louisiana's one-year prescriptive period for tort claims. As well, Defendants James LeBlanc, Cathy Fontenot, and Richard Peabody moved for summary judgment of all remaining claims against them, including those within the prescriptive period, arguing they were entitled to qualified immunity.

The Magistrate accepted defendants' arguments on prescription and recommended that Plaintiff's claims be "limited to events occurring during the one year period preceding the filing of the Complaint in this case." Report, p. 12. The Report also recommended that all claims against Richard Peabody be dismissed with prejudice, accepting his defense of qualified immunity.

Mr. Whitmore objects to the Report on the following grounds:

1.) Because Plaintiff filed an Administrative Remedy Procedure ("ARP") on July 19, 2013, claims arising between July 19, 2012 and January 3, 2013 are *not* prescribed. The Report improperly held that all claims prior to January 3, 2013 were prescribed.

2.) Under federal law, the question of when Mr. Whitmore's claims accrued—the question of when he knew of his injury and who caused it—presents a question of fact, not subject to determination by summary judgment at this early stage in the discovery process, which has been stayed for the past seven months.

3.) Warden Cain's policy of keeping Mr. Whitmore in solitary confinement until he reforms his political beliefs is part of an organized scheme including Mr. Whitmore's present confinement to solitary and the cumulative effect of this scheme – that Mr. Whitmore will not be released unless he changes his political beliefs – is the injury to his First Amendment rights. This is the definition of a continuing violation and the Report failed to acknowledge application of the doctrine to Mr. Whitmore's First Amendment claim. None of Mr. Whitmore's allegations regarding Cain's violation of his First Amendment rights are time-barred.

4.) Warden Peabody is not entitled to qualified immunity for two reasons: first, his conversation with Mr. Whitmore in 2012 was an affirmative display of deliberate indifference to Mr. Whitmore's lengthy confinement in solitary in its effects on the conditions of his confinement and his health. Because Mr. Whitmore's filing of the ARP tolled the prescriptive period back to July 2012, Warden Peabody's affirmative act of deliberate indifference could have occurred within the prescriptive period. Second, the Report is contrary to precedent in this court holding that allegations that Warden Peabody's influenced LDRB decisions keeping inmates in solitary are sufficient to state a

section 1983 claim against him. Warden Peabody has not contested that he has influence over the decisions of the LDRB or its members.

## FACTUAL BACKGROUND

### I.    THIRTY FIVE YEARS IN SOLITARY CONFINEMENT.

#### A.  Twelve Square Feet of Living Space for 23 hours Every Day

Mr. Whitmore has spent over 35 years, 12,963 days as of the filing of this brief, in solitary confinement. His cell is approximately 9 feet from the back concrete wall to the front, barred door, with 6 feet of space between side walls. The metal bunk beds on one wall project approximately 3 feet into the cell, and the toilet sink combination takes up a few square feet. Exhibit A (drawing of solitary cell), March 2015 Affidavit of Kenneth Whitmore ("Whitmore Aff.") Rec. Doc. 62-2, ¶30. All of this effectively leaves Mr. Whitmore 4 x3 feet of space to in which to move around for 23 hours each day. Mr. Whitmore's drawing of his cell, depicting the cramped quarters is below:

One hour a day, Mr. Whitmore may shower or walk the tier in shackles alone. He must also use this time for any phone calls he needs to make, both legal and personal. During this one hour, three times a week and weather permitting, Mr. Whitmore may elect to be placed in full restraints—including a waist chain and leg irons—and escorted to a fenced exercise yard where he may exercise alone. *Wilkerson v. Stalder*, Civ. A. No. 00-307, 2013 WL 6665452, *2, n. 5 (M.D. La. Dec. 17, 2013); Whitmore Aff., ¶36.

The exercise pen in Camp D, where Mr. Whitmore has spent a majority of his years in solitary, is a concrete slab approximately 12 feet wide and 15 feet long, completely encased in chain link fencing on all sides and above. Whitmore Aff., ¶31.

Mr. Whitmore was transferred from Camp D to Death Row in February of this year. While the exercise yard at Death Row is larger than the 12 by 15 foot pen in which he exercised in Camp C, it is still encased on all sides and the top by chain link fencing and measures approximately 35 by 25 feet. June 2015 Affidavit of Kenneth Whitmore ("June Aff.") ¶¶9-10. Mr. Whitmore has not touched grass for at least five years. Whitmore Aff., ¶32; June Aff. ¶11.

### B. Indefinite Deprivation of Human Contact and Mental Stimulus

Severe restrictions are placed on Mr. Whitmore's possession of personal property, including the number of books and type of reading material allowed, as well as his work and visitation rights. *Wilkerson*, 2013 WL 6665452 at *2, n. 5. His access to legal counsel and materials is also substantially more restricted than in the general prison population. *Id.* By contrast, inmates in the general prison population work and socialize with other inmates. They live in dormitories, and have educational, training, and recreational opportunities all of which are denied to Mr. Whitmore because he is housed in CCR. *Id.*

### II.    PLAINTIFF KENNETH WHITMORE

Mr. Whitmore is not a disciplinary problem or a threat to the general population. Moreover, Defendants have not submitted, and cannot submit, any evidence to the contrary.

### A. Mr. Whitmore's Limited and Non-Violent Disciplinary Record

Mr. Whitmore's disciplinary record is short and mostly consists of low-level infractions such as radio and TV abuse and possession of items classified as contraband such as extra toilet paper. *See* Exhibit B to Plaintiff's Opposition to Partial Motion for Summary Judgment ("Opposition to MSJ") (Rec. Doc. 62-1), Whitmore Conduct Report Summary, pp. 2-4 (Rec. Doc. 62-4). During his entire 35 years at the Prison, Mr. Whitmore has had only one infraction arguably related to violence, for fighting in 1982. *Id.*

**B.  Mr. Whitmore's Non-Violent Escape Attempt 30 years ago**

Mr. Whitmore did attempt to escape the Prison on July 5, 1986. Assigned to solitary since his first day, March 21, 1978 (Rec. Doc. 56-4 Initial Report of Lockdown), Mr. Whitmore had spent just over 7 years in solitary when he was accidentally reclassified into the general population on March 28, 1985. (Rec. Doc. 62-6, p. 177, March 28, 1985 Lockdown Review Summary); Whitmore Aff. ¶4.

On July 5, 1986, while working in the fields, Mr. Whitmore hopped a fence with another inmate, Alberto Sosa. Whitmore Aff. ¶5. He was captured within 12 hours and returned to the Prison without incident. Whitmore Aff. ¶6. No one was harmed during his escape attempt and it did not involve weapons or threats. *Id.*

When Mr. Whitmore was captured and returned, he was immediately placed in Camp J and back into solitary confinement and he has remained in solitary ever since. Whitmore Aff. ¶7. Alberto Sosa was also placed in Camp J and solitary confinement upon his return to the Prison. Mr. Sosa remained in solitary confinement for only 9 months and was then moved into the general population. Whitmore Aff. ¶9.

**C.  White Inmates Who Escaped Were Released in a Short Time from Solitary, or Never Sent There**

At least four other white inmates attempted to escape the same week Mr. Whitmore did in 1986. They also served only 9 months in extended lockdown or closed-cell restriction before they were reclassified into the general population. Whitmore Aff. ¶10. Donald Wooley, also a white inmate, kidnapped a prison worker during his escape in 1999 and was placed in solitary confinement upon return. He was recently reclassified into the general population. Whitmore Aff. ¶11.

### D. Mr. Whitmore Files His ARP and Suit to Protect His Beliefs and Challenge His Unconstitutional Confinement

Mr. Whitmore first challenged his unconstitutional confinement to solitary through the Administrative Review Process on July 19, 2013. Rec. Doc. 62-7. In response to his Administrative Remedy Procedure ("ARP") against Wardens Cain and Vannoy for violation of his Eighth and Fourteenth Amendment rights and requested release from CCR, the Warden's office responded that "Lockdown Review Board decisions may not be challenged." Rec. Doc. 62-7, p. 1; Whitmore Aff. ¶21.

## III.   THE LOCKDOWN REVIEW BOARD

### A. DOC Policy Requires 90 Day Reviews, But Fails to Provide Criteria or Countenance an Inmate's Length of Stay in Solitary

The Department of Corrections, through the Secretary, requires each prison to have an initial classification and reclassification board. LA. ADMIN. CODE tit. 22, Part 1, §311(D) (2005). If an inmate is assigned to extended lockdown (solitary), the policy created by the Secretary requires an inmate to receive a review for "possible release to a less restricted status" every 90 days. *Id.* §347(F).

The Secretary's policy for reviewing an inmate's assignment to extended lockdown/solitary does not establish any criteria by which an inmate can be reclassified into the general population. It does not require the Board to create or distribute the criteria that guides their decisions and it does not require the Board to take the length of solitary confinement in to consideration when completing the 90 day reviews. *See* Exhibit C, (Department of Corrections Disciplinary Rules and Procedures for Adult Offenders, codified at LA. ADMIN. CODE tit. 22, Part 1, §§341-365).

Decisions of the Board are not reviewable by appeal to any other authority. LA. ADMIN. CODE tit. §325(C)(4). Pursuant to policies of the Secretary, all Board decisions are final. *Id.* The

only other decisions not appealable through the process are decisions of the court, the pardon and parole board, and the Louisiana Risk Assessment Panel. *Id.* §§ 325(C)(1)-(3).

### B. Mr. Whitmore Has Never Received a Substantive Review or Been Told What is Required of Him to be Placed in the General Population

Mr. Whitmore has been given a Board summary (the form on which they write their review) approximately every 90 days throughout his 35 years in solitary confinement. Rec. Doc. 62-6, Exhibit D to Plaintiff's Opposition to MSJ. Every time except for one the Board has kept him assigned to solitary. *Id.*, p.206.

Mr. Whitmore has never attended a meeting of the Board, nor has he ever been told what criteria or behavior will get him reclassified into the general population. Whitmore Aff., ¶¶18-19. The one time he was reclassified, it was by mistake and other prison officials wanted him back in solitary. Whitmore Aff., ¶4.

Mr. Whitmore receives the Board summary at the end of his cell block, through iron-barred door at the end of the tier. Whitmore Aff., ¶14. Each time he has received a summary, the Board's decision is already filled out. *Id.* Mr. Whitmore has asked the Board handing him the pre-determined assignment why he is not being reclassified into the general population, but the Board has never given him any reason for his continued confinement to solitary. Whitmore Aff., ¶15. Instead, the Board members continually carry out the standard procedure of checking the "not released" box because they are instructed by Warden Cain that Mr. Whitmore is not to be released from solitary without his permission. *See* Whitmore Aff. ¶¶15-16.

Board members have on occasion, and in response to Mr. Whitmore's request for the reasons behind his indefinite stay in solitary, told him that they cannot be the ones to let him go and that he will have to write to Warden Cain. *Id.*

### C. Each Board Summary is Part of a Pattern Keeping Mr. Whitmore in Solitary

The Board summaries form a clear, fixed, and continuing pattern and practice of keeping Mr. Whitmore in solitary confinement without substantive review, without even an attempt to give different reasons for his classification, and as part of Warden Cain's policy that Mr. Whitmore remain in solitary until he changes his political beliefs. *See e.g.*, Lockdown Review Summaries from October 10, 1991 through January 11, 2005, Rec. Doc. 62-6, pp. 96-156 (these 59 forms are almost identical except for the officer signatures at the bottom, checking in each instance the same four boxes: "disciplinary board action," "rule violation report," "not released," "nature of original reason for lockdown.").

This fixed and continuing practice of maintaining the same sham reasons violates even LSP's own policies. *See* Exhibit A, January 12, 2015 Lockdown Review Board Summary stating "nature of original reason for lockdown" as the reason he was not released and May 2015 Lockdown Review Board Summary stating it was because he is an "escape risk.").

Mr. Whitmore has written letters about the length of his confinement and requested to be moved numerous times. Whitmore Aff. ¶¶20-22. His letters to Wardens Vannoy, Cain, and Lamartiniere have not received responses. Whitmore Aff. ¶20. Mr. Whitmore has also asked numerous Wardens to help him get out of solitary confinement: Vannoy, Lamartiniere, Peabody, Smith, Dupont, and Poret. He has consistently been told that "they" or "the Warden" won't let that happen. Whitmore Aff. ¶22.

Even after filing his ARP and the instant lawsuit, Mr. Whitmore has not received any explanation for his continued confinement in solitary or any criteria by which he could be reclassified into the general population. As well, the Board continues to check the same obscure boxes as the reasons for his continued confinement and the Board's action on his review:

instance the same boxes: "nature of original reason for lockdown" and/or "escape risk." Exhibit A.

### IV.    WARDEN CAIN'S PATTERN OF IMPROPERLY KEEPING MR. WHITMORE IN SOLITARY FOR HIS POLITICAL BELIEFS

Mr. Whitmore has been a member of the Black Panther Party since the beginning of his time at Angola. Whitmore Aff. ¶33. Warden Cain has stated to media outlets that he believes the Black Panther Party "advocates violence and racism." Blake Bakkila, Annabel Edwards, Edward Ferguson, & Alexa Santos, *Warden Considers Ending Angola Inmate's Solitary Confinement After 28 Straight Years,* THE ADVOCATE (July 29, 2014) http://theadvocate.com/home/9807246-125/warden-considers-ending-angola-inmates. The Warden also indicated that he was concerned Mr. Whitmore would spread his political beliefs to other inmates in the prison. *Id.* The Angola Chapter of the Black Panther Party has been defunct since the late 1990s. Whitmore Aff. ¶35.

Warden Cain has made it clear to his supervising Wardens, like Vannoy and Peabody, that Mr. Whitmore is not to be released from solitary until he changes his political beliefs and stops associating with other former BPP members. *See* Whitmore Aff. ¶37.

Warden Cain has never told Mr. Whitmore directly that he is being held in solitary confinement because of his political beliefs and affiliation with the Black Panther Party. As well, Warden Cain recently evaded questions from the media regarding his reasons for continuing to keep Mr. Whitmore in solitary after 35 total and 28 consecutive years there. *See Angola Inmate Argues That Three Decades in Solitary is Unconstitutional Punishment*, THE ADVOCATE (May 11, 2015) http://theadvocate.com/news/12056320-123/angola-inmate-argues-that-three (Cain told LSU Manship School of Journalism students only that "Kenny is stuck in the past, and he won't change. I would let him out if he's changing." Adding that the Prison has monitored Mr.

Whitmore's phone calls and Warden Cain believes he has not made the "right changes" to be released from solitary.).

When asked by journalists in July 2014 about the extreme duration of Mr. Whitmore's confinement in solitary, Warden Cain said he would get Mr. Whitmore out and that he would personally talk to Mr. Whitmore to assess whether he is a threat to the general population. http://www.medilljusticeproject.org/2014/07/19/louisiana-warden-considers-end-to-inmates-solitary-confinement-after-more-than-three-decades/.

Almost a year has passed and Warden Cain has yet to talk with Mr. Whitmore, but Mr. Whitmore remains in solitary.

## V.    PLAINTIFF'S ALLEGATIONS AND CLAIMS

Mr. Whitmore first challenged his unconstitutional confinement in solitary through the Administrative Review Process on July 19, 2013. Rec. Doc. 62-7. In response to his Administrative Remedy Procedure ("ARP") against Wardens Cain and Vannoy for violation of his Eighth and Fourteenth Amendment rights and requested release from CCR, the Warden's office responded that "Lockdown Review Board decisions may not be challenged." (Rec. Doc. 62-7, p. 1); Whitmore Aff. ¶21.

### A.  Plaintiff Alleges Four Constitutional Violations

Mr. Whitmore filed his complaint in this Court on January 2, 2014, alleging in his Amended Complaint four violations of his constitutional rights: 1) violation of his Eighth Amendment right to be free from cruel and unusual punishment, specifically to be free from 35 years in solitary confinement and the accompanying mental and physical health problems; 2) violation of his Fourteenth Amendment right to due process, specifically to have a substantive review of his classification and not mere rote approval of his continued confinement; 3) violation

of his First Amendment rights to freedom of speech and association and his corollary Fourteenth Amendment right to freedom of association, specifically to be free from punishment and confinement to solitary because of his membership and belief in the former Black Panther Party; and 4) violation of his Fourteenth Amendment right to equal protection, specifically to be treated, even in the context of punishments for infractions, in similar manner and fashion to white prisoners. *See* First Amended Complaint, Rec. Doc. 8, ¶¶51-58. Mr. Whitmore also alleged each claim under its correspondent Louisiana state constitutional provision. *Id.*

## VI.   DISTRICT COURT REVIEWS MAGISTRATE RECOMMENDATIONS *DE NOVO*

When objections are timely made, the District Court reviews *de novo* the objected-to parts of the magistrate's report, findings, or recommendations. 28 U.S.C. § 636(b)(1); *North American Specialty Ins. Co. v. Georgia Gulf Corp.*, pp F.Supp 2d. 726, 727 (M.D.La. Apr. 18, 2000).

## VII.   SUMMARY JUDGMENT.

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). The party seeking summary judgment carries the burden of demonstrating that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986); *Wilkerson v. Stalder*, No. CIV.A. 00-304-JJB, 2013 WL 6665452, at *4 (M.D. La. Dec. 17, 2013) (*Wilkerson I*) aff'd sub nom. *Wilkerson v. Goodwin*, 774 F.3d 845 (5th Cir. 2014).

The nonmoving party may "support its summary judgment position by 'citing to particular parts of materials in the record' or 'showing that the materials cited do not establish the absence or presence of a genuine dispute.'" *Wilkerson I*, 2013 WL 6665452, at *4 (quoting Fed. R. Civ. P. 56(c)(1)).

The Court begins its determination on summary judgment by consulting the applicable substantive law to determine what facts and issues are material. *Huckabay v. Moore*, 142 F.3d 233, 238 (5th Cir. 1998). The Court is to view the "facts and inferences in the light most favorable to the non-movant, If the non-movant sets forth specific facts in support of allegations essential to his claim, a genuine issue is presented." *Id.*

## VIII.   MR. WHITMORE'S FILING OF HIS JULY 19, 2013 ADMINISTRATIVE REMEDY PROCEDURE TOLLED THE PRESCRIPTIVE PERIOD

The filing of an administrative remedy procedure tolls the prescriptive period for federal 28 U.S.C. §1983 claims. *See Harris v. Hegmann*, 198 F.3d 153, 158-159 (5th Cir. 1999); *Anderson v. Wilkerson*, 299 Fed. App'x. 458 (5th Cir. 2008).

Defendants do not and cannot contest that Mr. Whitmore filed an ARP challenging his solitary confinement on July 19, 2013. While they will likely argue that Mr. Whitmore was not *required* to file this ARP and it therefore did not toll the prescriptive period, such an argument would be disingenuous and without merit because Defendants have alleged failure to exhaust administrative remedies as an affirmative defense. Rec. Doc. 20, p. 1.

Moreover, while decisions of the Lockdown Review Board are not reviewable pursuant to the Louisiana Administrative Code, Plaintiff's ARP was filed specifically against Wardens Cain and Vannoy for their failure to remove him from the 'torturous conditions" of solitary which he had endured for nearly three decades. Rec. Doc. 56-1. Arguably, Mr. Whitmore had a duty to administratively exhaust his claims against the wardens for Eighth and Fourteenth Amendment violations that were not directly tied to the Review Board's decisions.

## IX.   A SECTION 1983 CLAIM ARISES WHEN PLAINTIFF KNOWS OF HIS INJURY AND KNOWS WHO CAUSED IT

It is well settled that Louisiana's one-year prescriptive period for delictual actions applies to claims brought under 28 U.S.C. §1983. *Lewis v. Ascension Parish School Bd.*, 662 F.3d 343,

13

347 (5th Cir. 2011). Equally well settled is that federal law "governs when a cause of action arises." *Brosette v. City of Baton Rouge*, 837 F.Supp. 759, 762 (M.D.La. 1993).

Under federal law, a plaintiff's claim accrues when he "knows or has reason to know of the injury which is the basis of the action." *Lavellee v. Listi*, 611 F.2d 1129, 1131 (5th Cir. 1980). "Knows or has reason to know of the injury" does not simply mean the "moment of the injury," but rather means that "[u]ntil the plaintiff is in possession of the 'critical facts that he has been hurt and who has inflicted the injury,' the statute of limitations does not commence to run." 611 F.2d at 1131 (quoting *U.S. v. Kubrick*, 444 U.S. 111, 122 (1979)).

While the standard (know you've been hurt and who hurt you) is "simple to state," courts recognize it "can be exceedingly difficult to apply to concrete fact situations." *Id.* (noting that the court could "perceive at least four possible times at which a cause of action for medical malpractice could accrue.").

### A.  When Plaintiff's Claims Accrued Presents Questions of Fact for the Jury, or at the Least for Further Discovery

The determination of when plaintiff had knowledge of "both the injury and its connection with the act of a specific defendant" is a question of fact. *Santiago Hodge v. Parke Davis & Co.*, 909 F.2d 628, 633 (1st Cir. 1990) (citing *Lavellee v. Listi,* 611 F.2d 1129, 1131–32 (5th Cir.1980)). "As such, it [is] for the jury to determine when [plaintiff can] be charged with having sufficient knowledge to trigger the [prescriptive period]." *Id.*

The Report notes generally that while it need not decide precisely when Mr. Whitmore knew he had been hurt and who had inflicted the injury, at some point he certainly knew "of his continued confinement, of the reasons therefore, of his alleged deteriorating health." The Court then concluded that Mr. Whitmore had this knowledge more than one year prior to filing of the Complaint. Rec. Doc. 70, p. 13.

14

First, Plaintiff has alleged over and again that he has not been given any reason or straight answer as to why he has been in solitary confinement for such a long period of time. He has alleged uncontroverted facts that the Board members never explain why he is being kept in solitary and usually just refer him to the Warden. Rec. Doc. 62-2 ¶¶15-19. As well, he has alleged that when he writes to Warden Cain or Vannoy to ask why he is being held in solitary, he is never given a response. Rec. Doc. 62-2 ¶20. It is not therefore clear that Mr. Whitmore is aware of the reasons for his "continuing confinement."

All of this guess work and attempts to connect specific Defendants to specific claims or injuries, only underlies the fact that more discovery is needed to determine whether Plaintiff's claims are prescribed. Defendants have benefited from seeking summary judgment based on prescription at this early stage in the litigation. Their repeated assertions of qualified immunity and request for a Rule 7(A) Reply effectively stayed all discovery in the case for the past 7-8 months. Plaintiff, therefore, has been unable to discovery any facts related to Defendants allegations that all of his claims are prescribed.

If Plaintiff had the benefit of written discovery, for example, interrogatories could shed light on who is responsible for making the decision to keep Mr. Whitmore in solitary, who signs the Board summaries, and which Wardens participate in Warden Cain's continued policy and pattern of refusing to release him unless he renounces his political beliefs.

**B. When Plaintiff's Claims Accrued Present Questions of Fact for the Jury, or at Least for Further Discovery**

Knowing that you've been hurt, and more particularly who hurt you, is arguably much more difficult in the context of prison. For example, when did Mr. Whitmore possess the critical fact that his over 35 years in solitary confinement caused him physical and mental injury and who caused these injuries? The Report concludes without analysis that Mr. Whitmore had to

have known "more than one year" before filing suit, yet Defendants made no arguments and submitted no evidence to this effect. Rec. Doc. 70, p. 12. The Report also summarily concludes, on the basis of no cited evidence, that Mr. Whitmore knew "of the participation by individual board members in determining to maintain him in segregation." *Id.* But Mr. Whitmore's attached exhibits make clear that the signatures at the bottom of the Board summaries are often illegible and that Mr. Whitmore does not get to attend the meetings of the Board and the paper is simply brought to him on the tier. *See* Rec. Docs. 8-1, 56, p. 10-11, 62-6, pp. 2-207; Whitmore Aff. ¶¶14, 18. Moreover, the issue of Mr. Whitmore's physical and mental health will be the subject of expert testimony at trial.

Under these circumstances it is not clear that Mr. Whitmore possessed the "critical facts that he ha[d] been hurt and who ha[d] inflicted the injury." *Lavellee*, 611 F.2d at 1131. The current record is not the proper one on which to determine the prescription and dismissal of Mr. Whitmore's claims with prejudice.

In addition, it seems clear that Mr. Whitmore "cannot present facts essential to justify its opposition" because he has not had the opportunity to make full discovery. In these circumstances, the court may: (1) defer considering the motion or deny it;(2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Fed. R. Civ. P. 56(d); *Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986).

Mr. Whitmore encourages the Court to allow him time to take discovery.

## X.      WARDEN PEABODY IS NOT ENTITLED TO QUALIFIED IMMUNITY

### A.  Qualified Immunity

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or

constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, (1982). The "strong public interest in protecting public officials from the costs associated with the defense of damages actions" is "best served by a defense that permits insubstantial lawsuits to be quickly terminated." *Crawford-El v. Britton*, 523 U.S. 574, 590 (1998). There is no unfairness attributable to "holding one accountable for actions that he or she knew, or should have known, violated the constitutional rights of the plaintiff." *Id.* at 591.

### B.  Qualified Immunity on Motions for Summary Judgment

A nonmoving party can defeat a motion for summary judgment by citing to the record or by "'showing that the materials [defendants] cited do not establish the absence or presence of a genuine dispute.'" *Wilkerson v. Stalder* (*Wilkerson I*), No. Civ .A. 00-304, 2013 WL 6665452, at *4 (M.D. La. Dec. 17, 2013) (quoting Fed. R. Civ. P.  56(c)(1)) *aff'd sub nom. Wilkerson v. Goodwin*, 774 F.3d 845 (5th Cir. 2014).

Motions for summary judgment based on qualified immunity should be denied if the reasonableness of a defendant's conduct "mandates a number of factual inferences." *Cox v. Columbia Cas. Co.*, No. Civ. A. 12-306-SDD, 2014 WL 29456, at *10 (M.D. La. Jan. 3, 2014). Such qualified immunity motions should likewise fail where there is a factual dispute as to whether the defendant's conduct was reasonable. *Kelly v. LaForce*, 288 F.3d 1, 7 (1st Cir. 2002); *Victoria W. v. Larpenter*, No. Civ. A. 00-1960, 2001 WL 263080, at *3 (E.D. La. Mar. 15, 2001); *see also McKinney v. City of Southaven,* No. Civ. A. 9-46, 2010 WL 1380391, at *1 (N.D. Miss. Mar. 31, 2010).

### C. Warden Peabody's Conversation with Mr. Whitmore in 2012 Affirmatively Displayed His Deliberate Indifference

A court may infer a subjective state of mind of deliberate indifference where the risk of harm is obvious. *Wilkerson v. Stalder*, 639 F. Supp. 2d 654 (2007) ("it is obvious that being

housed in isolation in a tiny cell for 23 hours a day for over three decades results in serious deprivation of basic human needs.").

Warden Peabody affirmatively alleged he has been employed at the Prison since 1976. Rec. Doc. 57-5 ¶1. Mr. Whitmore arrived two years later, in 1978. Warden Peabody is intimately aware of the extreme duration of Mr. Whitmore's confinement in solitary because Mr. Whitmore has been there for the entire duration of Warden Peabody's career. He is also well aware of the potential harm such duration can cause.

Warden Peabody has been in charge of security and classification while Mr. Whitmore was housed in solitary and being given sham reviews of his confinement so that Warden Cain's policy of keeping him until he changes his political beliefs can be carried out. The Warden also knows that Mr. Whitmore does not present a security risk and has an unremarkable disciplinary record.

Warden Peabody was could have been on the review board or in charge of classification in 1996 when the Prison removed "original reason for lockdown" from the factor to be considered by the board in continuing an inmate's confinement. Warden Peabody is therefore well aware that Mr. Whitmore has been seriously deprived of basic human needs for over 35 years without legitimate penological justification.

In granting qualified immunity to Warden Peabody, however, the Report fails to acknowledge that Warden Peabody did not and cannot contradict Plaintiff's allegations that Warden Peabody acted with the deliberate indifference described above and that Warden Peabody directly displayed this indifference when Mr. Whitmore told him about "the conditions of our cells and the privilege restrictions we faced.""he simply refused to release him and told Mr. Whitmore that solitary was "where he belonged." Rec. Doc. 62-2, ¶26-27.

Motions for summary judgment based on qualified immunity should be denied if the reasonableness of a defendant's conduct "mandates a number of factual inferences." *Cox v. Columbia Cas. Co.*, No. Civ. A. 12-306-SDD, 2014 WL 29456, at *10 (M.D. La. Jan. 3, 2014).

Such qualified immunity motions should likewise fail where there is a factual dispute as to whether the defendant's conduct was reasonable. *Kelly v. LaForce*, 288 F.3d 1, 7 (1st Cir. 2002); *Victoria W. v. Larpenter*, No. Civ. A. 00-1960, 2001 WL 263080, at *3 (E.D. La. Mar. 15, 2001); *see also McKinney v. City of Southaven,* No. Civ. A. 9-46, 2010 WL 1380391, at *1 (N.D. Miss. Mar. 31, 2010). Warden Peabody's 35 years of watching Mr. Whitmore endure indefinite solitary confinement, deteriorate mentally and physically, and suffer without penological justification is the epitome of deliberate indifference and he should not be given immunity from suit for his acts.

## XI. WARDEN CAIN'S POLICY OF KEEPING MR. WHITMORE IN SOLITARY FOR HIS POLITICAL BELIEFS IS A CONTINUING VIOLATION AND THE FIRST AMENDMENT CLAIMS ARE NOT PRESCRIBED

Warden Cain's policy of keeping Mr. Whitmore in solitary confinement until he reforms his political beliefs is part of an organized scheme including Mr. Whitmore's present confinement to solitary and the cumulative effect of this scheme – that Mr. Whitmore will not be released unless he changes his political beliefs – is injurious to his First Amendment rights. This is the definition of a continuing violation: "an organized scheme leading to an including a present violation … such that it is the cumulative effect of the [illegal] practice, rather than any discrete occurrence, that gives rise to the cause of action." *Huckabay v. Moore*, 142 F.3d 233, 239 (5th Cir. 1998).

Warden Cain has implemented this policy since his start as Warden in 1995 and have been a continuing violation since. Mr. Whitmore's First Amendment claims going back to 1995 should be saved as part of Warden Cain's continuing violation. *Id.*

Respectfully submitted,

*/s/Michelle M. Rutherford*
Michelle M. Rutherford, Bar No. 34968, TA
Richard E. Sarver, Bar No. 23558
David N. Luder, Bar No. 33595
Erica A. Therio, Bar No. 34115
BARRASSO USDIN KUPPERMAN
 FREEMAN & SARVER, L.L.C.
909 Poydras Street, Suite 2400
New Orleans, Louisiana 70112
Telephone:     (504) 589-9700
Facsimile:      (504) 589-9701
Email: mrutherford@barrassousdin.com
            rsarver@barrassousdin.com
            dluder@barrassousdin.com
            etherio@barrassousdin.com

Rose Murray, Bar No. 34690
JONES, SWANSON, HUDDELL & GARRISON,
L.L.C.
601 Poydras Street, Suite 2655
New Orleans, LA 70130
Telephone:     (504) 523-2500
Telecopier:     (504) 523-2508
Email: rmurray@jonesswanson.com

***Counsel for Kenny Whitmore (#86468)***

## CERTIFICATE OF SERVICE

I hereby certify that on this 5th day of June 2015, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel registered for electronic service.

_/s/Michelle M. Rutherford_

{1077943_1}

21