# UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**KENNY WHITMORE (DOC No. 86468)**

**VERSUS**

**WARDEN BURL CAIN, ET AL.**

**CIVIL ACTION**

**No. 14-004-JWD-RLB**

## OPINION

This matter comes before the Court on the Plaintiff Kenny Whitmore's Objections to the Magistrate's May 22, 2015 Report and Recommendation (R. Doc. 73). Defendants James LeBlanc, Burl Cain, Darrell Vannoy, Joe Lamartinier, Cathy Fontenot, Richard Peabody, and Richard Stalder (collectively, "Defendants") have filed a response opposing the objections. (R. Doc. 81). After independently reviewing the entire record in this case, the Court sustains the objections in part and overrules the objections in part.

### I.      Summary of Ruling

The background and procedural history of the suit were discussed at length in the Magistrate Judge's report and recommendation (R. Doc. 70) and need not be repeated here. The central issue was whether the continuing violation doctrine applied to allow the Plaintiff to pursue claims for his over thirty years in solitary confinement.

The Magistrate Judge found that this doctrine did not apply. As a result, the Magistrate Judge recommended that all claims arising prior to January 2, 2013 (one year before Plaintiff filed suit) were prescribed and dismissed with prejudice.

The Plaintiff objected, arguing that Warden Cain's policy of keeping Whitmore in solitary for his political beliefs is an "organized scheme" and that the cumulative effect of the scheme – that Whitmore will not be released unless he changes his political beliefs – is the

Plaintiffs' injury. Plaintiff argues that this is the definition of a continuing violation, so all his claims have not prescribed.[1]

In sum, the Court will overrule the Plaintiff's objection concerning the continuing violation doctrine, though for different reasons than those given by the Magistrate Judge. While Warden Cain's policy may have been a continuing violation, the Plaintiff admitted in his affidavit that he was told about this policy in 2011. This conversation was an event which, in fairness and logic, should have alerted the average lay person to act to protect his rights. Whitmore was under a duty to file his administrative remedy procedure ("ARP") within one year of this conversation, yet he waited until one and a half years before doing so. Accordingly, most of Whitmore's claims have prescribed.

The Court also overrules the Plaintiff's objection concerning the accrual date and the need for additional discovery. No reasonable juror would conclude that Whitmore lacked awareness of his injuries until one year before his ARP was filed. And all reasonable jurors would conclude that this conversation (along with other facts in the record) should have triggered with Whitmore a duty to investigate causation further. As there is no issue of fact as to the occurrence of these events, no further discovery is needed, and summary judgment is warranted.

Nevertheless, the Court will sustain the objections in part. Specifically, prescription was suspended when Whitmore filed his ARP on July 19, 2013. As a result, Whitmore can pursue all

---

[1] In his original objections, Plaintiff raised the issue of the continuing violation doctrine only with respect to his First Amendment claim. *See* R. Doc. 73, p. 1-2. However, in his Reply in Support of His Objections to The Magistrate Judge's May 22, 2015 Report and Recommendations, the Plaintiff appears to argue that the continuing violation doctrine applies to all claims. *See* R. Doc. 85, p. 4-7. It is questionable whether the Plaintiff could expand the scope of his appeal through a reply memorandum given Fed. R. Civ. P. 72(b)'s time delays for filing objections. Nevertheless, out of an abundance of caution, the Court will address the objections as though the Plaintiff argued that the continuing violation doctrine applied to all claims, not just the First Amendment one.

claims arising after July 19, 2012 (one year before the ARP was filed). All claims arising before this date are prescribed.

The Court also sustains Whitmore's objection related to Warden Richard Peabody. There are genuine issues of material fact as to whether Warden Peabody is entitled to qualified immunity, so summary judgment is inappropriate.

Finally, the Court has independently reviewed the Magistrate Judge's recommendation that summary judgment be denied as to the claims against Secretary James LeBlanc and Assistant Warden Cathy Fontenot. The Court agrees with the Magistrate Judge and will adopt his findings on these issues.

## II.     Prescription

### A.  Continuing Violation Doctrine

Whitmore argues that the definition of a continuing violation from *Huckabay v. Moore*, 142 F.3d 233, 239 (5th Cir. 1998) is "an organized scheme leading to and including a present violation . . . such that it is the cumulative effect of the [illegal] practice, rather than any discrete occurrence, that gives rise to the cause of action." Plaintiff maintains that Warden Cain's policy of keeping Whitmore in solitary for his political beliefs is such an organized scheme. According to Plaintiff, Cain implemented this policy since his start as warden in 1995 and has continued it to the present day. Consequently, Plaintiff contends he is entitled to recover for his entire thirty-plus year stay in solitary. The Court agrees with the Plaintiff that, under this standard, the Plaintiff may have demonstrated a continuing violation.

But the Plaintiff omits key portions of *Huckabay*'s analysis. Specifically, the Fifth Circuit explained:

> The core idea of the continuing violations theory . . . is that equitable
> considerations may very well require that the filing periods not begin to run until

3

facts supportive of a Title VII charge or civil rights action are or should be apparent to a reasonably prudent person similarly situated. The focus is on what event, in fairness and logic, should have alerted the average lay person to act to protect his rights.

*Huckabay*, 142 F.3d at 238 (quoting *Messer v. Meno*, 130 F.3d 130, 134-35 (5th Cir. 1997)).

The Fifth Circuit further stated that, when analyzing the continuing violation doctrine, the court should focus on certain factors, including these three:

The first is subject matter. Do the alleged acts involve the same type of discrimination, tending to connect them in a continuing violation? The second is frequency. Are the alleged acts recurring . . . or more in the nature of an isolated work assignment or employment decision? The third factor, perhaps of most importance, is degree of permanence. Does the act have the degree of permanence which should trigger an employee's awareness of and duty to assert his or her rights, or which should indicate to the employee that the continued existence of the adverse consequences of the act is to be expected without being dependent on a continuing intent to discriminate?

142 F.3d at 238-39.

Applying these standards here, the Court finds that, even if Plaintiff did have a continuing violation dating back thirty years, such a claim would have prescribed. Whitmore admits in his affidavit:

Sometime in 2011, Warden Darrell Vannoy told me that Warden Cain wanted me to quit communicating with Albert Woodfox, Robert King, and Herman Wallace, [who are members of the Angola Chapter of the Black Panther Party]. Warden Vannoy indicated I needed to stop affiliating with the Black Panther Party and its members if I wanted out of solitary.

(R. Doc. 62-2). These statements by Vannoy and Cain constitute an event which, in fairness or logic, should have alerted the average lay person to protect his First Amendment right to free speech, his Fourteenth Amendment rights to due process and equal protection, and his Eighth Amendment right to be free from cruel and unusual punishment. That is, Whitmore should have concluded from these statements that he was injured, that he was being treated differently because of his race and politics, that his Lockdown Review Board hearings were a sham, and that

he was subjected to excessive and unjustified punishment.  Further, applying the most important of the three *Huckabay* factors, Vannoy and Cain's statements, along with the years of unjustified confinement, had a degree of permanence which should have triggered Whitmore's awareness of and duty to assert these rights.  Accordingly, Whitmore's conversation with Vannoy triggered the prescriptive period for any continuing violation.

Under Louisiana law, Whitmore had one year from this conversation to bring suit (or, in this case, file an ARP) for any constitutional violation.[2]  At the latest, Vannoy told Whitmore about Warden Cain's comments on December 31, 2011.  Yet Whitmore did not file his ARP until July of 2013, at least a year and a half later.  As a result, Whitmore was untimely in bringing these claims, and all claims arising before July of 2012 (one year before Whitmore filed his ARP) have prescribed.

Plaintiff claims in his reply memorandum that Vannoy and Cain's statements cannot be relied upon because they are inadmissible hearsay.  The Court rejects this argument; the statements are not hearsay. Vannoy and Cain's statements are not being offered by the Defendant to prove the truth of the matter asserted but rather to prove the fact that the statements were made.  Phrased another way, the issue is not whether Cain actually had the policy at the time of Vannoy's statements.  The issue is whether, after Whitmore heard these statements, he had notice such that he was under a duty to investigate further.

Accordingly, the continuing violation doctrine does not save most of Plaintiff's claims. As our brother in the Eastern District of Texas explained, "If a plaintiff knows or with the

---

[2] "Federal courts borrow state statutes of limitations to govern claims brought under section 1983. Although federal courts look to federal law to determine when a civil rights action accrues, state law supplies the applicable limitations period and tolling provisions." *Harris v. Hegmann*, 198 F.3d 153,156-57 (5th Cir. 1999) (citations omitted).  "In Louisiana, the one-year prescriptive period for Louisiana tort actions applies to a § 1983 claim." *Toga Soc., Inc. v. Lee*, 323 F. Supp.2d 779, 787 (E.D. La. 2004) (citing *Jacobsen v. Osborne*, 133 F.3d 315, 318–19 (5th Cir.1998)).

exercise of reasonable diligence would have known that [he] suffered from discrimination, [he] 'may not sit back and accumulate all the discriminatory acts and sue on all within the statutory period applicable to the last one.' " *Gallentine v. Housing Auth. of City of Port Arthur, Tex.*, 919 F. Supp.2d 787, 800-803 (E.D. Tex. 2013) (quoting *Moskowitz v. Trs. of Purdue Univ.*, 5 F.3d 279, 282 (7th Cir.1993)).  The court continued:

> A knowing plaintiff has an obligation to file promptly or lose his claim. This can be distinguished from a plaintiff who is unable to appreciate that he is being discriminated against until he has lived through a series of acts and is thereby able to perceive the overall discriminatory pattern.

*Id.* (quoting *Sabree v. United Bhd. of Carpenters & Joiners*, 921 F.2d 396, 402 (1st Cir.1990); *Martin v. Frank*, 788 F. Supp. 821, 826 (D. Del. 1992)).

The Court finds this analysis applicable here.  Even if Warden Cain's policy were a continuing violation, Whitmore was under a duty to file suit after he knew about it.  This is not a case where a person was unaware of his injuries; Whitmore was directly told about them.  For these and the above reasons, the Plaintiff's objection is overruled.

### B.  Accrual as Issue of Fact Requiring Further Discovery

As another objection, Whitmore argues that the accrual date is an issue of fact making summary judgment inappropriate.  He claims that he had no knowledge of who was responsible for his confinement and that the prison officials refused to tell him this information.  Whitmore claims that further discovery is needed to determine the precise date that he became aware of when he was injured by his years in solitary and who caused these injuries.  For the first time in his reply memorandum, Whitmore urges equitable tolling.[3]

Defendants respond that, under federal law, a cause of action accrues the moment a

---

[3] The Court again notes that it is questionable whether this argument is properly before the Court. Nevertheless, out of an abundance of caution, the Court will consider it.

plaintiff knows or has reason to know of the injury. Defendants focus on the Magistrate Judge's determination that 'at some point years ago, the plaintiff certainly became aware of the facts supporting his claim for relief . . ." (R. Doc. 70, p. 12-13).

In sum, the Court overrules the Plaintiff's objection. Plaintiff is correct that accrual is an issue of fact, *see, e.g., Santiago Hodge v. Parke Davis & Co.*, 909 F.2d 628, 633 (1st Cir. 1990), and that it is based in part on when the plaintiff became aware of who caused him injury. *Piotrowski v. City of Hous.*, 51 F.3d 512, 516 n. 12 (5th Cir. 1995) (citations omitted). But Whitmore ignores the second crucial part of the accrual analysis – that a plaintiff need not have actual knowledge of causation if the circumstances would lead a reasonable person to investigate further. *Id.* (citing *Jensen v. Snellings*, 841 F.2d 600, 606 (5th Cir.1988)). Thus, under federal law, the limitations period commences when the aggrieved party has either knowledge of the violation or notice of facts which, in the exercise of due diligence, would have led to actual knowledge thereof. *Id.* (quoting *Jensen v. Snellings*, 841 F.2d 600, 606 (5th Cir.1988)). Based on the above facts, and others in the record, all reasonable jurors would conclude (1) that, no later than December 31, 2011, he had direct knowledge of his injuries, and (2) that actual knowledge of causation should be imputed to Whitmore because he was under a duty to investigate further. Finally, while Whitmore may be right that facts were concealed from him, he is precluded from using equitable tolling or *contra non valentem* because, again, no reasonable juror could conclude that despite any such concealment, by December 31, 2011, he did not have sufficient facts to end any tolling allowed under the doctrine of *contra non valentem*.

### 1. Question of Fact

The determination of the accrual date is a "question of fact." *Santiago Hodge v. Parke Davis & Co.*, 909 F.2d 628, 633 (1st Cir. 1990) (citing *Lavellee v. Listi*, 611 F.2d 1129, 1131-32

(5th Cir. 1980)); *see also Doe v. Paukstat*, 863 F. Supp. 884, 891 (E.D. Wis. 1994); *Covington v. Winger*, 562 F. Supp. 115, 118 (W.D. Mich. 1983), *aff'd*, 746 F.2d 1475 (6th Cir. 1984); *cf. Sellars v. Perry*, 80 F.3d 243 (7th Cir. 1996).  However, the court may resolve this issue through summary judgment if the facts are not in dispute and support only one conclusion. *See Cathedral of Joy Baptist Church v. Vill. of Hazel Crest*, 22 F.3d 713, 719 (7th Cir. 1994).

### 2. Standard for Accrual

"[F]ederal courts look to federal law to determine when a civil rights action accrues." *Harris v. Hegmann*, 198 F.3d 153, 156-57 (5th Cir. 1999) (citation omitted).  Both parties agree on this principle and articulate parts of the standard for determining when a cause of action accrues.

The correct standard was laid out by the Fifth Circuit in *Piotrowski v. City of Houston*, 51 F.3d 512 (5th Cir. 1995) ("*Piotrowski I*").  There, the court explained:

> "Under federal law, the [limitations] period begins to run 'the moment the plaintiff becomes aware that he has suffered an injury or has sufficient information to know that he has been injured.' " *Russell v. Board of Trustees*, 968 F.2d 489, 493 (5th Cir.1992) (quoting *Helton v. Clements*, 832 F.2d 332, 335 (5th Cir.1987)), *cert. denied,* ––– U.S. –––, 113 S.Ct. 1266, 122 L.Ed.2d 662 (1993). A plaintiff's awareness encompasses two elements: (1) The existence of the injury; and (2) causation, that is, the connection between the injury and the defendant's actions. *See  Stewart v. Parish of Jefferson*, 951 F.2d 681, 684 (5th Cir.) ("The statute of limitations period commences once the plaintiff acquires possession of two critical facts: (1) an injury has occurred; and (2) the identity of the person who inflicted the injury."), *cert. denied*, 506 U.S. 820, 113 S.Ct. 69, 121 L.Ed.2d 35 (1992). A plaintiff need not realize that a legal cause of action exists; a plaintiff need only know the facts that would support a claim. *See Harrison v. United States*, 708 F.2d 1023, 1027 (5th Cir.1983) ( "The plaintiff need not have knowledge of fault in the legal sense for the statute to begin to run, but she must have knowledge of facts that would lead a reasonable person (a) to conclude that there was a causal connection ... or (b) to seek professional advice, and then, with that advice, to conclude that there was a causal connection between the [defendant's acts] and injury.").  Moreover, a plaintiff need not have actual knowledge if the circumstances would lead a reasonable person to investigate further. *See  Jensen v. Snellings*, 841 F.2d 600, 606 (5th Cir.1988) ("Under federal law, the limitations period commences when 'the aggrieved party has

either knowledge of the violation or notice of facts which, in the exercise of due diligence, would have led to actual knowledge' thereof." (quoting *Vigman v. Community Nat'l Bank & Trust Co.*, 635 F.2d 455, 459 (5th Cir.1981))).

*Piotrowski I,* 51 F.3d at 516 (footnotes omitted). This test was cited with approval and quoted extensively by the Fifth Circuit in *Newman v. Coffin*, 464 F. App'x 359, 362 (5th Cir. 2012). Accordingly, the Court will apply this framework.

### 3. Analysis

Despite Whitmore's request for further discovery, the Court finds that there are no issues of material fact and that, as a matter of law, the Defendants are entitled to summary judgment. Accordingly, Whitmore's objection on this issue is overruled.

Under the *Piotrowski I* analysis, the first issue is when Whitmore became aware of his injuries. Plaintiff claims that this issue requires further discovery to pinpoint the exact date.

The Court is unpersuaded by this argument. Plaintiff attests to the fact that he has "remained classified as a closed-cell restriction or extended lockdown inmate ever since July 5, 1986." (R. Doc. 62-2). At the very latest, Whitmore became aware of his injuries after the conversation with Vannoy about Warden Cain's policy to keep him in solitary until he changed his political beliefs. Accordingly, Whitmore knew of his injuries more than one year before the ARP was filed.

The second issue is when Whitmore became aware of causation. Again, Whitmore was told by Vannoy in 2011 that his affiliation with the Black Panthers was why he remained in solitary. Assuming this conversation occurred at the end of 2011, Whitmore still did not file his ARP until over a year and a half later. The circumstances here would clearly lead a reasonable person to investigate further or to obtain professional advice and then, with that advice, discover

the necessary causal connections. That is, Whitmore had notice of facts which, in the exercise of due diligence, would have led to actual knowledge thereof.

Vannoy's statements implicate not only the injuries related to Whitmore's First Amendment claim but also to the injuries related to Whitmore's Equal Protection, Due Process and Eighth Amendment claim. Vannoy's comments would have led to knowledge that he was being punished for his race and political beliefs, that he was being denied a fair and meaningful review process, and that he was being subjected to excessive punishment. At the very least, these statements should have triggered a duty to investigate further. There is no genuine issue of material fact here, so the Defendants are entitled to summary judgment as a matter of law.

Other information in Whitmore's affidavit also demonstrates either actual knowledge or knowledge of such facts as to require further diligence, at least with respect to his Due Process and Eighth Amendment claim. Again, Plaintiff attests to the fact that he has remained classified as a closed-cell restriction or extended lockdown inmate ever since July 5, 1986. (R. Doc. 62-2). He has "spent 1 year, 8 months, and 21 days out of a solitary cell during the 36 years [he's] been at Angola." (*Id.*). His exercise pen in Camp D is a concrete slab approximately 12 feet wide and 15 feet long, completely encased in chain link fencing on all sides and above. (*Id.*). Because of his confinement, Whitmore has "not touched grass for at least five years." (*Id.*). While at Camp D, his exercise was limited to three days a week, weather permitting, and Whitmore exercised alone and was placed in full restraints to walk to the exercise pen. (*Id.*).

Additionally, Whitmore claims that the Lockdown Review Board forms are brought to him by one or two members of the Board and that, whenever he asks them why he is not being released, they say that the Warden has to release him or that he has to write the Warden. (*Id.*). He claims he has never been told by the Board what he has to do to be reclassified into the

general population. (*Id.*).  He cannot appeal or get a review of Board decisions, has never attended a Board meeting, and has never been told by the Board what steps he needed to take to get reclassified into the general population. (*Id.*).  Whenever he has written letters to Warden Vannoy, Cain, or Lamartinier about his continued assignment to solitary, he has never received a response. (*Id.*).  He has asked various Wardens "over the years" for help to get him out of solitary, and these Wardens include Vannoy, Lamartiniere, and Peabody. (*Id.*).  Moreover, Warden Peabody specifically rejected an attempt by Whitmore to release him from solitary between 2011 and 2012.  Whitmore also describes how Fontenot was aware of his lengthy confinement in solitary, though he does not specify dates.

Based on these facts, no reasonable person could conclude that Whitmore lacked knowledge of causation after December 31, 2011, more than one year before he filed his ARP. He specifically identifies Vannoy, Lamartiniere, Peabody, and Cain as individuals who had some connection or impact on his continued confinement in solitary.  He also states that he had contact with specific Board members over the years who could have told him who was involved in the various decisions.  By Whitmore's own summary judgment evidence, he either knew of a causal connection between these individuals and his injury, or, more likely, he had sufficient facts to trigger a further investigation into who was responsible, which would include these individuals. Accordingly, summary judgment is warranted.

In sum, prescription on Whitmore's claim began to run when he became aware that he suffered injuries.  For each claim, this occurred before July 19, 2012.  No reasonable juror could conclude that he lacked awareness of his injuries before that date.  And all reasonable jurors would conclude that he had knowledge of causation before that date; this knowledge was either direct or imputed because he had sufficient facts to trigger a reasonable person to investigate

further. No further discovery is needed on these issues; the material facts are not in dispute, so summary judgment is appropriate. Whitmore's objection is overruled.

### 4. Equitable Tolling and *Contra Non Valentem*

The Plaintiff argues in his reply that equitable tolling should apply. Whitmore relies upon *Piotrowski I*, which stated, "when a defendant controls the facts surrounding causation such that a reasonable person could not obtain the information even with a diligent investigation, a cause of action accrues, but the statute of limitations is tolled." 51 F.3d at 517.

The Court rejects this argument. "Although federal courts look to federal law to determine when a civil rights action accrues, state law supplies the applicable . . . tolling provisions." *Harris v. Hegmann*, 198 F.3d 153, 156-57 (5th Cir. 1999). *Piotrowski I* was a Texas case, so the court logically applied Texas' rules concerning equitable tolling. Here, however, Louisiana law applies, so the appropriate tolling doctrine is *contra non valentem*.[4]

In this case, there are two relevant categories of *contra non*: "(3) where the debtor has done an act to prevent the creditor for using the cause of action; [and] (4) where the cause of action is not known or reasonably knowable by the plaintiff, even though he is not induced by the defendant." *Toga Soc., Inc. v. Lee*, 323 F. Supp.2d 779, 787 (E.D. La. 2004).

The fourth category is inapplicable. This is the "discovery rule." *See Marin v. Exxon Mobil Corp.*, 2009-2368 (La. 10/19/10), 48 So. 3d 234, 245 (citations omitted). "Under the

---

[4] Because *Piotrowski I* dealt with an allegation that "police officers took active steps to suppress any information concerning" causation, 51 F.3d at 517, several courts have limited *Piotrowski I* to instances involving fraudulent concealment by the Defendant. *See Cloud v. United States*, 126 F. Supp. 2d 1012, 1022 (S.D. Tex. 2000) ("Unlike *Piotrowski*, … there is no indication that the United States 'took active steps to suppress any information.'"); *cf. Newman*, 464 F. App'x 359 at 362 n. 3 ("Because [plaintiff] does not contend the municipal defendants engaged in fraudulent concealment of evidence, we need not consider whether the statute of limitations on Newman's claim has been equitably tolled.") (citing *Piotrowski I*, 51 F.3d at 516). This is substantially similar to the third category of *contra non*, which is discussed below. Consequently, while the Court rejects the Plaintiff's argument that equitable tolling applies, the issue is ultimately moot.

fourth category, prescription does not begin to run until the plaintiff knows sufficient facts and has a reasonable basis for filing suit against a certain defendant." *Fontenot v. ABC Ins. Co.*, 95-1707 (La. 6/7/96), 674 So. 2d 960, 964. The Fifth Circuit has made clear that "*contra non valentem* does not suspend prescription when a litigant is perfectly able to bring its claim, but fails or refuses to do so." *Terrebonne Parish Sch. Bd. v. Mobil Oil Corp.*, 310 F.3d 870, 885 (5th Cir. 2002).

The Court finds that this category of *contra non* is essentially the same as the test for accrual, which was analyzed above. Having rejected Whitmore's arguments concerning the accrual date, the Court declines to find this category of *contra non* applicable.

The Court rejects this category for an additional reason. In *Toga*, the Eastern District explained:

> As a judicial exception to the statutory rule of prescription, Louisiana courts strictly construe this doctrine and only extend its benefits up to 'the time that the plaintiff has actual or constructive knowledge of the tortious act.' " [*Curtis v. City of New Orleans*, 2000 WL 557399, at *2 (E.D.La. May 5, 2000) (citing *Eldredge v. Martin Marietta Corp.*, 207 F.3d 737, 743 (5th Cir.2000))]. "Constructive notice is found at the point at which 'the plaintiff has information sufficient to excite attention and prompt further inquiry.' " *Id.*

323 F. Supp.2d at 787-788 (rejecting application of *contra non* because plaintiff had "knowledge of the alleged wrong" long before suit was filed). Again, this basically parallels the accrual standard articulated above. For the same reasons, the Court will not adopt this approach.

Similarly, no reasonable juror could find that the third category of *contra non* is appropriate here. The third category applies "only when (1) the defendant engages in conduct which rises to the level of concealment, misrepresentation, fraud or ill practice; (2) the defendant's actions effactually prevented the plaintiff from pursuing a cause of action; and (3) the plaintiff must have been reasonable in his or her inaction." *Marin*, 48 So. 3d at 252 (citations

omitted). The court must find that the defendant had an ill motive or intent behind the defendant's conduct, which eventually prevented defendant from brining suit. *Adam v. Ochsner Clinic of Baton Rouge*, 1999-2502 (La. App. 1 Cir. 11/3/00), 771 So.2d 258, 262. Simple negligence will not be enough to find that the conduct rose to the level of concealment, misrepresentation, fraud, or ill practice. *Id.* The Court must find that the defendant intended by his conduct to stop the Plaintiff from acknowledging the cause of action and from filing suit. *Marin*, 48 So.3d at 246. In determining the reasonableness of plaintiff's inaction, the court examines the plaintiff's education, intelligence, and the nature of the defendant's conduct. *Id.* at 246.

While a reasonable jury could find the first element satisfied, no reasonable jury could find the second and third elements satisfied. Specifically, a reasonable inference could be made from years of silence that the prison officials were actively and improperly concealing important facts from Whitmore. However, no reasonable jury could conclude that the Defendants prevented Whitmore from pursuing his cause of action or, more importantly, that Whitmore was reasonable in his failure to pursue or investigate his claim, particularly after Warden Vannoy's statements about Warden Cain's policy. Consequently, even if the issue of *contra non* were properly raised, the Court will not apply it here.

### 5. Summary

In sum, while the accrual date is a question of fact, the relevant facts are not in dispute. Prescription begins to run when the plaintiff has knowledge of the injury and who caused it, but knowledge of causation can be imputed when the circumstances would lead a reasonable person to investigate further; that is, the limitations period begins to run when the plaintiff has either knowledge of the violation or notice of facts which, in the exercise of due diligence, would have

led to actual knowledge thereof. *Piotrowski I,* 51 F.3d at 516 (citations omitted). That has occurred here. The Plaintiff had knowledge of his injury and either direct knowledge of who caused it or notice of enough facts to trigger his duty to investigate further. *Contra non* cannot save his claims given his unreasonable conduct. Summary judgment is warranted, and the Plaintiff's objection is overruled.

### C. ARP

#### 1. Parties' Arguments

Whitmore's final objection deals with the filing of his ARP. Whitmore argues that, under Fifth Circuit precedent, the "filing of an administrative remedy procedure tolls the prescriptive period for federal 28 U.S.C. § 1983 claims." *See Harris v. Hegmann*, 198 F.3d 153, 158-59 (5th Cir. 1999); *Anderson v. Wilkerson*, 299 F. App'x 458 (5th Cir. 2008). Thus, according to Whitmore, the filing of his ARP on July 19, 2013, suspended the running of prescription for his claims.

On the other hand, Defendants point to Plaintiff's admission that the Lockdown Review Board decisions forming the basis of Plaintiff's claim are not properly addressed through ARPs. Defendants state that 42 U.S.C. § 1997e provides that "no actions shall be brought with respect to prison conditions until such administrative remedies *as are available* are exhausted." According to Defendants, there was no need for administrative exhaustion here, so prescription was not tolled.

Plaintiff anticipates this argument in his original objection and states that Defendants' argument is disingenuous because they assert exhaustion of remedies as an affirmative defense. Further, while Lockdown Review Board decisions are not reviewable under the Louisiana Administrative Code, Plaintiff's ARP sought a remedy for Wardens Cain and Vannoy's failure to

remove him from the "torturous conditions" of solitary. Thus, Plaintiff argues that he had a duty to administratively exhaust his claims against the wardens for Eighth and Fourteenth Amendment violations that were not directly tied to the Review Board's decisions.

### 2. Analysis

As indicated above, the Court will sustain this objection. Under Louisiana state law, Whitmore's ARP suspended the running of prescription.

State law provides the applicable tolling period in a § 1983 action. *See Harris*, 198 F.3d at 156-57 (citations omitted). La. Rev. Stat. § 15:1172(E) provides:

> E. Liberative prescription for any delictual action for injury or damages arising out of the claims asserted by a prisoner in any complaint or grievance in the administrative remedy procedure shall be suspended upon the filing of such complaint or grievance and shall continue to be suspended until the final agency decision is delivered.

Importantly, Section 15:1172(E) makes no distinction as to whether an ARP was properly filed. Thus, even if Defendants are correct that, under La. Admin Code. tit. 22, pt. I, § 325(F)(3)(a)(iv)(d), Whitmore could not appeal the Lockdown Review Board decisions through an ARP, this makes no difference; La. Rev. Stat. § 15:1172(E) suspends the running of prescription upon the filing of an ARP, regardless of whether Whitmore was correct in doing so.

Accordingly, Whitmore's objection on this issue is sustained. All claims arising prior to July 19, 2012 (one year before Whitmore filed his ARP) have prescribed.[5]

### III. Qualified Immunity

#### A. Warden Peabody

Plaintiff argues that there are issues of fact which preclude summary judgment in favor of Warden Peabody. Defendants counter that Plaintiff relies on conduct outside the prescriptive

---

[5] As the Magistrate Judge correctly found, because Defendant Richard Stalder left his position as Secretary of the Department of Corrections in 2008, all claims against him are dismissed. (*See* R. Doc. 70, p. 13).

period and that Warden Peabody's affidavit is uncontroverted. According to Defendants, there are no factual inferences to be drawn here and no issues of fact.

In sum, because the Court finds that there are genuine issues of material fact with respect to the claims against Warden Peabody, the Court will deny summary judgment against him. Accordingly, Whitmore's objection is sustained.

Warden Peabody submits an affidavit (R. Doc. 57-5) to prove there is no issue of fact with respect to qualified immunity. In that affidavit, Peabody stated that he has been employed at Angola since 1976 in various capacities, but, most recently, he was Deputy Warden of Programs at LSP from 2003 to present, except for approximately one year between May 18, 2011 and April 4, 2012, when he served as Deputy Warden of Operations. (*Id.*). Peabody attested that, as Deputy Warden of Programs and Operations, his duties did not include classifications of housing of inmates, and he never participated in any Lockdown Review Board concerning Whitmore. (*Id.*). Further, he has not assigned nor has he ever reassigned inmates to or from CCR (closed-cell restriction, or solitary confinement), and he has never approved or denied, or been in a position to approve or deny, Whitmore's assignment to or from CCR.

To show that there is an issue of fact, Whitmore counters with his own affidavit. There, Whitmore states that Warden Peabody was the Warden in control of the closed-cell restriction tier in the 80s and 90s. (R. Doc. 62-2). Further, he has also been in charge of security and classification during Whitmore's assignment to solitary. (*Id.*). In keeping Whitmore in solitary, Warden Peabody never spoke to Whitmore about his suitability for the general population. (*Id.*). Whitmore also states that, "over the years," he has asked various wardens (including Whitmore) to help him get out of solitary, and he has always been told that "they" or "the Warden" "won't let that happen." (*Id.*). While Whitmore cannot recall the exact date, sometime between 2011

and 2012, he spoke with Warden Peabody about the conditions of "our" cells and the privilege restrictions "we" faced. (*Id.*). This conversation occurred during one of Peabody's visits to the tier. (*Id.*). During this conversation, Whitmore asked Warden Peabody for more contact visits for inmates in solitary, and he responded "we" could not have them. (*Id.*). Then Whitmore asked him if he could get Whitmore out of solitary and reclassified into the general population. (*Id.*). According to Whitmore, Warden Peabody refused to release him from solitary and stated that Whitmore was "where [he] belonged." (*Id.*).

The Court first finds that any claim arising out of the conversation occurring between 2011 and 2012 has prescribed. Construing the facts in a light most favorable to the Plaintiff, this conversation occurred on December 31, 2011. However, the Court held above that all claims arising prior to July 19, 2012 (one year before Whitmore filed his ARP) have prescribed. Accordingly, even if this conversation raised issue of fact concerning each of Whitmore's claims (and it likely would have), this exchange fell outside the prescriptive period, so any claim related to the dialogue has prescribed.

For the same reason, any claim related to Peabody being charge of CCR in the 80s and 90s has prescribed. Any such conduct would have occurred well outside the prescriptive period.

Nevertheless, Whitmore has still raised a question of fact precluding summary judgment. Whitmore states that Peabody has been in charge of security and classification during Whitmore's time in solitary; a reasonable juror could infer from this fact that Peabody was in charge of Lockdown Review Board decisions throughout Whitmore's entire stay in solitary, including the time within the prescriptive period.

Whitmore further attests to the fact that, in keeping Whitmore in solitary, Warden Peabody never spoke to Whitmore about his suitability for the general population. A reasonable

juror could find from this fact that Peabody violated Whitmore's Due Process and Eighth Amendment rights and that Peabody was objectively unreasonable.

Finally, Whitmore stated that, "over the years," he has asked Whitmore to help him get out of solitary and that Peabody told him that "they" or "the Warden" "won't let that happen." A reasonable juror could infer that Peabody had direct participation in the First Amendment, Due Process, Equal Protection, and Eighth Amendment violations of Whitmore's rights by Warden Cain and that Peabody's conduct was objectively unreasonable and plainly incompetent.

Consequently, genuine issues of material fact preclude summary judgment against Peabody on the qualified immunity issue. Accordingly, Whitmore's objection is sustained.

### B. Warden Fontenot and Secretary LeBlanc

Although not raised as an issue in the Plaintiff's objections, the Court has independently reviewed the Magistrate Judge's findings that Warden Fontenot and Secretary LeBlanc are not entitled to qualified immunity. The Court agrees with the Magistrate Judge's conclusions. Accordingly, summary judgment as to these defendants is denied.

### IV. Conclusion

The Court takes no pleasure in this opinion. The Plaintiff's allegations are extremely serious, and, if true, the Defendants' conduct is particularly reprehensible.

Justice Kennedy recently discussed the severe consequences of solitary confinement in *Davis v. Ayala*, 135 S. Ct. 2187 (2015). In his concurring opinion, Justice Kennedy wrote:

> The human toll wrought by extended terms of isolation long has been understood, and questioned, by writers and commentators. Eighteenth-century British prison reformer John Howard wrote "that criminals who had affected an air of boldness during their trial, and appeared quite unconcerned at the pronouncing sentence upon them, were struck with horror, and shed tears when brought to these darksome solitary abodes." The State of the Prisons in England and Wales 152 (1777). In literature, Charles Dickens recounted the toil of Dr. Manette, whose 18 years of isolation in One Hundred and Five, North Tower, caused him, even years

after his release, to lapse in and out of a mindless state with almost no awareness or appreciation for time or his surroundings. A Tale of Two Cities (1859). And even Manette, while imprisoned, had a work bench and tools to make shoes, a type of diversion no doubt denied many of today's inmates.

One hundred and twenty-five years ago, this Court recognized that, even for prisoners sentenced to death, solitary confinement bears "a further terror and peculiar mark of infamy." *In re Medley*, 134 U.S. 160, 170, 10 S.Ct. 384, 33 L.Ed. 835 (1890); see also *id*., at 168, 10 S.Ct. 384 ("A considerable number of the prisoners fell, after even a short [solitary] confinement, into a semi-fatuous condition ... and others became violently insane; others, still, committed suicide").

*Id.* at 2209 (Kennedy, J., concurring). Having reflected on the effects of solitary confinement,

Justice Kenney concluded:

Of course, prison officials must have discretion to decide that in some instances temporary, solitary confinement is a useful or necessary means to impose discipline and to protect prison employees and other inmates. But research still confirms what this Court suggested over a century ago: Years on end of near-total isolation exact a terrible price. See, *e.g*., Grassian, Psychiatric Effects of Solitary Confinement, 22 Wash. U.J.L. & Pol'y 325 (2006) (common side-effects of solitary confinement include anxiety, panic, withdrawal, hallucinations, self-mutilation, and suicidal thoughts and behaviors). In a case that presented the issue, the judiciary may be required, within its proper jurisdiction and authority, to determine whether workable alternative systems for long-term confinement exist, and, if so, whether a correctional system should be required to adopt them.

Over 150 years ago, Dostoyevsky wrote, "The degree of civilization in a society can be judged by entering its prisons." The Yale Book of Quotations 210 (F. Shapiro ed. 2006). There is truth to this in our own time.

*Id.* at 2210 (Kennedy, J., concurring). The facts presented here indicate that Justice Kennedy's

concurrence may prove prophetic, though perhaps in another case.

Nevertheless, this Court is bound to follow the Fifth Circuit's rules concerning the

continuing violation doctrine and accrual. For that reason, most of Plaintiff's claims have

prescribed. Accordingly,

**IT IS ORDERED** that Defendant's Motion for Partial Summary Judgment (R. Doc. 57)

is **GRANTED IN PART** and **DENIED IN PART**;

**IT IS FURTHER ORDERED** that Plaintiff's claims prior to July 19, 2012, are prescribed and **DISMISSED WITH PREJUDICE**;

**IT IS FURTHER ORDERED** that Plaintiff's claims against Defendant Richard Stalder are prescribed and **DISMISSED WITH PREJUDICE**;

**IT IS FURTHER ORDERED** that, in all other respects, Defendants' motion is **DENIED.**[6]

Signed in Baton Rouge, Louisiana, on <u>August 24, 2015</u>.

_____

**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

---

[6] As the Magistrate Judge recommended, the Court makes no finding regarding the propriety of the claims for prospective relief against any Defendants in their official capacities.